UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JAQUELINE AHLERS, CATHY GEBHARDT-LALLY and PATRICK WITT, *individually, and on behalf of all others similarly situated*,

Plaintiff,

v.

ALLINA HEALTH SYSTEM,

Defendant.

Case No. 24-cv-3674 (SRN/ECW)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

---

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**FACTUAL BACKGROUND** .......... **1**

I. The Parties. .......... 1

II. Allina's Websites. .......... 2

A. Plaintiffs' Patient Portal Allegations. .......... 3

III. Allina's Policies. .......... 3

**LEGAL STANDARD** .......... **5**

**ARGUMENT** .......... **5**

I. The HHS Guidance on which Plaintiffs rely has been vacated in relevant part. .......... 5

II. The Complaint violates Rule 8. .......... 6

III. Plaintiffs' claims fail for additional independent reasons. .......... 7

A. The Court should dismiss Plaintiffs' Minnesota Health Records Act claim. .......... 7

B. Plaintiffs fail to state a claim for Invasion of Privacy. .......... 11

1. Plaintiffs fail to state a claim for Intrusion Upon Seclusion. .......... 11

2. Plaintiffs fail to state a claim for Publication of Private Facts. .......... 14

C. Plaintiffs fail to state a claim for Breach of Implied Contract. .......... 15

D. Plaintiffs fail to state a claim for Unjust Enrichment. .......... 19

E. Plaintiffs fail to state a claim for Breach of Fiduciary Duty. .......... 22

F. Plaintiffs withdrew their Breach of Confidence claim. .......... 24

G. Plaintiffs fail to plausibly allege sufficient facts to support their Negligence Claim. .......... 24

H. Plaintiffs' ECPA claim fails as a matter of law. .......... 26

1. Plaintiffs fail to allege any unlawful interception. .......... 27

2. Plaintiffs do not adequately allege that the tortious or criminal conduct exception applies. .......... 28

3. Plaintiffs do not adequately allege that the contents of any of their communications were intercepted. .................... 31

I. Plaintiffs fail to state a claim under the Minnesota Deceptive Trade Practices Act. .................................................................. 32

1. Plaintiffs fail to plausibly allege deceptive statements on which they relied. ............................................................ 33

2. Plaintiffs fail to allege that they are likely to suffer future harm. .......................................................................... 35

**CONCLUSION .......................................................................................................... 36**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Eureka Fire Prot. Dist.*,
352 F. App'x 137 (8th Cir. 2009) .......... 10, 22

*Alsides v. Brown Inst., Ltd.*,
592 N.W.2d 468 (Minn. Ct. App. 1999) .......... 36

*Am. Hosp. Ass'n v. Becerra*,
738 F.Supp.3d 780 (N.D. Tex. 2024) .......... 5, 9

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
No. 19-md-2904, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) .......... 17

*Amann v. Allianz Income Mgmt. Servs., Inc.*,
No. A09-1891, 2010 WL 3220061 (Minn. Ct. App. Aug. 17, 2010) .......... 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 20, 21

*Attias v. CareFirst, Inc.*,
365 F.Supp.3d 1 (D. D.C. 2019) .......... 19

*Azarax, Inc. v. Syverson*,
398 F.Supp.3d 425 (D. Minn. 2019) .......... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5, 6, 16, 22

*Bodah v. Lakeville Motor Express, Inc.*,
663 N.W.2d 550 (Minn. 2003) .......... 14, 15

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F.Supp.3d 1359 (S.D. Fla. 2017) .......... 17

*C.L.D. v. Wal-Mart Stores, Inc.*,
79 F.Supp.2d 1080 (D. Minn. 1999) .......... 12

*Caldas v. Affordable Granite & Stone, Inc.*,
820 N.W.2d 826 (Minn. 2012) .......... 21

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) ................................ 27, 30

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)........................................................................................ 29

*Chadbourne v. Walmart*,
No. 19-1240, 2019 WL 4195269 (D. Minn. Aug. 8, 2019)........................................... 6

*Chairez v. AW Distrib., Inc.*,
No. 20-1473, 2021 WL 1600494 (D. Minn. Apr. 23, 2021)........................................ 36

*Chey v. Metro. Airports Comm'n*,
No. 22-CV-1429, 2023 WL 2308272 (D. Minn. Mar. 1, 2023) ............................ 15, 16

*Cieslack v. Easly*,
No. 17-2338, 2018 WL 2926502 (D. Minn. June 11, 2018) ................................ 14, 15

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023)........................................................... 10, 23, 31

*DeShane v. City of Minneapolis*,
No. 21-1452, 2022 WL 624579 (D. Minn. Mar. 3, 2022) .................................... 24, 25

*Doe 169 v. Brandon*,
845 N.W.2d 174 (Minn. 2014).................................................................................. 24

*E-Shops Corp. v. U.S. Bank Nat. Ass'n*,
678 F.3d 659 (8th Cir. 2012) ............................................................................ 33, 34, 35

*In re Facebook Internet Tracking Litig.*,
140 F.Supp.3d 922 (N.D. Cal. 2015) ................................................................ 18, 19, 26

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ...................................................................................... 26, 32

*Findling v. Grp. Health Plan, Inc.*,
979 N.W.2d 234 (Minn. Ct. App. 2022), *rev'd on other grounds*, 998
N.W.2d 1 (Minn. 2023)............................................................................................. 23

*Franklin v. Carpenter*,
244 N.W.2d 492 (Minn. 1976)................................................................................... 18

*Furlow v. Madonna Summit of Byron*,
No. A19-0987, 2020 WL 413356 (Minn. Ct. App. Jan. 27, 2020)...................... 8, 9, 10

*Gardner v. First Am. Title Ins. Co.*,
296 F.Supp.2d 1011 (D. Minn. 2003) .................................................................. 36

*Glick v. W. Power Sports, Inc.*,
944 F.3d 714 (8th Cir. 2019) ................................................................................ 5

*Grp. Health Plan, Inc. v. Philip Morris Inc.*,
621 N.W.2d 2 (Minn. 2001) .................................................................................. 34

*In re Grp. Health Plan Litig.*,
709 F.Supp.3d 707 (D. Minn. 2023) ............................................................ *passim*

*Gubala v. Time Warner Cable, Inc.*,
15-1078, 2016 WL 3390415 (E.D. Wis. June 17, 2016) .......................................... 19

*Gurman v. Metro Hous. & Redevelopment Auth.*,
842 F.Supp.2d 1151 (D. Minn. 2011) ................................................................ 6, 7

*Hall v. Centerspace, LP*,
No. 22-cv-2028, 2023 WL 3435100 (D. Minn. May 12, 2023) ........................... 20, 21

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
No. 18-03019, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) ..................................... 19

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. 2022) ........................................................ 14, 31, 32

*Hansen v. U.S. Bank Nat'l Ass'n*,
934 N.W.2d 319 (Minn. 2019) ............................................................................... 22

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22-5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ........................................ 6

*Hemmerlin-Stewart v. Allina Hosps. & Clinics*,
No. A05-100, 2005 WL 2143691 (Minn. Ct. App. Sept. 6, 2005) ............................. 22

*Hudock v. LG Elecs. U.S.A., Inc.*,
No. 16-1220, 2017 WL 1157098 (D. Minn. Mar. 27, 2017) ...................................... 36

*J.R. v. Walgreens Boots All., Inc.*,
470 F.Supp.3d 534 (D.S.C. 2020) .......................................................................... 17

*Jaskulske v. State Farm Mut. Auto. Ins. Co.*,
No. 14-869, 2014 WL 5530758 (D. Minn. Nov. 3, 2014) ......................................... 35

*Jones v. Capella Univ.*,
706 F.Supp.3d 822 (D. Minn. 2020) .......... 20

*Jones v. Walgreens Co.*,
No A11-1261, 2012 WL 1658895 (Minn. Ct. App. May 14, 2012) .......... 12

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. Apr. 6, 2023) .......... 30

*Khan v. Children's Nat'l Health Sys.*,
188 F.Supp.3d 524 (D. Md. 2016) .......... 19

*Kurowski v. Rush Sys. for Health*,
659 F.Supp.3d 931 (N.D. Ill. 2023) .......... 10, 13, 26, 28

*Kurowski v. Rush Sys. for Health*,
683 F.Supp.3d 836 (N.D. Ill. 2023) .......... 10, 22, 26, 28

*Lapensohn v. Hudson City Sav. Bank*,
No. 19-4576, 2021 WL 1581402 (E.D. Pa. Apr. 21, 2021) .......... 25

*Lehman v. Zumbrota-Mazeppa Pub. Sch.*,
No. A04-1226, 2005 WL 894756 (Minn. Ct. App. Apr. 19, 2005) .......... 11, 12

*Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*,
556 N.W.2d 557 (Minn. 1996) .......... 26

*Loeffler v. City of Anoka*,
No. 13-CV-2060, 2014 WL 4449674 (D. Minn. 2014) .......... 13

*Luckey v. Alside, Inc.*,
245 F.Supp.3d 1080 (D. Minn. 2017) .......... 34

*In re Maple*,
434 B.R. 363 (E.D. Va. 2010) .......... 17

*Mekhail v. N. Mem'l Health Care*,
726 F.Supp.3d 916 (D. Minn. 2024) .......... *passim*

*Mills v. Mayo Clinic*,
No. 19-cv-2859, 2021 WL 4134849 (D. Minn. Sept. 10, 2021) .......... 16

*Moreland v. Kladeck, Inc.*,
No. 21-CV-1975 2022 WL 1501122 (D. Minn. May 12, 2022) .......... 24, 25

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 27

*Okash v. Essentia Health*,
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .......... *passim*

*Okash v. Essentia Health*,
No. 23-482, 2025 WL 642913 (D. Minn. Feb. 27, 2025) .......... 28, 30

*Olen v. N. Tier Retail, LLC*,
No. 11-2665, 2012 WL 1580994 (D. Minn. May 4, 2012) .......... 35

*Reed v. Highlands of Edinburgh Sixth Ass'n*,
2020 WL 3042109 (Minn. Ct. App. June 8, 2020) .......... 22

*Rhoades v. Lourey*,
No. A18-1120, 2019 WL 1006804 (Minn. Ct. App. Mar. 4. 2019) .......... 7, 10

*Rollins v. City of Albert Lea*,
79 F.Supp.3d 946 (D. Minn. 2014) .......... 11

*Rosenberg v. C.R. Bard, Inc.*,
387 F.Supp.3d 572 (E.D. Pa. 2019) .......... 25

*Sherr v. HealthEast Care Sys.*,
262 F.Supp.3d 869 (D. Minn. 2017) .......... 15

*Smith v. Facebook, Inc.*,
262 F.Supp.3d 943 (N.D. Cal.), *aff'd* 745 F. App'x .......... 10

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 10

*Song v. Champion Petfoods USA, Inc.*,
No. 18-CV-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020), *aff'd*,
27 F.4th 1339 (8th Cir. 2022) .......... 33, 34

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 29

*Vacinek v. First Nat'l Bank*,
416 N.W.2d 795 (Minn. App. 1987) .......... 22, 23

*Wittwer v. Enbridge, Inc.*,
No. A06-1049, 2007 WL 152533 (Minn. Ct. App. Jan. 23, 2007) .......... 11

*Zean v. Fairview Health Servs.*,
*858 F.3d 520 (8th Cir. 2017)* .......... 3

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 26, 31

**Statutes**

18 U.S.C. § 2510 .......... 26, 31

18 U.S.C. § 2511(2)(d) .......... 27, 28, 29

Fed. R. Civ. P. 8(a)(2) .......... 6

2024 Minn. Laws Ch. 127, art. 66, §§ 7–11 .......... 7

Minn. Stat. § 144.291, subd. 2(c) .......... 8

Minn. Stat. § 144.293, subd. 2 (2023) .......... 7

Minn. Stat. § 325D.44, subd. 1 .......... 32

Minn. Stat. § 325D.45 .......... 33, 35, 36

## INTRODUCTION

Defendant Allina Health System ("Allina") moves to dismiss Plaintiffs Jacqueline Ahlers, Cathy Gebhardt-Lally and Patrick Witt (collectively "Plaintiffs") Amended Complaint ("Complaint") with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted claims and the putative class action.

## FACTUAL BACKGROUND

### I. The Parties.

Allina is a Minnesota nonprofit healthcare system based in Minneapolis, Minnesota. (*See* Doc. 30 ¶ 4.) Allina is a member of St. Francis Regional Medical Center ("SFR"), a nonprofit hospital, and manages SFR's operations. (*See id.*) Allina maintained the websites www.allinahealth.org and https://www.stfrancis-shakopee.com (collectively "website"). (*See id.* ¶ 11.) The website included a "MyChart" portal for patients to pay bills and view test results, among other activities. (*Id.*)

Plaintiff Jacqueline Ahlers claims she has been a patient of Allina since 2018. (*Id.* ¶ 27.) She claims to have used Allina's websites. (*Id.* ¶ 29.) Ahlers also claims to have an active Facebook account. (*Id.* ¶ 34.)

Plaintiff Cathy Gebhardt-Lally claims she has been a patient of SFR for approximately forty years. (*Id.* ¶ 46.) She claims to have used Allina's website and patient portal. (*Id.* ¶¶ 49-51.) Gebhardt-Lally also claims to be a Facebook user. (*Id.* ¶ 59(b).)

Plaintiff Patrick Witt claims he has been a patient of SFR for approximately twenty years. (*Id.* ¶ 60.) He claims to have used Allina's website and online platforms. (*Id.* ¶ 62.) Witt also claims to be a Facebook user. (*Id.* ¶ 71(b).)

## II. Allina's Websites.

The Complaint alleges that Allina installed pieces of code, the Meta Pixel ("Pixel") and Google Tag Manager (collectively "Tracking Technologies") on its website that transmitted visitors' activities to Meta.[1] (*Id.* ¶¶ 12-15.) The Complaint alleges Meta and Pixel track can transmit data in part through "cookies." (*See id.* ¶113 n.15, 141, 146.) "A first-party cookie is 'created by the Websites the user is visiting'—in this case, Defendant's Websites. A third-party cookie is 'created by a Websites [sic] with a domain name other than the one the user is currently visiting'—i.e., Facebook."

Plaintiffs allege that Allina's use of Pixel sent Meta information that website visitors provided Allina on its websites. (*See id.* ¶¶ 9, 119–20.) This allegedly included visitors' button clicks; health conditions; treatments; appointment information; information about providers; patient portal activity; Facebook ID; and IP addresses. (*Id.* ¶¶ 32, 43, 57, 69.) Plaintiffs allege that Allina shared the following data with Meta: IP addresses, Facebook ID, and device and unique online identifiers. (*Id.* ¶ 32.) Plaintiffs also allege that Pixel allows Allina to optimize the delivery of ads, measure cross-device conversions, create custom audiences, and decrease advertising and marketing costs. (*Id.* ¶ 108.) Plaintiffs allege that Allina deployed the Pixel without their consent. (*Id.* ¶¶ 35, 58, 70.)

---

[1] Facebook is part of the products offered by Meta. *Introducing Meta: A Social Technology Company*, Meta Platforms, Inc. (Oct. 28, 2021), https://about.fb.com/news/2021/10/facebook-company-is-now-meta; (*see also* Doc. 30 ¶ 9.)

### A. Plaintiffs' Patient Portal Allegations.

Plaintiffs allege that Allina's MyChart allows patients to pay bills, request prescription refills, review test results, exchange messages with providers and provide sensitive medical information. (*Id.* ¶ 11.) Allina's MyChart patient portal is available only to patients and is password protected.[2] Plaintiffs also allege that user activities ***related*** to the patient portal—such as navigating to the patient portal's log in page—are shared with Meta. (*Id.* ¶ 137.)

In footnote 17 of Plaintiffs' Complaint, Plaintiffs state that they "are unable to determine whether Tracking Technologies were embedded inside [Allina's] MyChart Portal." (*Id.* ¶ 140 n.17.) Therefore, to the extent that Plaintiffs' allegations are based on tracking technologies being deployed within MyChart, the Court should disregard these allegations, as Plaintiffs have failed to plausibly allege that tracking technologies were present inside MyChart.

## III. Allina's Policies.

The Complaint alleges that Allina violated its Notice of Privacy Practices for which Plaintiffs establish the defined term "Privacy Notice." (*See id.* ¶¶ 214–15; *see also* Decl. of Nicole Moen, Ex. A ("Notice of Privacy Practices.")[3] The Notice of Privacy Practices

---

[2] *See* https://account.allinahealth.org/dashboard/index.

[3] As the Complaint quotes and cites to these documents, their contents are alleged in the Complaint and are incorporated by reference. (*See* Doc. 30 ¶¶ 214-16.) Therefore, the Court may consider them for this Motion. *See Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017).*

explained how Allina used and disclosed medical information created or received by Allina and its doctors, nurses, and other caregivers. (Privacy Notice at 1.)

The Complaint also alleges that Allina's website has a Privacy Policy that describes how Allina would safeguard information on its website. (Doc. 30 ¶¶ 56, 68, 421; *see also* Decl. of Nicole Moen, Ex. B ("Privacy Policy").) The Privacy Policy explained that Allina's website may collect "information that identifies you personally" as well as "nonpersonally identifiable" information. (Privacy Policy at 2.) The Privacy Policy explained that the website used cookies and other technologies, including those from third-parties to collect information about users and that Allina may link personal information to information collected by these technologies. (*Id.* at 2, 4.) It specifically noted that Allina used Google Analytics. (*Id.* at 4.) Allina's Privacy Policy explained that Allina "shares information collected through this Site with third-party vendors who act for us or on our behalf. . . . [Including] to help us with our promotional efforts." (*Id.*) The Privacy Policy also explained that Allina would use these tracking technologies to "improve our marketing efforts, including through use of targeted advertising." (*Id.*) It further noted that these technologies may track users "online behaviors over time and across non-affiliated websites and/or delivering targeted advertisements either on this Site or on other websites." (*Id.*) The Privacy Policy explained that cookies are not required and that website visitors could reject them or choose to be alerted to their use and provided links and other information regarding opting-out of or avoiding certain tracking. (*Id.*) The Privacy Policy advised website users that "By using this Site, you are consenting to the collection, use, disclosure, and transfer of your information as described in this Policy." (*Id.* at 2.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint "does not need detailed factual allegations," it must contain enough specific facts "to raise a right to relief above the speculative level." *Id.* at 555. Thus, a complaint needs "more than labels and conclusions." *Id.*; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While the Court accepts as true the Complaint's factual allegations and draws reasonable inferences in the light most favorable to the plaintiff, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## ARGUMENT

### I. The HHS Guidance on which Plaintiffs rely has been vacated in relevant part.

Plaintiffs' Complaint relies on guidance ("Guidance") issued by the Department of Health and Human Services ("HHS") to support their claims. (*See, e.g.*, Doc. 30 ¶¶ 91 n.12, 230–33.) In June 2024, the Guidance was vacated for the purposes relevant here. *See Am. Hosp. Ass'n v. Becerra*, 738 F.Supp.3d 780, 807 (N.D. Tex. 2024). The court held that a website visit is at most "indicative" of health information, which is beyond the definition of individually identifiable health information ("IIHI") under the Health Insurance Portability and Accountability Act ("HIPAA"). *Id.* at 801–02. Further, information shared by a website user could not be IIHI because the person's subjective intent for visiting a

website would never be known. *Id.* at 803–04; *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22-5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023).

**II. The Complaint violates Rule 8.**

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (omission in original, citation omitted).

The Complaint uses broadly defined and undefined terms that lump allegations together, which "unfairly burden[s]" Allina and the Court, by requiring them to guess at the complained-of conduct. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F.Supp.2d 1151, 1153 (D. Minn. 2011) ("This is emphatically not the job of either a defendant or the Court."); *Chadbourne v. Walmart*, No. 19-1240, 2019 WL 4195269, at *2 (D. Minn. Aug. 8, 2019) (recommending dismissal of vague complaint), *R.&R. adopted*, 2019 WL 4195954 (D. Minn. Sept. 4, 2019).

Plaintiffs' defined term "Private Information" illustrates this problem. Plaintiffs define "Private Information" to include both "personally identifiable information ('PII') and protected health information ('PHI' . . .)." (Doc. 30 ¶ 9.) Plaintiffs then repeatedly use the term "Private Information" typically without any additional specifics. (*See, e.g.*, *id.* ¶¶ 13, 19–20, 22–24.) Plaintiffs incorrectly imply that laws protect "Private Information" (as defined by Plaintiffs) when they do not. (*See, e.g.*, *id.* ¶¶ 15, 19.) The point of this subterfuge is clear: to imply that medical information, which is subject to privacy laws and

regulations, may have been disclosed, when in reality the factual allegations at most only support that some personally identifiable information was disclosed.

Similarly, Plaintiffs use but never define the terms "Websites" or "Online Platforms," but they are then used as if they are defined terms. (*See, e.g.*, *id.* ¶¶ 14, 16, 48–49, 52.) As a result, the Court and Allina do not know what Plaintiffs are referring to. Rule 8, *Twombly*/*Iqbal*, and basic principles of fairness require more. *See Gurman*, 842 F.Supp.2d at 1153.

## III. Plaintiffs' claims fail for additional independent reasons.

### A. The Court should dismiss Plaintiffs' Minnesota Health Records Act claim.

In Count I, Plaintiffs allege that Allina violated the Minnesota Health Records Act ("MHRA"). Because Plaintiffs failed to plausibly allege that Allina disclosed their "health records" to Meta or any other third party, Count I must be dismissed.

The MHRA prohibits healthcare providers from "releas[ing] a patient's ***health records*** to a person" without the patient's consent or "specific authorization in law." Minn. Stat. § 144.293, subd. 2 (2023) (emphasis added).[4] Where there is no "release and disclosure of 'health records,'" the MHRA does not apply. *Rhoades v. Lourey*, No. A18-1120, 2019 WL 1006804, at *2 (Minn. Ct. App. Mar. 4. 2019).

---

[4] The Minnesota Legislature amended the MHRA effective May 25, 2024. 2024 Minn. Laws Ch. 127, art. 66, §§ 7–11. Allina cites to the pre-2024 amended version. The Legislature, however, did not change the definition of "health record." *See id.* Therefore, the changes are irrelevant to this motion.

Under the MHRA, a "health record" includes any information that "relates to the past, present, or future physical or mental health or condition of a patient; the provision of health care to a patient; or the past, present, or future payment for the provision of health care to a patient." Minn. Stat. § 144.291, subd. 2(c). "Health records" afforded protection under the MHRA include "laboratory reports, x-rays, prescriptions, and other technical information." *Furlow v. Madonna Summit of Byron*, No. A19-0987, 2020 WL 413356, at *2 (Minn. Ct. App. Jan. 27, 2020) (internal quotations omitted).

A "health record" under the MHRA does not extend to documents or records from which a person's health condition or patient status can be "inferred" or "deduced." *See Furlow*, 2020 WL 413356, at *2–3. Instead, to qualify as a "health record," a record must "expressly" state an individual's past, present, or future physical or mental health condition as a patient or provision of health care. *Id.* at *3.

Here, Plaintiffs make the conclusory allegation that by using Allina's website, Plaintiffs exchanged information with Allina that concerned their past, present, and future health conditions and provision of health care, and thus creating an MHRA health record. (*See* Doc. 30 ¶ 310.) Plaintiffs further allege that by Allina embedding Pixel onto its website, it unlawfully disclosed their health records to Meta. (*See id.*) These conclusory allegations do not support an MHRA claim. Plaintiffs fail to allege facts identifying any "health records" Allina has allegedly disclosed to a third party. Plaintiffs simply allege that URL information, button click, and other similar information from public pages on Allina's websites would be transmitted to Facebook. (*See id.* ¶¶ 119–213.) Browsing history metadata from a public website does not meet the definition of a "health record" because

it does not expressly reveal a patient's past, present, or future physical or mental health condition.

First, Allina has no way of determining whether a public website visitor is in fact the person that has been associated with the relevant IP address, such as in the case where a family member is using the computer which has otherwise been typically used by an Allina patient. But even if one could infer that a website visitor was an Allina patient (which one cannot), this would not be sufficient. *See Furlow*, 2020 WL 413356, at *3 ("While a viewer of the post may infer that V.F. was receiving care in a nursing home, there is nothing explicitly in the photograph or caption that goes to the nature of the care or condition.").

Second, even assuming Allina had a mechanism to determine that the public website visitor was in fact a "patient," it would nevertheless be impossible for Allina to determine whether the information the visitor shared related to a specific ***patient's*** healthcare. A person accessing the website could be doing so on behalf themselves as a patient or for another person or another reason such as researching a condition the person is interested in but does not have.

Because a recipient of the data would not know the website user's subjective intent, the recipient could not determine that the person was a patient nor that the information contained the person's health records. *See Becerra*, 738 F.Supp.3d at 803–04 (adopting a similar argument under HIPAA). Thus, even if Allina shared all the information listed in Paragraphs 43, 57, and 69 with Meta, it still did not share a "health record."

Where, as here, Plaintiffs cannot plausibly allege a substantive, direct disclosure of their "health records," Minnesota courts have ruled that the MHRA does not apply. *See Furlow* 2020 WL 413356, at *1, 3; *Rhoades*, 2019 WL 1006804, at *1–2. Other federal courts have disposed of similar theories under HIPAA[5], which contains nearly identical language to the MHRA, as well as California's Confidentiality of Medical Information Act ("CMIA"). *Smith v. Facebook, Inc.,* 745 F. App'x 8, 9 (9th Cir. 2018). *Kurowski v. Rush Sys. for Health* ("*Rush I*"), 659 F.Supp.3d 931, 939 (N.D. Ill. 2023) (holding that the "hypothetical data disclosures" from the plaintiff's "clicks on certain areas of [the health provider's] public website" did not involve the "the past, present, or future physical or mental health or condition of an individual"); *see also Smith v. Facebook, Inc.*, 262 F.Supp.3d 943, 954–55 (N.D. Cal.), *aff'd* 745 F. App'x (finding that URLs reflecting searches for doctors, melanoma treatment, and intestine transplants did not relate to the "past, present, or future physical or mental health or condition of an individual"); *Kurowski v. Rush Sys. for Health* ("*Rush II*"), 683 F.Supp.3d 836, 850–51 (N.D. Ill. 2023) (concluding under virtually identical allegations that mere metadata is not protected information); *Cousin v. Sharp Healthcare,* 681 F.Supp.3d 1117, 1128 (S.D. Cal. 2023) (similar).

Finally, Plaintiffs do not provide any ***specific*** examples of how ***they*** used the website, where specifically they engaged in that conduct, and what ***specifically*** was

[5] HIPAA does not provide for a private right of action. *See Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009).

disclosed. (*See, e.g.*, Doc. 30 ¶¶ 308–18; *see also* 166–203 (discussing hypothetical examples).) Such allegations are insufficient to survive a motion to dismiss. *See Okash v. Essentia Health* ("*Okash I*"), No. 23-482, 2024 WL 1285779, at *5 (D. Minn. Mar. 26, 2024) (dismissing MHRA claim on this basis); *but see Mekhail v. N. Mem'l Health Care*, 726 F.Supp.3d 916, 935–36 (D. Minn. 2024) (rejecting a similar argument); *In re Grp. Health Plan Litig.*, 709 F.Supp.3d 707, 713 (D. Minn. 2023) (same).

Count I should be dismissed.

**B. Plaintiffs fail to state a claim for Invasion of Privacy.**

Whether Plaintiffs' claims are premised on an intrusion upon seclusion theory or publication private facts theory, Plaintiffs fail to plausibly allege essential elements of either theory. (Doc. 30 at ¶¶ 319–32.)

**1. Plaintiffs fail to state a claim for Intrusion Upon Seclusion.**

A claim for intrusion upon has three elements: "(a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy." *Rollins v. City of Albert Lea*, 79 F.Supp.3d 946, 960 (D. Minn. 2014). Plaintiffs fail to plausibly allege either of the first two elements.

**a. Plaintiffs fail to allege an actionable "intrusion" by Allina.**

Plaintiffs fail to allege any "intrusion" by Allina. For a defendant to "invade" a plaintiff's private affairs, the defendant must partake in some "affirmative" wrongful "act" to "obtain[] the information" at issue, such as eavesdropping or spying. *Lehman v. Zumbrota-Mazeppa Pub. Sch.*, No. A04-1226, 2005 WL 894756, at *4 (Minn. Ct. App. Apr. 19, 2005) (emphasis added); *see also Wittwer v. Enbridge, Inc.*, No. A06-1049, 2007

WL 152533, at *4 (Minn. Ct. App. Jan. 23, 2007) (holding that because intrusion upon seclusion is an intentional tort, "there must be an intentional invasion of privacy such as eavesdropping or spying").

If a plaintiff voluntarily provides information to a defendant, a defendant has not intruded into the plaintiff's private affairs, ***even if*** the defendant later discloses that information to a third party. *See Lehman*, 2005 WL 894756, at *4 (affirming lack of intrusion where plaintiff voluntarily provided his medical leave letter which was later disclosed to the press—noting that what plaintiff "object[ed] to is not the school district obtaining the letter but its publication of the letter"); *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F.Supp.2d 1080, 1083 n.1 (D. Minn. 1999) ("[P]laintiff voluntarily disclosed her medical circumstances to [the defendant] and cannot claim that he obtained the information by intrusive means."); *Jones v. Walgreens Co.*, No A11-1261, 2012 WL 1658895, at *4 (Minn. Ct. App. May 14, 2012) (affirming dismissal for lack of intrusion where defendants knew plaintiff's medical and insurance information because they worked at the pharmacy, not because they invaded a private room or used their senses to intrude into plaintiff's private affairs); *Lehman*, 2005 WL 894756, at *4 (affirming lack of intrusion where plaintiff voluntarily provided letter regarding his medical leave which was later disclosed to the press).

Plaintiffs allege they voluntarily visited Allina's website. (*See* Doc. 30 ¶¶ 29, 48–51, 63.) Plaintiffs cannot claim surprise that Allina knows what webpages Plaintiffs visited on Allina's own website. Courts dismiss intrusion upon seclusion claims under such facts. *See Okash I*, 2024 WL 1285779, at *7 & n.9 ("Courts generally agree that when a plaintiff

voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta"); *but see Grp. Health Plan*, 2023 WL 8850243, at *3 (use of Facebook Pixel is "suggestive of intentional" intrusion).

Plaintiffs allege that Allina's use of the Pixel may have resulted in Facebook also obtaining that data. Indeed, Plaintiffs specifically allege that third parties are the interceptors. (*See* Doc. 30 ¶¶ 13, 14, 31, 90, 92, 102, 107, 220, 240.) Where a third party is the interceptor, there is no intrusion by Allina and thus no claim for intrusion upon seclusion against Allina. *See Mekhail*, 726 F.Supp.3d at 936. An intrusion by Allina "cannot be plausibly alleged where . . . Meta (or Meta's Pixel), rather than [Allina], [] made the interception." *Id.*; *see also Rush I*, 659 F.Supp.3d at 944 (holding that when "the actual intrusion upon patients' seclusion . . . is carried out by third parties," an intrusion claim against the healthcare provider fails).

**b. Plaintiffs fail to allege "highly offensive" conduct by Allina.**

Even assuming Allina committed an unlawful intrusion into Plaintiffs' privacy, Plaintiffs fail to plausibly allege that the Pixel's disclosure of hyper-technical browsing data to Meta is the kind of "highly offensive" intrusion forbidden by Minnesota privacy law. "[P]laintiffs must meet a high threshold of offensiveness and expectation of privacy to have a viable claim for intrusion upon seclusion." *Loeffler v. City of Anoka*, No. 13-CV-2060, 2014 WL 4449674, at *26 (D. Minn. 2014) (collecting cases). Minnesota courts will not hesitate to dismiss an intrusion-upon-seclusion claim when the plaintiff fails to meet this bar. *See, e.g., id.* at *26-27 (collecting cases dismissing intrusion claims brought against government officials who accessed plaintiffs' identifying information via driver's

license databases; calling such data access "not of the type that would be highly offensive to a reasonable person").

The only information of Plaintiffs' that even arguably was "disclosed" were "cookies" containing URLs of public webpages Plaintiff has visited on Allina's website. But there is nothing "specific" or "personal" about cookies containing this kind of high-level web-browsing information. Courts have held that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1090 (N.D. Cal. 2022); *Google Priv. Pol'y Litig.*, 58 F.Supp.3d 968, 987–88 (N.D. Cal. 2014); *but see Grp. Health Plan*, 2023 WL 8850243, at *3. This is particularly true where the data allegedly collected is not "sufficiently specific or personal." *Hammerling*, 615 F.Supp.3d at 1091. That is exactly the case here. Count II should be dismissed.

**2. Plaintiffs fail to state a claim for Publication of Private Facts.**

A "claim for publication of private facts requires that private information be made public." *Cieslack v. Easly*, No. 17-2338, 2018 WL 2926502, at *2 (D. Minn. June 11, 2018). "Publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 557 (Minn. 2003). "[A]bsent dissemination to the public at large, [a] claimant's 'private persona' has not been violated." *Id.*

In *Bodah*, the Minnesota Supreme Court held that the dissemination of "204 employees' social security numbers to 16 terminal managers in six states" did not constitute "publicity" to withstand a motion to dismiss. *Bodah*, 663 N.W.2d at 557–59. In *Sherr v. HealthEast Care Sys.*, 262 F.Supp.3d 869, 881–82 (D. Minn. 2017), the court held that the alleged dissemination by a health care provider "to a community of 35–40 individuals does not constitute publicity" and dismissed for failure to state a claim. In *Cieslack*, the court held that a disclosure "even if to 50 or 100 new employees, is not sure to reach the public" and granted a motion to dismiss plaintiff's claim for publication of private facts. *Cieslack*, 2018 WL 2926502, at *2; *see also Mekhail*, 726 F.Supp.3d at 936 (noting that a publication of private facts requires that the matter be made public or to enough people that it becomes public knowledge).

Here, Plaintiffs do not allege that Allina disclosed their information to the public at large. Plaintiff alleges only that Allina disclosed information to discrete set of third parties whose tracking technologies Allina allegedly used, such as Meta and Google (*See* Doc. 30 ¶¶ 9, 17, 20, 112–13, 120); *see also Sherr*, 262 F.Supp.3d at 881 (bald conclusions do not sufficiently allege publicity). As in *Bodah*, *Sherr*, and *Cieslack*, these alleged disclosures do not constitute "publicity" because they were not made to the public at large. Because Plaintiffs have not alleged "publicity," the Court should dismiss Plaintiffs' claim for publication of private facts.

### C. Plaintiffs fail to state a claim for Breach of Implied Contract.

"Under Minnesota law, a party alleging an implied contract 'must still prove all the essential elements of [a] contract.'" *Chey v. Metro. Airports Comm'n*, No. 22-CV-1429,

2023 WL 2308272, at *6 (D. Minn. Mar. 1, 2023) internal citation omitted). To plausibly allege a breach of contract claim in Minnesota, a plaintiff must allege the following four elements: (1) the formation of a contract, (2) performance by the plaintiff of any conditions precedent, (3) a material breach of the contract by the defendant, and (4) damages. *Chey*, 2023 WL 2308272, at *6 (additional citations omitted). "A contract may be implied in fact where the circumstances clearly and unequivocally indicate the intention of the parties to enter into a contract." *Id.* (cleaned up). There must be "a meeting of the minds as to the terms of the contract." *Tri-State Bobcat*, 338 F.Supp.3d at 982.

Plaintiffs' breach of implied contract claim merely sets forth a formulaic recitation of the elements for an implied contract claim, not any substantive factual allegations to underpin their assertions. *Twombly*, 550 U.S. at 555 (stating a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")

In this case, Plaintiffs' argument relies solely on the fact that they did not consent to their information being collected when they used Allina's website. (Doc. 30 ¶¶ 23, 35, 44, 58, 335-38.) That allegation is not sufficient to substantiate Plaintiffs' claim that an implied contract existed between the Plaintiffs and Allina. *See Mills v. Mayo Clinic*, No. 19-cv-2859, 2021 WL 4134849, at *3 (D. Minn. Sept. 10, 2021) ("The test of contractual formation is an objective one, to be judged by the words and actions of the parties." (internal citations omitted).

To the extent Plaintiffs argue that their implied contract claim is based upon Allina's Notice of Privacy Practices statement, (Doc. 30 ¶¶ 214–20; Moen Decl., Ex. A), that notice

is a federally-mandated HIPAA notice, which multiple courts have held is not a bargained-for contract. *In re Maple*, 434 B.R. 363, 371 (E.D. Va. 2010); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F.Supp.3d 1359, 1367–69 (S.D. Fla. 2017); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-md-2904, 2021 WL 5937742, at *20 (D.N.J. Dec. 16, 2021); *J.R. v. Walgreens Boots All., Inc.*, 470 F.Supp.3d 534, 559 (D.S.C. 2020).

To the extent that Plaintiffs base their implied contract on Allina's websites' Privacy Policy, the Privacy Policy provides that Allina can track and share data with third parties. (*See* Privacy Policy at 2, 4.) So, even if there were an implied contract, Plaintiffs allege that Allina acted consistently with it.

Any argument that the parties had mutuality of assent is also without merit. "'Mutual assent entails a meeting of the minds concerning a contract's essential elements,' and '[w]hether mutual assent exists is tested under an objective standard.'" *Azarax, Inc. v. Syverson*, 398 F.Supp.3d 425, 435 (D. Minn. 2019). Here, there are no factual allegations that plausibly show that Defendant agreed to not use pixels or tracking technology on its website. *But see Grp. Health Plan*, 709 F.Supp.3d at 715 (refusing to resolve this at the motion to dismiss stage).

Furthermore, Plaintiffs have failed to allege facts to support the consideration and damages elements of their claim. While it is anticipated that Plaintiffs will argue that their data was provided in exchange for services, Plaintiffs fail to allege any facts showing that they actually used Defendant's website in exchange for Defendant treating them. *See*

*Franklin v. Carpenter*, 244 N.W.2d 492, 495 (Minn. 1976) ("When there is a lack of consideration, no valid contract is ever formed.").

The damages Plaintiffs seek, (*see, e.g.*, Doc. 30 ¶ 339), are not recoverable in contract or otherwise. Plaintiffs have not alleged that the information about their web browsing history that has allegedly been disclosed to Facebook has actually been used to defraud or embarrass them or otherwise cause any financial loss or other injury. Instead, Plaintiffs rely on a series of novel theories as to why they should be entitled to damages, including (1) the diminution in value of Plaintiffs' and Class members' private information, and (2) the deprivation of the benefit of the bargain. (*Id.*) Plaintiffs allege no facts to support their claimed damages. In fact, many other jurisdictions have expressly rejected recovery for the type of injuries Plaintiffs alleges. *See In re Facebook Internet Tracking Litig.*, 140 F.Supp.3d 922, 931 (N.D. Cal. 2015)

Merely alleging that "that the information collected by Facebook's cookies ha[d] economic value" and that this "value may be significant when user information is aggregated" is insufficient when plaintiffs do not allege that they would have been willing to sell their personal information or that defendant's "purported conduct lessened the value of that information or affected its marketability." *Id.* at 930. This is insufficient to establish a necessary injury in fact. *Id.* at 932. Considering similar allegations, the *Facebook Internet* court noted that many other decisions have "found insufficient generalized assertions of economic harm based solely on the alleged value of personal information." *Id.* at 930. As in *Facebook Internet*, Plaintiffs have not alleged (1) they would actually choose to sell information to unspecified third-party buyers or (2) that those buyers would now pay less

for this information than they would have absent Allina's alleged conduct. *Compare id.* at 932, *with* Doc. 30 ¶¶ 339, 371.

Where a plaintiff alleged that "the value of her personally identifiable information diminished" when hackers obtained her actual medical records and Social Security number, a federal court in Maryland dismissed the case for lack of injury because the plaintiff had failed to "explain how the hackers' possession of that information ha[d] diminished its value" or "assert that she would ever actually sell her own personal information." *Khan v. Children's Nat'l Health Sys.*, 188 F.Supp.3d 524, 533-34 (D. Md. 2016); *see also Gubala v. Time Warner Cable, Inc.*, 15-1078, 2016 WL 3390415, at *4 (E.D. Wis. June 17, 2016) (no injury based on defendant's retention of plaintiff's "personally identifiable information"; "[a] statement that consumers highly value the privacy of their personally identifiable information . . . does not demonstrate that the plaintiff has suffered a concrete injury"); *see also Hameed-Bolden v. Forever 21 Retail, Inc.*, No. 18-03019, 2018 WL 6802818, at *3 (C.D. Cal. Oct. 1, 2018) ("[a] plaintiff must plead 'appreciable and actual damages' in relation to [] breach of contract claim.") (citation omitted); *see also Attias v. CareFirst, Inc.*, 365 F.Supp.3d 1, 12 (D. D.C. 2019) (rejecting claim for actual damages under benefit-of-the-bargain theory).

Plaintiffs' breach of implied contract claim should be dismissed.

### D. Plaintiffs fail to state a claim for Unjust Enrichment.

To state a claim for unjust enrichment, a plaintiff must allege facts showing that: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant appreciated the benefit, (3) the defendant knowingly accepted the benefit, and (4) the retention of the

benefit would be unjust or inequitable under the circumstances. *Hall v. Centerspace, LP*, No. 22-cv-2028, 2023 WL 3435100, at *6 (D. Minn. May 12, 2023). A plaintiff must also allege an "uncompensated" benefit. *See Amann v. Allianz Income Mgmt. Servs., Inc.*, No. A09-1891, 2010 WL 3220061, at *5 (Minn. Ct. App. Aug. 17, 2010). "It is not enough that 'one party benefits from the efforts or obligations of others, but instead that party must have been unjustly enriched in the sense that the term unjustly could mean illegally or unlawfully.'" *Jones v. Capella Univ.*, 706 F.Supp.3d 822, 827 (D. Minn. 2020) (internal citation omitted).

In this case, Plaintiffs have failed to allege facts to plausibly allege any of the elements to substantiate an unjust enrichment claim. Here, Plaintiffs include a vague and conclusory allegation that by using Allina's free website they conferred a "benefit" upon Allina, which it unjustly retained. (Doc. 30 ¶¶ 343–44.) Plaintiffs further allege that Allina received "substantial monetary compensation," without providing any details, including who allegedly provided such monetary compensation to Allina. (*Id.* ¶ 344). Plaintiffs' conclusory allegations are insufficient to plausibly allege a benefit. *See Iqbal*, 556 U.S. at 678; *but see Mekhail*, 2024 WL 1332260, at *13; *Okash I*, 2024 WL 1285779, at *7.

Even if Plaintiffs conferred a benefit on Allina, the Complaint fails to allege any benefit was "uncompensated." *See Amann*, 2010 WL 3220061, at *5. Plaintiffs allege they received substantial benefits from the use of Allina website including the ability to communicate with Allina and research health conditions and providers.

Moreover, the "plausibly alleged exchange" here was Allina providing healthcare to Plaintiffs in exchange for payment. *See Hall*, 2023 WL 3435100, at *7. Allina's data

practices on its websites cannot serve as the basis for an unjust enrichment claim because Plaintiffs do not allege that they paid more for healthcare to prevent data sharing than those who did not provide data on Allina's websites. *See id.* (dismissing an unjust enrichment claim and holding that the "plausibly alleged exchange" did not include an allegation that differentiated the plaintiff or class members from any other person engaged in similar transactions in exchange for greater protection of personal identifying information).

Plaintiffs' Complaint further fails to allege sufficient facts that Allina appreciated the benefit or that Allina knowingly accepted the "benefit." (Doc. 30 ¶¶ 341-47.)

Finally, the Complaint does not allege that Allina acted unjustly. Plaintiffs' basis for their unjust enrichment claim is that Allina used tracking technologies and shared information with third parties. However, Allina disclosed that it used tracking technologies, including cookies and Google Analytics, and third parties may receive information. (*See* Privacy Policy at 4.) It is not plausibly "unjust" for Allina to act consistently with its statements to Plaintiffs. *But see Mekhail*, 2024 WL 1332260, at *13. That Allina allegedly benefited from this practice does not give rise to an unjust enrichment claim. *See Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).

Because Plaintiffs' threadbare recitals of the elements of a cause of action cannot satisfy the plausibility standard, Plaintiffs' unjust enrichment claim must be dismissed for failure to state a claim. *See Iqbal*, 556 U.S. at 678.

Similar allegations and theories levied against other healthcare providers have repeatedly been rejected by other courts at the motion to dismiss stage. *See Rush II*, 683 F.Supp.3d at 852 (dismissing unjust enrichment claim).

**E. Plaintiffs fail to state a claim for Breach of Fiduciary Duty.**

Plaintiffs further fail to allege sufficient facts to show that Allina owed a fiduciary duty to Plaintiffs when Plaintiffs accessed Defendant's publicly available website. (Doc. 30 ¶¶ 348-63.) "A breach of fiduciary duty claim consists of four elements: duty, breach, causation, and damages." *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). A fiduciary relationship may exist where a party places confidence in another who has superiority and influence over the other. *See Vacinek v. First Nat'l Bank*, 416 N.W.2d 795, 799 (Minn. App. 1987).

Plaintiffs' breach of fiduciary duty claim sets forth a formulaic recitation of the elements without any substantive factual allegations to underpin their assertions. *See Twombly*, 550 U.S. at 555 (stating a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

Plaintiffs claim that the duty at issue arises from HIPAA or the MHRA. (Doc. 30 ¶¶ 354–60.) However, "[t]here is no Minnesota caselaw holding that physicians or hospital staff members have a fiduciary duty toward their patients." *Hemmerlin-Stewart v. Allina Hosps. & Clinics*, No. A05-100, 2005 WL 2143691, at *3 (Minn. Ct. App. Sept. 6, 2005). "The MHRA (or HIPAA) do not create a fiduciary duty on health care providers either, because a fiduciary duty is not expressly present." *Grp. Health Plan*, 709 F.Supp.3d at 716; *see also Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009); *Reed v.*

*Highlands of Edinburgh Sixth Ass'n*, 2020 WL 3042109, at *7 (Minn. Ct. App. June 8, 2020) (rejecting breach of fiduciary duty claim based on Minnesota statute that did not create a fiduciary duty).

Plaintiffs' allegation that Allina breached duties owed under the MHRA (Doc. 30 ¶ 359) also fails since the MHRA is not applicable to the facts alleged in this case, as addressed above in Section I. Similarly, Plaintiffs have not alleged sufficient facts to support its conclusory assertion that the information at issue falls within the Minnesota's Patient Bill of Rights.[6]

Moreover, as discussed above, it is impossible to identify a website visitor's subjective intent for accessing the public website or know that the visitor is a patient. Without being able to reliably identify that someone is a patient and is acting as a patient, there can be no fiduciary relationship because Allina does not know its relationship to the visitor, much less whether a visitor to its website is "placing confidence" in Allina. *See Vacinek*, 416 N.W.2d at 799-800.

Notably, when faced with virtually identical allegations to those allegations in Plaintiffs' Complaint, courts have found there is no fiduciary duty between the plaintiff and the healthcare provider when the plaintiff was using the healthcare provider's website. *Cousin*, 681 F.Supp.3d at 1125; *see also Grp. Health Plan*, 709 F.Supp.3d at 716 (dismissing breach of fiduciary duty claim under Minnesota law).

[6] Similar to HIPAA, Minnesota's Patient Bill of Rights does not create a private cause of action. *See Findling v. Grp. Health Plan, Inc.*, 979 N.W.2d 234, 243–44 (Minn. Ct. App. 2022), *rev'd on other grounds*, 998 N.W.2d 1 (Minn. 2023).

The Court should dismiss Plaintiffs' breach of fiduciary duty claim.

### F. Plaintiffs withdrew their Breach of Confidence claim.

Plaintiffs withdrew their Breach of Confidence claim in Count VI.

### G. Plaintiffs fail to plausibly allege sufficient facts to support their Negligence Claim.

Plaintiffs' allegations also fail to state a claim for negligence. "Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Moreland v. Kladeck*, *Inc.*, No. 21-CV-1975 2022 WL 1501122, at *6 (D. Minn. May 12, 2022) (quoting *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014)). To survive a motion to dismiss, a plaintiff must plead sufficient facts to plausibly allege: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury was sustained by the plaintiff, and (4) that the breach of the duty was the proximate cause of the injury. *Id.*; *DeShane v. City of Minneapolis*, No. 21-1452, 2022 WL 624579, at *3 (D. Minn. Mar. 3, 2022).

In this case, Plaintiffs' allegation that Defendant had a duty to keep its patients' "Private Information" confidential is misleading. (Doc. 30 at ¶ 373.) "In Minnesota, the duty to exercise reasonable care arises from the probability or foreseeability of injury to the plaintiff." *Moreland*, 2022 WL 1501122, at *6 (quoting *Domagala v. Rolland*, 805 N.W.2d 14, 26 (Minn. 2011)). "The existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty." *Doe 169*, 845 N.W.2d at 177. Foreseeability is a question of law. *Id.* "To determine the foreseeability of an injury, the Court must 'look to the defendant's conduct and ask whether it was objectively reasonable

to expect the specific danger causing the plaintiff's injury.'" *Moreland*, 2022 WL 1501122, at *6 (quoting *Domagala*, 805 N.W.2d at 27).

Even if Plaintiffs managed to establish a duty owed by Allina (they have not), Plaintiffs fail to establish any breach of such duty. Although Allina does not contest that it has a duty to maintain the confidentiality of its patients "health records" as defined under Minnesota law, the information at issue here—browsing metadata information from a public website—does not constitute confidential health records as defined under Minnesota law. (*See* Doc. 30 ¶¶ 26-71.)

Plaintiffs have further failed to allege how they or anyone else was harmed. To state a viable negligence claim, a plaintiff is required to allege facts to show that he or she personally suffered an injury. *DeShane*, 2022 WL 624579, at *3. At most, Plaintiffs allege conclusory statements regarding the injury they have suffered (Doc. 30 ¶ 378) as they fail to identify any facts showing what damages they have incurred. Regardless, Plaintiffs' allegations are not sufficient to state a negligence claim. *DeShane*, 2022 WL 624579, at *4 (rejecting negligence claim for conclusory allegations of harm); *Rosenberg v. C.R. Bard, Inc.*, 387 F.Supp.3d 572, 582 (E.D. Pa. 2019) (holding that conclusory allegations of breach caused the consumer harm were insufficient to state a claim under Pennsylvania law); *Lapensohn v. Hudson City Sav. Bank*, No. 19-4576, 2021 WL 1581402, at *14 (E.D. Pa. Apr. 21, 2021) (dismissing negligence claim for failure to allege facts to support actual damages).

Moreover, Plaintiffs have not described any specific economic damages, and to the extent that their damages are general or non-economic damages, such as emotional distress,

such damages are not available in Minnesota, because Plaintiffs have not alleged a physical injury, a "zone of danger" injury, or a direct invasion of their rights in the nature of "willful, wanton, or malicious conduct." *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.*, 556 N.W.2d 557, 560 (Minn. 1996).

Plaintiffs' negligence claim should be dismissed.

### H. Plaintiffs' ECPA claim fails as a matter of law.

A claim under the ECPA (18 U.S.C. § 2510, et seq.) "requires a showing that the defendant (1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See Facebook Internet Tracking Litig.*, 263 F.Supp.3d 836, 844 (N.D. Cal. 2017), *rev'd in part on other grounds* in *In re Facebook Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) (internal quotations omitted).

Plaintiffs' claim for an alleged violation of the ECPA, also known as the federal Wiretap Act, has been repeatedly rejected by other courts addressing virtually identical allegations. *Rush I*, 659 F.Supp.3d at 937–40 (dismissing ECPA claim); *Rush II*, 683 F.Supp.3d at 842–45 (affirming dismissal of ECPA claim); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (holding that the personally identifiable information "allegedly disclosed by Facebook and Zygna is record information about a user's communication, not the communication itself" meaning it is not "contents" under the ECPA). For their ECPA claim, Plaintiffs allege that Allina violated section 2511(1) of the statute in at least one of three ways:

(1) by intentionally *intercepting* Plaintiffs' electronic communications (Doc. 30 at ¶ 393, citing 18 U.S.C. § 2511(1)(a));

(2) by intentionally disclosing Plaintiffs' electronic communications (*id.* at ¶ 388, citing 18 U.S.C. § 2511(1)(c)), "knowing or having reason to know that the electronic communications were obtained in violation of the ECPA" (*id.*); and

(3) by intentionally using, or endeavoring to use, the contents of plaintiffs' electronic communications "knowing or having reason to know that the electronic communications were obtained in violation of the ECPA." (*id.* at ¶ 389 (citing 18 U.S.C. § 2511(1)(d))

Plaintiffs failed to allege that an unlawful interception occurred or the contents of a communication were intercepted.

**1. Plaintiffs fail to allege any unlawful interception.**

Plaintiffs cannot establish that any communication has been unlawfully "intercepted" by Allina, which is fatal its ECPA claim. The ECPA is a one-party consent statute. 18 U.S.C. § 2511(2)(d)) (stating the ECPA does not make it unlawful for someone to "intercept . . . electronic communication where such person is a party to the communication."); *see also In re Nickelodeon Consumer Priv. Litig.,* 827 F.3d 262, 275 (3d Cir. 2016) (discussing "one-party consent language in the Wiretap Act"). Stated differently, a party to a communication cannot unlawfully "intercept" a communication directed to it and cannot be held liable for "eavesdropping" upon itself. 18 U.S.C. § 2511(2)(d)); *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468, at *3–4 (D. Minn. June 11, 2009); *Okash I*, 2024 WL 1285779, at *3.

Simply put, a healthcare provider cannot unlawfully intercept a communication to itself. *See Okash I*, 2024 WL 1285779, at *3–4 ("Essentia did not unlawfully intercept Okash's communications because Essentia was a party to the communication."); *Rush I*, 659 F.Supp.3d at 938 (similar); *Rush II*, 683 F.Supp.3d at 842 (affirming same). Allina is identically situated.

Both the case law and the facts pled by Plaintiffs establish that Allina was a party to (and intended recipient of) the alleged communications on its website. (Doc. 30 ¶¶ 119–213.) Plaintiffs therefore cannot establish the second element of their ECPA claim—an unlawful interception of a communication. The claim therefore should be dismissed as a matter of law and with prejudice, as further amendment would be futile. *Okash v. Essentia Health* ("*Okash II*"), No. 23-482, 2025 WL 642913, at *3–4 (D. Minn. Feb. 27, 2025) (dismissing an ECPA claim in a nearly identical case with prejudice).

**2. Plaintiffs do not adequately allege that the tortious or criminal conduct exception applies.**

Plaintiffs' allegations that the tortious or criminal conduct exception should save its ECPA claim is also without merit and insufficiently pled. (Doc. 30 ¶¶ 399-416.) The criminal or tortious conduct exception to the party exception applies only when "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). This exception, however, does not apply to the alleged interception itself; instead, "a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is

independent of the intentional act of recording." *Google Cookie*, 806 F.3d at 145 (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)); *see also Okash I*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (rejecting ECPA claim under virtually identical allegations because the criminal or tortious conduct exception is inapplicable).

Here, Plaintiffs do not plead facts showing that Allina intercepted any alleged communication for any purpose that was independent of the alleged use of the Pixel and with the purpose of committing a tortious or criminal act. *Caro*, 618 F.3d at 100; *Google Cookie*, 806 F.3d at 145 & n.81 ("all authority of which we are aware indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interception's fruits").

Plaintiffs' conclusory allegations that Allina's purpose in intercepting and disclosing the communications to Facebook through the Pixel was to commit various criminal and tortious acts (Doc. 30 ¶¶ 402–12)—are not supported by any plausibly pled facts. It is not enough for Plaintiffs to allege the Allina's secondary conduct might have violated some other law; it must allege facts that the interception itself was made for the specific purpose of committing the particular criminal or tortious act and with the intent to harm the plaintiffs in particular.

"[T]he focus is not upon whether the interception itself violated another law; it is upon whether the ***purpose*** for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original); *see also Caro*, 618 F.3d at 99 ("it is 'apparent from the context in which [Title XVIII] was enacted that the sort of conduct contemplated by the statute was an interception

by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed'" (quoting *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971))). The exception applies to situations where the recording party had an "evil" motivation for recording the conversation they were party to, "such as blackmail [or] stealing business secrets." *Capitol Recs.*, 2009 WL 1664468, at *4 (dismissing ECPA claim).

Plaintiffs' ECPA claim against Allina is tethered to the alleged transmission of browsing activities on the Allina website to Facebook, not any other independent tortious or criminal act. (*See, e.g.*, Doc. 30 ¶¶ 388–90) (alleging Allina "disclosed," "used," and "redirected" alleged communications "through the source code it embedded and ran on its web properties"). As Plaintiffs allege: the primary motivation in Defendant's use of the Pixel was to use the browsing history data for business purposes including advertising. (*Id.*, ¶¶ 108, 260.) Plaintiffs have not and cannot also plausibly allege sufficient facts to show that Allina had an "evil" intent when implementing and using the pixel. At most, the alleged intent of Defendant's conduct was to advance its advertising services to users of its websites, which is not sufficient under the crime-tort exception. *See, e.g., Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. Apr. 6, 2023) (dismissing wiretapping claim and collecting cases holding that a defendant's desire to "make money" through use of pixels is not sufficient under the crime-tort exception); *but see Mekhail*, 726 F.Supp.3d at 927–28 & n.4.

The criminal or tortious conduct exception to the one-party consent rule does not apply here. *See Okash II*, 2025 WL 642913, at *3–4.

### 3. Plaintiffs do not adequately allege that the contents of any of their communications were intercepted.

Plaintiffs' ECPA claim further fails because Plaintiffs have not pled facts showing that the "contents" of any communications were disclosed to Facebook—the required third element of their claim. Under the ECPA, the "contents" of a communication are defined as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Courts distinguish between "content" and "record" information. *See In re Zynga,* 750 F.3d at 1106–07 (concluding that, in the ECPA, "the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" such as a name, address, or the identity of a subscriber or customer).

Despite the conclusory assertions that patient "communications" are being shared with Facebook, what the Complaint actually describes is the sharing of a URL, *i.e.,* the address of the pages visited on Allina's websites, and other actions by users who may or may not be patients or have any relationship whatsoever with Allina. (*See* Doc. 30 ¶¶ 119-213.) Such information is not "contents" covered by the ECPA. *See Zynga*, 750 F.3d at 1108 (explaining that even if a URL could disclose that a person viewed the "page of a gay support group," such URLs "function[] like an 'address,'" not "contents" of a communication); *see also Cousin,* 681 F.Supp.3d at 1130 (relying on *Zynga* and dismissing California wiretap act claim); *Hammerling*, 615 F.Supp.3d at 1093 (concluding that information that merely allowed Google "to make 'educated guesses' about a

user's traits and habits," which was not sufficient to constitute the "contents" of the communications).

Further, although some courts have suggested that some URLs could rise to the level of a communication, such as when the URL reflects the results of a user search, Plaintiffs Ahlers and Witt have not alleged facts concerning any specific searches they conducted on the Allina's websites. *See In re Facebook Tracking*, 956 F.3d at 589. And Plaintiff Gebhardt-Lally's allegations about searches she performed on Defendant's public website, do not provide sufficient factual support to plausibly claim that the "content" of her communications were disclosed to Facebook. At most the URL in connection with Plaintiff Gebhardt-Lally's alleged search on Allina's public website may enable Facebook to draw an inference about the communication, but this is far different from revealing an actual personally identifiable patient record and medical history. *See Hammerling*, 615 F.Supp.3d at 1092–93 (dismissing a similar claim where the disclosed web browsing data could "only allow [the recipient of the data] to make 'educated guesses'" about a user's traits and habits"); *but see Mekhail*, 726 F.Supp.3d at 926; *Grp. Health Plan*, 709 F.Supp.3d at 718.

### I. Plaintiffs fail to state a claim under the Minnesota Deceptive Trade Practices Act.

Finally, Plaintiffs allege Allina violated the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA"), codified at Minn. Stat. § 325D.44, subd. 1. The MUDTPA bars certain misrepresentations regarding the nature of goods and services offered in the course of business. Minn. Stat. § 325D.44, subds. 1(5), (7). MUDTPA provides that a

person "likely to be damaged by a deceptive trade practice of another may be granted an injunction against it." Minn. Stat. § 325D.45, subd. 1. Rule 9(b)'s heightened pleading standard applies to MUDTPA claims. *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012).

**1. Plaintiffs fail to plausibly allege deceptive statements on which they relied.**

The Complaint alleges that Allina: (1) promised to protect information in its Privacy Policy; (2) acted unlawfully; (3) mispresented and/or omitted information related to transferring information to third parties; (4) failed to obtain consent; and (5) violated industry and legal standards. (*See* Doc. 30 ¶ 421.) Three of these (2) acting unlawfully, (4) failing to obtain consent, and (5) violating standards are not representations or omissions and so cannot serve as a basis for this claim even if the allegations were true (they are not).

Plaintiffs must show that Allina's misrepresentations and/or omissions would have deceived a reasonable consumer. *See Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205, 2020 WL 7624861, at *3 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022).

No reasonable consumer would be deceived because Allina's website was clear about what technologies it employed. Allina's website Privacy Policy specifically and affirmatively notified users of everything Plaintiffs complain of, including cookies, Google Analytics, other tracking technologies, the sharing of information, and its use in marketing. (*See* Privacy Policy at 2, 4.) Allina's website cannot be considered "deceptive," even at the Rule 12 stage, when it specifically provided notice of the actions on which the Complaint

is based. *See Song*, 2020 WL 7624861, at *3*; but see Mekhail*, 2024 WL 1332260, at *8 (declining to address the meaning of a representation at the motion to dismiss stage).

Plaintiffs must allege "a causal nexus between the conduct alleged to violate [Minnesota consumer protection laws] and the damages claimed. *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 4, 13 (Minn. 2001); *see also Luckey v. Alside, Inc.*, 245 F.Supp.3d 1080, 1098 (D. Minn. 2017). Plaintiffs, however, never allege that they or anyone relied on any supposed misrepresentation or omission. (*See* Doc. 30 ¶¶ 418–28.) Therefore, even if someone could have been misled by Allina's representations (they could not), Plaintiffs failed to plausibly allege a "causal nexus" between an alleged misrepresentation and any damages they suffered. *See Luckey*, 245 F.Supp.3d at 1098 (dismissing MUDTPA claim where the complaint contained only the conclusory statement that "'purchasers' relied on Alside's offending statements" and "no factual allegations about who heard or saw and relied on" supporting this conclusory statement).

Even if Plaintiffs had alleged reliance, their MUDPTA claim still fails as a matter of law as the alleged misrepresentations, concealment, and/or omissions alleged by Plaintiffs are not pled with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. *E-Shops*, 678 F.3d at 665. Thus, to meet Rule 9(b)'s particularity requirement, "a complaint must allege the who, what, where, when, and how, of the alleged fraud, as opposed to merely conclusory allegations that a defendant's conduct was fraudulent and deceptive." *Luckey*, 245 F.Supp.3d at 1093 (internal citation and quotations omitted). In this case, Plaintiffs' Complaint falls woefully short of the particularity standard as their allegations are, at best, conclusory. (Doc. 30 ¶¶ 418–28.) Plaintiffs have failed to

identify any allegedly misleading statement made by any particular individual, have failed to tether these statements to any specific facts describing their individual circumstances, and have failed to explain what made any of these statements false or misleading. As a matter of law, Plaintiffs generalized allegations do not meet the particularity standard. *See E-Shops*, 678 F.3d at 666 (affirming dismissal of misrepresentation claim in data-breach-context for failure to plead "false, deceptive, or misleading conduct" with particularity).

**2. Plaintiffs fail to allege that they are likely to suffer future harm.**

MUDTPA creates a remedy for a "person likely to be damaged by a deceptive trade practice." Minn. Stat. § 325D.45, subd. 1. A plaintiff must allege a likelihood of future harm. *See Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14-869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (dismissing a MUDTPA claim for failing to allege a likelihood of future harm).

A plaintiff alleging MUDTPA violations is on notice of the practice and can no longer be deceived or harmed by continued violations. *Jaskulske*, 2014 WL 5530758, at *6 ("Having experienced, investigated, and alleged the settlement practice, Jaskulske is on notice of the practice and can no longer say that he will again be deceived by the practice."); *see also Olen v. N. Tier Retail, LLC*, No. 11-2665, 2012 WL 1580994, at *6 (D. Minn. May 4, 2012). Because Plaintiffs are on notice of Allina's alleged practices, Plaintiffs cannot be deceived again if they choose to continue using Allina's website and so are not likely to be harmed. *But see Mekhail*, 726 F.Supp.3d at 933–34.

Even if Plaintiffs could be deceived, Plaintiffs' Complaint also fails to allege with particularity that they are subject to future damages. The allegations in Plaintiffs'

Complaint all refer to past harms and cannot sustain a MUDPTA claim. (Doc. 30 ¶¶ 418–28.) Because the MUDPTA applies to future or prospective damages, these past damages are irrelevant. *Gardner v. First Am. Title Ins. Co.*, 296 F.Supp.2d 1011, 1020 (D. Minn. 2003).

Relatedly, Plaintiffs appear to seek damages for the MUDTPA claim. (*See* Doc. 30 ¶ 427.) However, the only relief available under MDTPA is injunctive relief for future harms. *See* Minn. Stat. § 325D.45; *see also Chairez v. AW Distrib., Inc.*, No. 20-1473, 2021 WL 1600494, at *9 (D. Minn. Apr. 23, 2021) ("An injunction is the only available remedy for the [MDTPA] claim[.]"); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-1220, 2017 WL 1157098, at *7 (D. Minn. Mar. 27, 2017) (same); *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 476 (Minn. Ct. App. 1999). Because damages are not available, Plaintiffs' request for monetary relief under MUDTPA should be dismissed.

## CONCLUSION

For the foregoing reasons, Allina respectfully requests that the Court grant its Motion to Dismiss.

Dated: March 13, 2025

*s/ Nicole M. Moen*
Nicole M. Moen (#0329435)
Geoffrey Koslig (#0402717)
Maliya G. Rattliffe (#0401993)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Ste. 1500
Minneapolis, MN 55402-4400
Phone: (612) 492-7000
Fax: (612) 492-7077
nmoen@fredlaw.com
gkoslig@fredlaw.com
mrattliffe@fredlaw.com

***Attorneys for Defendant***
***Allina Health System***