# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

|  |  |
|---|---|
| JACQUELINE AHLERS, CATHY GEBHARDT-LALLY and PATRICK WITT, *individually and on behalf of those similarly situated*, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ALLINA HEALTH SYSTEMS, | ) ) |
| Defendant. | ) ) ) |

Case No. 0:24-cv-03674-SRN-ECW

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND ................................................................................. 2

   I.    Plaintiffs' Experiences with Allina's Websites. ................................................ 2

   II.   Allina's Websites' use of Tracking Technologies. .......................................... 4

   III.  Allina's MyChart Portal and its use of Tracking Technologies. ..................... 5

   IV.  Allina's Privacy Notice. ................................................................................ 6

LEGAL STANDARD ........................................................................................... 7

ARGUMENT ......................................................................................................... 7

   I.    THE HHS GUIDANCE HAS BEEN VACATED ONLY IN PART IN A MANNER THAT DOES NOT AFFECT PLAINTIFFS' ALLEGATIONS. ... 8

   II.   PLAINTIFFS' AMENDED COMPLAINT SATISFIES RULE 8. ............... 10

   III.  PLAINTIFFS' CLAIMS ARE ADEQUATELY PLEADED. ...................... 11

        A. Plaintiffs Properly Allege Violations of the MHRA. ............................... 11

        B. Plaintiffs Sufficiently Allege Invasion of Privacy. ................................... 14

           1. Plaintiffs Plead Intrusion Upon Seclusion. .......................................... 14

           2. Plaintiffs Plead Disclosure of Private Facts. ........................................ 15

        C. Plaintiffs Allege all Elements of Breach of Implied Contract. ................. 18

        D. Plaintiffs Plausibly Allege Unjust Enrichment. ........................................ 21

        E. Plaintiffs Allege all Elements of Breach of Fiduciary Duty. .................... 24

        F. Plaintiffs Allege Negligence. ................................................................... 27

           1. Plaintiffs Allege Duty. ........................................................................ 27

           2. Plaintiffs Allege Breach of Duty. ........................................................ 29

           3. Plaintiffs Allege Cognizable Damages. ................................................ 30

G.  Plaintiffs Allege Allina Violated the ECPA.  .............................................. 32

    1.  The Crime-Tort Exception Applies.  ...................................................... 32

    2.  Plaintiffs allege Allina intended to harm them personally.  .................. 36

    3.  The Contents of Plaintiffs' Communications were Intercepted.  .......... 37

    4.  Factual questions should not be resolved on the pleadings.................. 39

H.  Plaintiffs Plausibly Allege that Allina Violated the MUDTPA. ............... 39

    1.  Plaintiffs Relied on Allina's Deceptive Statements.  ........................... 41

    2.  Plaintiffs are Likely to Suffer Future Harm.  ....................................... 42

CONCLUSION  ........................................................................................................ 43

# TABLE OF AUTHORITIES

Cases                                                                                           Page(s)

*ACCAP-HUD Homes Tax Credit Ltd. P'ship v. Minnesota Ctys. Intergovernmental Tr.*,
    2012 WL 5834560 (Minn. Ct. App. Nov. 19, 2012) ............................................ 27

*Alderman's Inc. v. Shanks*,
    536 N.W.2d 4 (Minn. 1995) ...................................................................... 26

*Amann v. Allianz Income Mgmt. Services, Inc.*,
    2010 WL 3220061 (Minn. Ct. App. Aug. 17, 2010) ........................................ 22

*American Hospital Association v. Becerra*,
    738 F. Supp. 3d 780 (N.D. Tex. 2024) ................................................... 8-9

*ASI, Inc. v. Aquawood, LLC*,
    2020 WL 5913578 (D. Minn. Oct. 6, 2020) ............................................... 11

*Barclay v. ICON Health & Fitness*,
    2020 WL 6083704 (D. Minn. Feb. 17, 2022) ......................................... 42-43

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 7

*Blue Cross and Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*,
    2012 WL 1343147 (D. Minn. April 18, 2012) ........................................... 40

*Bodah v. Lakeville Motor Express, Inc.*,
    663 N.W.2d 550 (Minn. 2003) ............................................................... 17

*Calhoun v. Google, LLC*,
    113 F.4th 1141 (9th Cir. Aug. 20, 2024) ................................................. 20

*Capitol Recs. Inc. v. Thomas-Rasset*,
    2009 WL 1664468 (D. Minn. June 11, 2009) ........................................... 36

*Carlson v. Sala Architects, Inc.*,
    732 N.W.2d 324 (Minn. Ct. App. 2007) ................................................. 24

*Caro v. Weintraub*,
    618 F.3d 94 (2d Cir. 2010) .................................................................... 33

*C.L.D. v. Wal-Mart Stores, Inc.*,
    79 F.Supp.2d 1080 (D. Minn. 1999) ................................................................ 16

*Conley v. Gibson*,
    355 U.S. 41 (1957) .......................................................................................... 7

*Cousin v. Sharp Healthcare*,
    681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........................................................... 16

*D.A.B. v. Brown*,
    570 N.W.2d 168 (Minn. Ct. App. 1997) .......................................................... 25

*Deshane v. City of Minneapolis*,
    2022 WL 624579 (D. Minn. Mar. 3, 2022) ..................................................... 31

*Desnick v. Am. Broad. Companies, Inc.*,
    44 F.3d 1345 (7th Cir. 1995) .......................................................................... 34

*Doe v. FullStory, Inc.*,
    712 F. Supp. 3d 1244 (N.D. Cal. 2024) ............................................................ 6

*Doe v. Meta Platforms, Inc.*,
    690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......................................................... 38

*Doe v. Smith*,
    429 F.3d 706 (7th Cir. 2005) .......................................................................... 39

*Dynamic Air, Inc. v. Bloch*,
    502 N.W.2d 796 (Minn. Ct. App. 1993) .......................................................... 23

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*,
    678 F.3d 659 (8th Cir. 2012) ...................................................................... 39-40

*Furlow v. Madonna Summit of Byron*,
    2020 WL 413356 (Minn. Ct. App. Jan. 27, 2020) ........................................... 13

*Gaige v. Exer Holding Co., LLC*,
    2025 WL 559719 (C.D. Cal. Mar. 2, 2025) ..................................................... 10

*Grp. Health Plan, Inc. v. Philip Morris Inc.*,
    621 N.W.2d 2 (Minn. 2001) ............................................................................ 42

*Hall v. Centerspace, LP*,
    2023 WL 3435100 (D. Minn. May 12, 2023) .................................................. 21, 31

*Hansen v. U.S. Bank Nat'l Ass'n*,
    934 N.W.2d 319 (Minn. 2019) .................................................................... 24

*Hemmerlin-Stewart v. Allina Hospitals & Clinics*,
    2005 WL 2143691 (Minn. Ct. App. Sept. 6, 2005) ............................................ 25

*Hudock v. LG Elecs. U.S.A., Inc.*,
    2017 WL 1157098 (D. Minn. Mar. 27, 2017) .................................................. 42

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015) ...................................................................... 33, 39

*In re Grp. Health Plan Litig.* ("*Group Health*"),
    709 F. Supp. 3d 707 (D. Minn. 2023) ..............................................*passim*

*In re Maxim Integrated Prods., Inc.*,
    2013 WL 12141373 (W.D. Pa. Mar. 19, 2013) ................................................ 36

*In re: Netgain Tech., LLC*,
    2022 WL 1810606 (D. Minn. June 2, 2022) .................................................. 29

*In re Shields Health Care Grp., Inc. Data Breach Litig.*,
    721 F. Supp. 3d 152 (D. Mass. 2024) .......................................................... 24, 29

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) .................................................................. 37

*J.C. v. Catholic Health System Inc.*,
    2024 WL 5136236 (W.D.N.Y. Aug. 29, 2024) ............................................9-10

*Jones v. Walgreens Co.*,
    2012 WL 1658895 (Minn. Ct. App. May 14, 2012) .......................................... 16

*Katz-Lacabe v. Oracle Am. Inc.*,
    668 F.Supp.3d 928 (N.D. Cal. Apr. 6, 2023) .................................................. 36

*Kurowski v. Rush Sys. for Health*,
    659 F. Supp. 3d 931 (N.D. Ill. 2023) ............................................................ 13

*Kurowski v. Rush Sys. for Health*,
    2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ................................................... 6, 36

*Kurowski v. Rush Sys. for Health*,
    2024 WL 3455020 (N.D. Ill. July 18, 2024)........................................................ 36

*Lake v. Wal-Mart Stores, Inc.*,
    582 N.W.2d 231 (Minn. 1998)............................................................................. 14

*Lamarr v. Goshen Health Sys., Inc.*,
    2024 Ind. Super. LEXIS 107 (Ind. Sup. Ct. Oct. 3, 2024)................................. 25

*Lapensohn v. Hudson City Sav. Bank*,
    2021 WL 1581402 (E.D. Pa. Apr. 21, 2021) ...................................................... 31

*Le v. Kohls Dep't Stores, Inc.*,
    160 F.Supp.3d 1096 (E.D. Wis. 2016)................................................................. 43

*Lehman v. Zumbrota-Mazeppa Public Schools*,
    2005 WL 894756 (Minn. Ct. App. Apr. 19, 2005) .........................................15-16

*Luckey v. Alside, Inc.*,
    245 F.Supp.3d 1080 (D. Minn. 2017)................................................................. 42

*McGregor v. Uponor, Inc.*,
    2010 WL 55985 (D. Minn. Jan. 4, 2010) ........................................................... 40

*Mekhail v. N. Mem'l Health Care*,
    726 F. Supp. 3d 916 (D. Minn. 2024)........................................................*passim*

*Meredith v. Gavin*,
    446 F.2d 794 (8th Cir. 1971) ............................................................................... 37

*Moreland v. Kladeck, Inc.*,
    2022 WL 1501122 (D. Minn. May 12, 2022)...................................................... 29

*Morton v. Becker*,
    793 F.2d 185 (8th Cir. 1986) ................................................................................. 7

*Nienaber v. Overlake Hosp. Med. Ctr.*,
    2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ................................................... 10

*Okash v. Essentia Health*,
    2024 WL 1285779 (D. Minn. Mar. 26, 2024) ................................................*passim*

*Okash v. Essentia Health*
    2025 WL 642913 (D. Minn. Feb. 27, 2025) ....................................................*passim*

*Park v. Forest Serv. of U.S.*,
    205 F.3d 1034 (8th Cir. 2000) ............................................................... 42

*Perry v. Bay & Bay Transportation Servs., Inc.*,
    650 F. Supp. 3d 743 (D. Minn. 2023) ........................................27-28, 32

*R.C. v. Walgreen Co.*,
    733 F. Supp. 3d 876 (C.D. Cal. 2024) ................................................... 35

*Rhoades v. Lourey*,
    2019 WL 1006804 (Minn. Ct. App. Mar. 4, 2019).............................. 13

*Rosenberg v. C.R. Bard, Inc.*,
    387 F. Supp. 3d 572 (E.D. Pa. 2019) ................................................... 31

*Simon v. Segal*,
    2023 WL 9197936 (D. Minn. Sept. 20, 2023) .................................... 10

*Smallman v. MGM Resorts Int'l*,
    638 F. Supp. 3d 1175 (D. Nev. 2022) .................................................. 31

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) ........................................................... 13

*Song v. Champion Petfoods USA, Inc.*,
    2020 WL 7624861 (D. Minn. Dec. 22, 2020)...................................... 41

*Superior Edge, Inc. v. Monsanto Co.*,
    44 F. Supp. 3d 890 (D. Minn. 2014).................................................... 11

*Thomas B. Olson & Assocs., P.A., v. Leffert, Jay & Polglaze, P.A.*,
    756 N.W.2d 907 (Minn. Ct. App. 2008)............................................. 24

*Weddle v. WakeMed Health*,
    2023 WL 8369786 (N.C. Super. Dec. 4, 2023) .........................24-25, 29

<u>Statutes</u>                                                                                    <u>Page(s)</u>

Electronic Communications Protection Act,
        18 U.S.C. § 2511 ................................................................. 1, 33, 37

Minnesota Uniform Deceptive Trade Practices Act,
        Minn. Stat. § 325D.43, *et seq.* ........................................... 1, 42

Minnesota Health Records Act,
        Minn. Stat. § 144.291, *et seq.* ...................................... 1, 12, 30


<u>Other Authority</u>                                                                           <u>Page(s)</u>

45 C.F.R. § 160.103 ...................................................................... 34

Federal Rule of Civil Procedure 8 ............................................. 10-11

Federal Rule of Civil Procedure 9 ................................................ 39

## INTRODUCTION

Federal and state law prohibit unauthorized interception and disclosure of healthcare information without informed consent. In addition to violating the confidence of its patients, Defendant Allina Health System ("Allina" or "Defendant") violated these laws by installing invisible third-party tracking technologies including the Meta Pixel and Google Analytics ("Tracking Technologies") on its websites www.allinahealth.org and https://www.stfrancis-shakopee.com ("Websites") to intercept patients and prospective patients' private communications.

On the Websites, Allina configured its Tracking Technologies to delineate personally identifiable information ("PII") and protected health information ("PHI") it wanted to acquire and disclose to Meta and Google, two of the largest AdTech companies. Allina's use of Tracking Technologies was no accident as it configured them to acquire highly valuable PII and PHI that Website users would not have provided voluntarily or for which they would have demanded compensation. Allina could have asked for permission to acquire the sensitive, personally identifiable data of its patients but chose not to.

Plaintiffs claim violations of the Minnesota Health Records Act, Minn. Stat. § 144.291 ("MHRA"), federal Electronic Communications Protection Act, 18 U.S.C. § 2511 ("ECPA"), and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43-48 ("MUDTPA") as well as common law claims.[1] As other courts in this district have agreed, Plaintiffs adequately allege violations stemming from Allina's interceptions.

---

[1] Plaintiffs withdraw their claim for breach of confidence without prejudice.

*See, e.g.*, *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928-38 (D. Minn. 2024) (denying motion to dismiss ECPA, MPCA, MCFA, MHRA, unjust enrichment, and implied contract claims); *In re Grp. Health Plan Litig.* ("*Group Health*"), 709 F. Supp. 3d 707, 713-15, 717-21 (D. Minn. 2023) (denying motion to dismiss MHRA, invasion of privacy, breach of implied contract, unjust enrichment, negligence, ECPA, MUDTPA claims); *Okash v. Essentia Health* ("*Okash II*"), 2025 WL 642913, at *6 (D. Minn. Feb. 27, 2025) (denying motion to dismiss MUDTPA, MCFA, and MHRA claims and previously allowing unjust enrichment claim to proceed).

## FACTUAL BACKGROUND

Allina owns or operates twelve hospitals and over ninety clinics throughout Minnesota including St. Francis Regional Medical Center. ¶ 4.[2] To market, sell, and provide medical services, Allina owns, maintains, and controls its Websites, which it encourages patients and prospective patients to use. ¶ 11. Plaintiffs Jacqueline Ahlers, Cathy Gebhardt-Lally, and Patrick Witt are Minnesota residents and patients that used Allina's Websites. ¶¶ 26-71.

**I.    Plaintiffs' Experiences with Allina's Websites.**

Plaintiff Ahlers has been a patient of Allina since 2018. ¶ 27. To receive medical services, Plaintiff disclosed her PHI and PII to Allina through its Websites on numerous occasions and most recently in August 2024. ¶ 26. Plaintiff used Allina's Websites to request and book doctor's appointments for herself, communicate information related to a

---

[2] All paragraph citations are to Plaintiffs' First Amended Class Action Complaint ("Amended Complaint"). ECF No. 30.

tumor, adrenal insufficiency, hormone issue, night sweats, and weight, and review lab results. ¶ 29. Without consent, Allina transmitted Plaintiff's Facebook ID, computer IP address, and unique identifiers to Facebook as well as Plaintiff's health conditions, medical treatment sought, patient status, and the fact that Plaintiff booked appointments. ¶ 32; *see also* ¶ 43. After Plaintiff used the Websites, she received targeted advertisements inviting her to visit other Allina locations, related to weight loss, and products to alleviate night sweats. ¶ 38.

Plaintiff Gebhardt-Lally has been a patient of Allina for approximately forty years. ¶ 46. To receive medical services, Plaintiff disclosed her PHI and PII through Allina's Websites on various occasions beginning around 2012 and most recently in February 2024. ¶ 48. Plaintiff used the Websites to search for doctors and treatment information for bariatric conditions, sleep apnea, and endocrinology, schedule appointments, pay medical bills, and find a primary care doctor as well as the MyChart patient portal ("Portal") to message her doctors and view test results. ¶¶ 49-51. Without consent, Allina transmitted Plaintiff's Facebook ID, computer IP address, and unique identifiers to Facebook as well as Plaintiff's health conditions, medical treatment sought, patient status, and Portal activity to third parties. ¶ 57. After Plaintiff used the Websites, she received targeted advertisements for sleep apnea therapy, other sleep apnea treatments, sleeping devices, and for weight loss products. ¶ 52.

Plaintiff Witt has been a patient of Allina for approximately twenty years. ¶ 60. To receive medical services, Plaintiff disclosed his PHI and PII to Allina through its Websites on numerous occasions beginning around 2014 and most recently in July 2023. ¶ 62.

Plaintiff used the Websites to schedule appointments, research topics related to podiatry, and find a podiatrist. ¶¶ 61-63. Without consent, Allina transmitted Plaintiff's Facebook ID, computer IP address, and unique identifiers to Facebook as well as PHI including Plaintiff's health conditions, medical treatment sought, patient status, and Portal activity to third parties. ¶ 69. After Plaintiff used the Websites, he received targeted advertisements podiatry services and other services related to his health. ¶ 64.

## II.    Allina's Websites' use of Tracking Technologies.

Without repeating Plaintiffs' allegations in the Amended Complaint, Plaintiffs reiterate some key points about how Allina installed and configured Tracking Technologies to divulge patient PHI and PII. When a patient or prospective patient uses Allina's Websites to find care, the Websites directed them to communicate PHI and PII, including the reason (medical condition or symptoms) for seeking care, exact search terms entered into the search bar, location where they sought treatment, and patient status. ¶ 119. Unbeknownst to them, these sensitive communications are sent to Facebook and other third parties via Allina's Tracking Technologies. ¶ 120.

Allina installed the Meta Pixel, Google Analytics, and Google Tag Manager on its Websites including on webpages where prospective patients and patients could search for Allina's locations, schedule appointments, and access the Portal. ¶¶ 121-31, 137, 191; *see also* Figures 2-3 & 5-6. When a patient attempted to book an appointment, Allina sent "PageView" and Microdata events confirming the patient loaded the "in-person care" and "visit type" pages. ¶ 131. When a patient was asked to "Select a location," after inputting her ZIP code, she was invited to choose from locations with physicians and available times.

*Id.* After selecting a time, Allina sent "PageView," Microdata, and "SubscribedButtonClick" events to Facebook informing Facebook about the patient's progress. *Id.* When a patient clicked "Schedule appointment," Allina sent "PageView," Microdata, and "SubscribedButtonClick" events to Facebook informing Facebook an appointment was successfully scheduled. *Id.*

Moreover, Facebook receives first and third-party cookies when Allina's Websites transmit information via the Meta Pixel. ¶¶ 142-46. Google also uses cookies to track users' activities on non-Google websites. ¶ 84. These cookies identify the web browser from which the user is sending communications and allow Meta and Google to know the patient's location and IP address, among other unique identifiers. ¶¶ 95, 150, 212, 246. By combining the information captured by these cookies with information submitted on Allina's Websites and captured by Tracking Technologies, a plethora of information about each patient or prospective patient can be gleaned.

## III.    Allina's MyChart Portal and its use of Tracking Technologies.

Allina's Websites include a Portal, which existing patients are required to use to pay bills, request prescriptions, view lab results, exchange messages with providers, fill out forms regarding sensitive medical information, and request medical records. ¶ 11. Upon a patient's loading of the MyChart page, Allina informed Facebook that a user was on the page, demonstrating that Allina installed its Meta Pixel directly on its Portal login. ¶ 138. If a patient clicked "forgot username" or "forgot password," Allina informed Facebook that a patient was attempting to recover their username/password. ¶ 139. Likewise, if a patient created a Portal account, Allina informed Facebook. ¶ 140.

5

Due to the way Tracking Technologies can be identified in source code, Plaintiffs were unable to determine whether they were inside Allina's Portal when Plaintiffs used the Portal. ¶ 140 n.17. However, the fact that Allina installed Tracking Technologies on the login page, forgot username/password page, and create account page, are indicative of Allina's broad installation and configuration of Tracking Technologies. ¶¶ 138-40. Notably, Allina refuses to confirm that it did not install Tracking Technologies inside its Portal.

Rather than disregarding Plaintiffs' Portal allegations, the Court should permit Plaintiffs to proceed with discovery into this fact-based issue. *Compare* Motion to Dismiss ("MTD"), ECF No. 36 at 12, *with Kurowski v. Rush Sys. for Health* ("*Rush III*"), 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (Plaintiff "lacks the direct access to what occurs in the background on Rush's web properties"); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) (explaining need for discovery into "how the TikTok Pixels actually work and what information was tracked").

## IV. Allina's Privacy Notice.

Allina violated its Notice of Privacy Practices ("Privacy Notice") by collecting and disclosing PHI without consent. Allina's Privacy Notice states, "We have a duty to protect the privacy of your health information ... [and] We will abide by the terms of the Notice." ¶ 214. Allina's Privacy Notice outlines how it may use and disclose medical information for treatment, payment, healthcare operations, disclosures to business associates, medical emergencies, appointment reminders, health-related benefits and services, individuals involved in patient care or payment and other special purposes when permitted or required

by law. ¶ 215. However, other uses of medical information not covered by the Privacy Notice, such *as marketing and retargeting*, require written authorization. ¶ 216. Allina never sought such authorization from Plaintiffs before transmitting PHI to third parties for marketing and retargeting. ¶ 217.

## LEGAL STANDARD

Rule 8(a)(2) requires only a short and plain statement showing that the pleader is entitled to relief, giving "defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This standard does not require inclusion of "detailed factual allegations," rather the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. Courts assume the truth of all well-pleaded facts and make all reasonable inferences from those facts in the light most favorable to plaintiffs. *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

## ARGUMENT

Plaintiffs adequately allege multiple causes of action; therefore, Allina's motion must be denied. First, Allina shared PHI in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). Second, Plaintiffs' allegations concerning the Allina's use of Tracking Technologies meet the letter of Rule 8. Third, Plaintiffs federal, state, and common law claims are well pleaded.

## I. THE HHS GUIDANCE HAS BEEN VACATED ONLY IN PART IN A MANNER THAT DOES NOT AFFECT PLAINTIFFS' ALLEGATIONS.

Allina argues that guidance issued by the Department of Health and Human Services Office of Civil Rights (the "HHS Guidance") has been vacated for purposes relevant here. In June 2024, a Northern District of Texas opinion—*American Hospital Association v. Becerra* ("*AHA*"), 738 F. Supp. 3d 780 (N.D. Tex. 2024)—reaffirmed HHS Guidance in part and vacated one discrete aspect not applicable here.

Judge Pittman held HHS exceeded its authority by issuing guidance prohibiting healthcare providers from utilizing "an online technology" that discloses (i) an individual's IP address with (ii) a visit to an unauthenticated public webpage addressing specific health conditions or healthcare providers. *Id.* at 789. Judge Pittman labeled the "new rule" the "Proscribed Combination." *Id.* Because Plaintiffs' claims are not based on the "Proscribed Combination," but address long-standing obligations, Allina's reliance on *AHA* is misplaced. *Id.* at 807, n. 8 ("Such vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document.").

The decision clarified that the HHS Guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound." *Id.* at 798, n.3. Among the "legally and programmatically sound" guidance that the *AHA* opinion endorses are prohibitions by HHS against:

- Deploying tracking technologies inside "user-authenticated webpages" (like patient portals);

- Deploying tracking technologies on unauthenticated webpages that "permits individuals to schedule appointments or use a symptom-checking tool;"

- Deploying tracking technologies on "payment for healthcare" functions on an unauthenticated website; or

- Deploying tracking technologies on the unauthenticated "login page" or the "user registration page" of a patient portal.[3]

Plaintiffs challenge Allina's use of Tracking Technologies to collect and disclose PHI that permits an inference of identification including appointment scheduling, bill payment, and logging into the Portal. *Compare* MTD at 14-15 (arguing "information shared by a website user could not be [individually identifiable health information ("IIHI")] because the person's subjective intent for visiting a website would never be known"); *with* ¶¶ 29, 49-50, 63, 87. The information Allina disclosed provides a reasonable basis to identify webpage visitors, especially where the webpage required input of names and emails. *Compare* ¶¶ 121, 129-31, *with AHA*, 738 F. Supp. 3d at 801-02 (recognizing Congress included the "reasonable basis" qualifier for the identification prong).

At least two courts have rejected Allina's argument. In *J.C. v. Catholic Health System Inc.*, the court granted defendant's motion to dismiss with leave to replead because plaintiff's allegations lacked specificity but did not find *AHA* "persuasive or controlling." 2024 WL 5136236, at *13 (W.D.N.Y. Aug. 29, 2024), report and recommendation adopted, 2025 WL 351043 (W.D.N.Y. Jan. 31, 2025). The court explained:

> The allegations here involve disclosure of potential IIHI along with an individual's Facebook ID, which very specifically identifies an actual individual, and not a device. No speculation at all is needed to connect an individual to their Facebook ID. Further, I do not agree with the court's analysis concerning the user's subjective intent. The definition of IIHI under

---

[3] *See* Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates (last updated June 26, 2024), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

> HIPAA is clear, and always depends upon the identity - and the medical
> providers and conditions - of the person to whom the information relates.
> HIPAA is also clear that the burden for protecting IIHI rests with health care
> providers, not individuals. However the AHA court's analysis places the
> burden to protect this information squarely on individuals, when the health
> care provider, which owns the website and controls what information is
> collected and then re-transmitted to third parties, is in the best position to
> control the information it receives.

*Id.* at * 14; *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *5 (W.D.

Wash. Mar. 4, 2025) ("Because Plaintiff alleges the disclosure of her specific identity

through her Facebook ID, the *AHA* court's reasoning is unpersuasive here."); *Gaige v. Exer*

*Holding Co., LLC*, 2025 WL 559719, at *4 (C.D. Cal. Mar. 2, 2025) ("HHS guidance being

vacated does not affect the merits of Plaintiff's allegations.").

## II. PLAINTIFFS' AMENDED COMPLAINT SATISFIES RULE 8.

Although the Federal Rules of Civil Procedure and State of Minnesota follow the

notice pleading standard, Allina contends the Amended Complaint violates Rule 8 because

it "uses broadly defined and undefined terms that lump allegations together" and "unfairly

burdens" it and the Court. *Compare* MTD at 15, *with Simon v. Segal*, 2023 WL 9197936,

at *1 (D. Minn. Sept. 20, 2023), report and recommendation adopted, 2024 WL 129947

(D. Minn. Jan. 11, 2024) (declining to adopt "an obligation more strenuous than the notice

pleading required by Rule 8(a)…."). While a claim for relief need include only "a short

and plain statement," "no technical form" is required for pleadings and courts construe

pleadings "so as to do justice." Fed.R.Civ.P. 8(a), (d)(1) & (e).

Allina contends "Private Information" and "Websites/Online Platforms" are

problematic. MTD at 15-16. Regarding Private Information, the Amended Complaint is

clear that it includes PII and PHI. ¶ 9. Rather than being overly broad, the definition includes two parts and is set forth at the outset of the Amended Complaint. *Id.* While PII on its own is not protected by HIPAA, when PII is combined with health information, it is. The HHS Bulletin explained that "[g]enerally, [IIHI] is a subset of health information."[4] PII and PHI are not always separate because PII stored in the same record may be PHI. Simply put, Plaintiffs use of the terms PII and PHI put Allina on notice of Plaintiffs' claims.

Likewise, Plaintiffs' definition of "Websites" includes www.allinahealth.org, https://www.stfrancis-shakopee.com/, and its webpages. ¶ 11. While Plaintiffs' definition and use of the terms "Websites" and "Online Platforms," is imperfect (and partially the result of complaint consolidation), Plaintiffs' Amended Complaint exceeds the requisite level of notice required by Rule 8. *See, e.g.*, *ASI, Inc. v. Aquawood, LLC*, 2020 WL 5913578, at *8 (D. Minn. Oct. 6, 2020) ("Although the Complaint is long and confusing and contains many counts, it is well within the requirement of notice pleading."); *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 899 (D. Minn. 2014) (describing "Rule 8's liberal notice pleading requirements.").

## III.    PLAINTIFFS' CLAIMS ARE ADEQUATELY PLEADED.

### A.  Plaintiffs Properly Allege Violations of the MHRA.

Allina argues it is not liable under the MHRA because Plaintiffs fail to allege it "disclosed their health records to Meta or any other third party." MTD at 16. A plain reading of the statute defeats Allina's argument. The MHRA governs the release and

---

[4] *See* Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, *supra* note 3.

disclosure of health records and imposes liability on "[a] person" who negligently or intentionally releases a health record without the patient's consent or "specific authorization in law." *Group Health*, 709 F. Supp. 3d at 713 (citing Minn. Stat. § 144.293, subd. 2). The MHRA contains an expansive definition of "health records:"

> Health record means any information, whether oral or recorded in any form or medium, that relates to the past, present, or future physical or mental health or condition of a patient; the provision of healthcare of a patient; or the past, present, or future payment for the provision of healthcare to a patient.

Minn. Stat. § 144.291, Subd. 2(c).

Courts in this district have interpreted the MHRA and concluded that it applies in situations like this one. In *Group Health*, plaintiffs alleged they used the healthcare provider's website to "communicate private health information with healthcare providers; search for physicians; schedule appointments and procedures; receive and discuss medical diagnoses and treatment from healthcare providers; receive lab results; review medical records; review medical bills; and search symptoms and medical conditions relating to personal medical treatment." 709 F. Supp. 3d at 713. The court held those allegations "sufficient to plausibly plead that health records were released without their consent, considering the broad definition of health records in the statute." *Id.*

Likewise, in *Okash II*, the court evaluated allegations that plaintiffs used the website to research doctors and "review their credentials, areas of specialty, and whether they accepted his insurance" and "researched his specific medical conditions, including sleep apnea, bladder cancer, and diabetes." 2025 WL 642913, at *6. The court concluded those

allegations were sufficient to survive a motion to dismiss. *Id.*; *see also Mekhail*, 726 F. Supp. 3d at 936 (similar).

Allina's cited cases do not analyze the types of records Plaintiffs have alleged. *See* MTD at 19. In *Rhoades v. Lourey*, the court analyzed allegations of disclosure of name, address, date of birth, height, weight, eye color, hair color, driver's license number, Social Security number, place of employment, employer's address, Federal Bureau Investigation number, prison identification number, and Bureau of Criminal Apprehension number and determined these were not health records. *See* 2019 WL 1006804, at *1-2 (Minn. Ct. App. Mar. 4, 2019). In *Furlow v. Madonna Summit of Byron*, the court reviewed allegations of a photo identifying hair and eye color and approximate age and determined nothing in the photograph goes to the nature of the healthcare or condition. *See* 2020 WL 413356, at *2 (Minn. Ct. App. Jan. 27, 2020). These cases do not relate to the past, present, or future physical or mental health condition of a patient. Thus, neither case is analogous. *See, e.g.*, *Mekhail*, 726 F. Supp. 3d at 935 ("*Furlow* is inapt to the facts of this case.").[5]

Like *Group Health*, *Okash II*, and *Mekhail*, Plaintiffs provide specific examples of Allina's unauthorized disclosure of health records. Plaintiffs allege (i) they were Allina's patients (¶¶ 27, 46, 60); (ii) they requested and booked doctor's appointments and paid medical bills (¶¶ 29, 49, 63); (iii) they used the Portal to message doctors and view test

---

[5] Unlike other cases Allina relies on, Plaintiffs' allegations go beyond general browsing and include specific searches for doctors and appointment booking. *See* MTD at 19 (citing *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (focusing on general browsing, not appointment booking or detailed medical searches) & *Kurowski v. Rush Sys. for Health* ("*Rush I*"), 659 F. Supp. 3d 931, 939 (N.D. Ill. 2023) (similar)).

results (¶ 50); (iv) their electronic communications on Allina's Websites included information related to medical care, like searching for physicians and terms related to medical conditions/treatment (¶¶ 29, 47, 51, 63); and (v) when their communications were disclosed to Meta and Google they included personal identifiers like unique Facebook and Google identifiers, computer IP addresses, and location information (¶¶ 32, 43, 57, 69). Thus, Plaintiffs allege Allina released the core content of health records.

In response to Allina's remaining arguments, Allina can determine whether a public website visitor is the person associated with the relevant IP address when they, for example, book themselves an appointment, log into the Portal, or pay their medical bills and that data is tied to their Facebook ID or other personally identifiable identifier. *Compare* MTD at 18, *with* ¶¶ 15, 32, 95, 113-17. Plaintiffs' actions taken on Allina's Websites plainly relate to a specific patient's past, present, or future healthcare. *Compare* MTD at 18, *with supra* § I (discussing subjective intent under *AHA*). Accordingly, Plaintiffs' MHRA claim withstands the motion to dismiss.

### B. Plaintiffs Sufficiently Allege Invasion of Privacy.

### 1. Plaintiffs Plead Intrusion Upon Seclusion.

Intrusion upon seclusion exists when someone "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." *Group Health*, 709 F. Supp. 3d at 713 (citing *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998)).

Allina argues that Plaintiffs fail to allege an unreasonable intrusion into their private concerns because they voluntarily provided their information on Allina's Websites. MTD

at 20-21. However, Plaintiffs specifically allege Allina's recording of their online communications was "unbeknownst" to the Plaintiffs (¶ 120), and that Allina encouraged Plaintiffs to use its Websites to communicate their PII and PHI, schedule appointments, access information about their treatments, pay medical bills, and more. ¶ 87. Notably, Allina explicitly promised Plaintiffs it would not share PHI in the circumstances alleged here. ¶ 215. Allina's recordation of Plaintiffs' Website communications was secretive, deceptive, and contradictory to its promises. Plaintiffs cannot be said to have "voluntarily" provided their PII and PHI where Allina made affirmative representations that it was *not* sharing or selling it.[6]

Allina ignores allegations that it induced and persuaded Plaintiffs to use its Websites and directs the Court to two inconsistent cases, *Group Health* and *Okash v. Essentia Health* ("*Okash I*"), 2024 WL 1285779 (D. Minn. Mar. 26, 2024). In *Group Health*, the court upheld plaintiffs' invasion of privacy claim under nearly identical facts as those alleged here. *See* 709 F. Supp. 3d at 713-14. While *Okash I* seemingly supports Allina's position, this single case is far outweighed by the myriad of cases holding allegations like Plaintiffs are sufficient.[7] Likewise, Allina's citations to *Lehman v.*

---

[6] Allina's intimation that third parties are the "interceptors" ignores Plaintiffs' allegations. ¶¶ 80, 84 ("The Pixel is customizable and programmable, meaning that the Website owner controls which of its web pages contain the Pixel and which events are tracked and transmitted to Facebook…. Stated differently, Plaintiffs' and Class Members' Private Information would not have been disclosed to Facebook but for Defendant's decisions to install the Pixel on its Websites.").

[7] *See, e.g.*, *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023); *Doe v. Boston Medical Center Corp.*, 2023 WL 7105628, at *5 (Mass.Super. Sep.

*Zumbrota-Mazeppa Public Schools*, 2005 WL 894756 (Minn. Ct. App. Apr. 19, 2005), *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F.Supp.2d 1080 (D. Minn. 1999), and *Jones v. Walgreens Co.*, 2012 WL 1658895 (Minn. Ct. App. May 14, 2012) involve dissimilar facts and applying them here would run counter to precedent nationwide.

Finally, Allina's disclosure is highly offensive to an ordinary person. Plaintiffs plead that Allina disclosed information regarding Plaintiffs' personally identifying health-related activity on the Websites. ¶¶ 43, 57, 69. Like plaintiffs in *Group Health*, "Plaintiffs [here] describe the interference as intentional and involving sensitive health information, including communications about medical records and diagnoses.... This goes beyond the kind of non-descript, vanilla, browsing history that HealthPartners suggests Plaintiffs have pled." 709 F. Supp. 3d at 714; *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1127 (S.D. Cal. 2023) (alleged disclosure of sensitive health information on Sharp's appointment scheduling page was sufficient to plead a "highly offensive" intrusion for a 12(b)(6) motion).

Because Plaintiffs allege intrusion upon seclusion, Allina's motion must be denied. *See, e.g., Group Health*, 709 F. Supp. 3d at 714 (finding plaintiffs' allegations "suggestive of intentional intrusion").

### 2.  Plaintiffs Plead Disclosure of Private Facts.

In its bid for dismissal of Plaintiffs' disclosure of private facts claim, Allina argues Plaintiffs failed to allege publication of their information to the public at large. MTD at 23-

---

14, 2023); *Doe v. Bon Secours Mercy Health*, 2021 WL 9939010, at *5 (Ohio Com.Pl. Nov. 22, 2021).

24. Allina ignores Plaintiffs' allegations and Minnesota law.

In Minnesota, "to state a claim for publication of private facts, a plaintiff must demonstrate that one 'gives publicity to a matter concerning the private life of another *** if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003). "Under the Restatement, '[p]ublicity *** means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id.* at 553–54.

Allina argues "Plaintiffs do not allege that Allina disclosed their information to the public at large." MTD at 24. But *Bodah*—Allina's proffered case—does not require the disclosure be made to the public at large; it requires an allegation that communication was made "to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." 663 N.W.2d at 557.

Here, Plaintiffs allege Allina's disclosure of their information to at least two of the largest data brokers in the world: Facebook and Google. ¶¶ 36, 88, 94 (explaining how Google stores users' logged-in identifier on non-Google websites in its logs, logs all such data (private and non-private) within the same logs, and uses this data to serve personalized ads). Plaintiffs also allege Facebook already exposed their information to the public, demonstrated by targeted ads received by Plaintiffs. ¶¶ 37, 52, 64. Accordingly, Plaintiffs information is "substantially certain to become one of public knowledge.'" *Bodah*, 663 N.W.2d at 553-54.

17

### C. Plaintiffs Allege all Elements of Breach of Implied Contract.

Plaintiffs sufficiently allege a contract implied in Allina's conduct: Plaintiffs provided their PII and PHI and monetary compensation in exchange for medical care and confidentiality. ¶¶ 333-40. These allegations are sufficient under Minnesota law to state a breach of contract claim. *See, e.g.*, *Group Health*, 709 F. Supp. 3d at 714 (in identical context, allowing claim for implied contract); *Mekhail*, 726 F. Supp. 3d at 937 (D. Minn. 2024) (same).

A claim for breach of contract requires pleading: a contract was formed, Plaintiffs performed any conditions precedent, Defendant materially breached the contract, and damages. *See Group Health*, 709 F. Supp. 3d at 714. "An implied-in-fact contract is a contract inferred from the circumstances and conduct of the parties." *Id*.

Plaintiffs provided monetary compensation to Allina in exchange for medical care. ¶¶ 333-40. As a condition of care, Allina required its patients to provide confidential health information as consideration. *Id*. Allina provided its patients with promises (terms of the contract) through its conduct and Privacy Notice, in addition to its implied duty as healthcare provider and good faith duties to keep health information confidential. *Id*. When, during treatment, healthcare providers require patients to provide confidential information, the implied promise is that the healthcare provider will keep patients' information confidential. Allina failed to do this, breaching its contractual obligations. These allegations are not merely a "formulaic recitation of the elements" and go beyond Allina's characterization of relying "solely on the fact that they did not consent to their information being collected when they used Allina's website." MTD at 25.

At least two Minnesota District courts have found analogous allegations sufficient. *Group Health* held plaintiffs stated a breach of contract claim by alleging they provided PII and PHI to defendant through its website to receive services, and defendant "agreed to safeguard and not disclose the [the plaintiffs'] Private Information without consent." 709 F. Supp. 3d at 714. The court noted plaintiffs' claim was supported by defendant's privacy policies, which like here, represented to patients that defendant would keep Private Information confidential and only disclose it under certain circumstances, none of which permitted disclosures for marketing. *Id*; *see also Mekhail*, 726 F. Supp. 3d at 937 (finding breach of contract claim stated where plaintiff's expectation that defendant would protect her privacy flowed from laws governing health privacy and the Privacy Policy).

Those same courts rejected the argument Allina makes here and held privacy policies like Allina's, which comply with federal law, can form the basis for a contract. *Group Health*, 709 F. Supp. 3d at 714 ("The [p]olicy also acknowledges that HealthPartners 'is required by law to maintain the confidentiality of Plaintiffs' and Class Members' Private Information'"); *see also Mekhail*, 726 F. Supp. 3d at 937.

Allina contradicts itself—asserting that its privacy policies fail to indicate mutual assent or a valid contract—by arguing that its Privacy Notice allowed Allina to disclose PII and PHI. MTD at 26. Allina fails to point to any specific policy allowing it to disclose information as it did. Nothing in Allina's Privacy Notice allows it to disclose Plaintiffs' PHI and PII to third parties for marketing purposes. ¶ 217.

Any reliance Allina has on its privacy policy disclosing its use of Tracking Technologies, would require considering whether its purported disclosure was effective; making it a question of fact. The Ninth Circuit considered a similar issue, concluding:

> Whether a "reasonable" user of Google's computer software at issue in this case consented to a particular data collection practice is not to be determined by attributing to that user the skill of an experienced business lawyer or someone who is able to easily ferret through a labyrinth of legal jargon to understand what he or she is consenting to. Instead, a determination of what a "reasonable" user would have understood must take into account the level of sophistication attributable to the general public, which uses Google's services.

*Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. Aug. 20, 2024). As Allina acknowledges, the court in *Group Health* refused to resolve this issue on a motion to dismiss. *See* 709 F.Supp.3d at 715; *see also Mekhail*, 726 F.Supp.3d at 937 (defendant's arguments about "the Privacy Policy [] are more appropriately considered with the benefit of a factual record, developed through discovery, and are not amenable to a legal determination at the pleading stage) (citation omitted).

Plaintiffs also allege consideration in the form of medical care and promises of confidentiality on Allina's side, and via monetary compensation and by providing PHI and PII on Plaintiffs' side. ¶¶ 334-37; *see also Group Health*, 709 F.Supp.3d at 715 (finding it "plausible that the parties entered into an implied contract" and that the "agreed upon terms are those spelled out in the Notice of Privacy and Privacy Statement") (cleaned up). Plaintiffs also clearly allege actual use of Allina's Websites. ¶¶ 49, 63.

Finally, Plaintiffs' damages are recoverable in contract. As *Group Health* held, allegations that "'[p]laintiffs 'sustained damages' in the form of 'the loss of the benefit of

their bargain and diminution in value of Private Information' [and] that their Private Information had financial value" were sufficient. 709 F. Supp. 3d at 714–15. Arguments about whether the parties had a "meeting of the minds or debates over the value of [p]laintiffs' loss are fact disputes better left for summary judgment or trial." *Id*. at 715 (citing *Hall v. Centerspace, LP*, 2023 WL 3435100, at *7 (D. Minn. May 12, 2023) (concluding plaintiff adequately alleged damages sufficient to support a claim for breach of an implied contract where plaintiff "assert[ed] that the value of his PII has been diminished")). Plaintiffs allege this here: loss of the benefit of their bargain and diminution in the value of their PHI and PII, which has financial value. ¶¶ 45, 71, 270-288, 339. Allina's meagre support comes in the form of inapposite cases outside Minnesota. The Court should follow the Minnesota District courts, which, in this context, found damage allegations like Plaintiffs' sufficient. *Group Health*, 709 F. Supp. 3d at 714; *Mekhail*, 726 F. Supp. 3d at 937.

### D.  Plaintiffs Plausibly Allege Unjust Enrichment.

Plaintiffs allege they conferred their PHI and PII upon Allina, who promised it would not disclose their PHI and PII, that Allina then disclosed their PHI and PII, and that it would be inequitable for Allina to retain the benefit of disclosure because it obtained Plaintiffs' PHI and PII under the false promise of non-disclosure. ¶¶ 341-47. Minnesota District courts agree these allegations establish an unjust enrichment claim. *See, Group Health*, 709 F. Supp. 3d at 715; *Mekhail*, 726 F.Supp.3d at 936-37.

To state a claim for unjust enrichment, Plaintiffs must allege: (1) a benefit conferred; (2) Defendant's appreciation and knowing acceptance of the benefit; and (3) Defendant's

acceptance and retention of the benefit under circumstances that it would be inequitable for it to retain the benefit without paying for it. *Id.*

Allina argues Plaintiffs included only conclusory allegations regarding the benefit conferred. MTD at 29. But Plaintiffs allege they conferred monetary compensation and PHI/PII upon Allina, who sold this information for its own benefit, in the form of enhanced advertising services and reduced advertising costs. ¶¶ 208, 260, 269. Plaintiffs allege their PHI and PII has great economic value and is monetizable. ¶¶ 270-88. Two courts in this District have found these allegations sufficient and rejected Allina's argument: "[t]aken together, these sections of the [complaint] sufficiently allege that a benefit was conferred on [defendant] by monetizing [plaintiff's] data." *Mekhail*, 726 F.Supp.3d at 938; *Group Health*, 709 F. Supp. 3d at 715 (finding [p]laintiffs have sufficiently pled facts supporting each element of an unjust enrichment claim." (internal citations omitted)).

Allina next attempts to introduce a new element into an unjust enrichment claim, arguing Plaintiffs should have alleged an "uncompensated" benefit. MTD at 29. But Allina's citation makes clear that when examining this "element," the court was analyzing the "unjustness" of the enrichment. *See Amann v. Allianz Income Mgmt. Services, Inc.*, 2010 WL 3220061 (Minn. Ct. App. Aug. 17, 2010), at *5 (unpublished) ("[U]njust enrichment requires a showing of why it is unjust for respondents to profit from appellants' efforts…").[8]

---

[8] To the extent Allina relies on *Amann*, this case is "unpublished" making it non-precedential. The opinion states: "THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST.

In contrast, Plaintiffs alleged Allina collected their information, promised it would not disclose it, then disclosed it anyway and profited from doing so. ¶¶ 26, 49, 63, 208, 214-220, 260, 343-47. It would be unjust for Allina to retain the benefits it realized "by monetizing [Plaintiffs'] data"—a benefit that was not compensated by Plaintiffs' use of Defendant's Websites.[9] *Mekhail*, 726 F.Supp.3d at 937 (rejecting defendant's argument that "the [complaint] fails to adequately allege that the benefit to [defendant] was inequitable"); *Group Health*, 709 F. Supp. 3d at 715 (finding sufficient allegations that "it would be 'inequitable' to permit HealthPartners to retain 'any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.'"). It is difficult to conceive of a benefit more appreciated—or more "knowingly accepted"—than the benefit Allina obtained through its sale of Plaintiffs' information. Certainly, Allina realized the value Plaintiffs' PHI and PII holds when it sold Plaintiffs' PHI and PII for its own profit.

Finally, Allina's argument that the Privacy Notice allowed it to disclose Plaintiffs' PHI and PII is an argument for summary judgment or trial, not one properly considered on the pleadings. *See, e.g.*, *Group Health*, 709 F.Supp.3d at 715 ("Arguments about whether

---

SEC. 480A.08(3)." 2010 WL 3220061; *cf. Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn. Ct. App. 1993) ("[T]he district court committed error in relying upon an unpublished opinion for [any] proposition …Unpublished opinions of the Court of Appeals are not precedential.").

[9] Plaintiffs did not allege they were compensated by their use of Allina's Websites, which must be accepted as true.

[p]laintiffs and [defendant] had a meeting of the minds" are "better left for summary judgment or trial."); *Mekhail*, 726 F.Supp.3d at 938.

### E.  Plaintiffs Allege all Elements of Breach of Fiduciary Duty.

Breach of fiduciary duty consists of four elements: duty, breach, causation, and damages. *Hansen v. U.S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 327 (Minn. 2019). A fiduciary relationship is characterized by a "fiduciary" who enjoys a superior position in terms of knowledge and authority and in whom the other party places a high level of trust and confidence. *Carlson v. Sala Architects, Inc.*, 732 N.W.2d 324, 330-31 (Minn. Ct. App. 2007). Whether a person owes a fiduciary duty to another is typically determined by their relationship. *Thomas B. Olson & Assocs., P.A., v. Leffert, Jay & Polglaze, P.A.*, 756 N.W.2d 907, 914 (Minn. Ct. App. 2008).

Allina characterizes Plaintiffs' claim as "formulaic." MTD at 31. However, this ignores Plaintiffs' allegations. Plaintiffs establish a fiduciary relationship by alleging that Allina was their trusted healthcare provider who they relied on to communicate confidential information to seek medical care. ¶¶ 30, 35-36, 55-57, 67-69, 211. Courts nationwide have found that this relationship is a fiduciary relationship as healthcare providers enjoy a superior position of knowledge and authority over their patients, and their patients place a great deal of trust in them. *See, e.g.*, *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024) (finding fiduciary duty to protect plaintiffs' private information where "[defendant] required [plaintiffs] to provide private information and represented it would "[m]aintain the privacy of [plaintiffs'] health information as required by law."); *Weddle v. WakeMed Health*, 2023 WL 8369786, at *8

(N.C. Super. Dec. 4, 2023) (denying motion to dismiss breach of fiduciary duty claim where plaintiffs alleged they shared confidential information with defendant in the context of a physician-patient relationship and to receive medical care).

Allina's claim that "[t]here is no Minnesota caselaw holding that physicians or hospital staff members have a fiduciary duty toward their patients" is quoted from *Hemmerlin-Stewart v. Allina Hospitals & Clinics*, 2005 WL 2143691, at *3 (Minn. Ct. App. Sept. 6, 2005). There, the court "declined to reframe medical-malpractice claims in terms of a breach of a fiduciary duty on the part of the physician." *Id*. at *3. Similar holdings also derive from the medical malpractice context. In *D.A.B. v. Brown*, the court declined plaintiffs' "attempts to frame the issue before us as one involving a breach of fiduciary duty" when "the gravamen of the complaint sounds in medical malpractice." 570 N.W.2d 168, 171 (Minn. Ct. App. 1997). This action, however, is not a medical malpractice case. Therefore, the Court should follow the well-reasoned authority of courts nationwide and find that, in the context of a healthcare provider's duty to keep PHI confidential, a fiduciary relationship with its patients exists. *Lamarr v. Goshen Health Sys., Inc.*, 2024 Ind. Super. LEXIS 107, *24 (Ind. Sup. Ct. Oct. 3, 2024) (holding plaintiff's "breach of fiduciary duty claim sufficiently alleges the existence of a confidential relationship, a breach thereof, and damages and should survive this motion to dismiss.")

Allina also cites *Group Health*, where the court noted there was no "Minnesota caselaw holding that hospitals or health care providers in general have a fiduciary duty to keep patient information entered through its websites private" and that "MHRA (or HIPAA) do not create a fiduciary duty on health care providers either, because a fiduciary

duty is not expressly present." MTD at 31-32. Plaintiffs urge the Court to reject this line of reasoning. Minnesota case law is replete with examples of courts using statutory language lacking "express language" to guide their interpretation of the law. *See Alderman's Inc. v. Shanks*, 536 N.W.2d 4, *7 (Minn. 1995) ("[a] long line of Minnesota cases establishes that violations of regulations or ordinances that are adopted pursuant to statutory authority can result in negligence *per se*."). Moreover, the court in *Okash II* denied defendant's motion to dismiss plaintiff's MUDTPA and MCFA claims in this exact context, holding the plaintiff "sufficiently alleged a deceptive omission by [the defendant's] failure to comply with HIPAA or protect his sensitive health information" despite HIPAA not providing for a private right of action. 2025 WL 642913, at *4.

Next, Allina recycles its argument that "the MHRA is not applicable to the facts alleged in this case." MTD at 32. As discussed in § III.A, *supra*, this is wrong. The statutory standard for the MHRA is "undemanding" and the law is "defined broadly" to include "any information" that "relates to" medical conditions or care. *Okash I*, 2024 WL 1285779, at *5. Thus, Plaintiffs' allegations that they, *inter alia*, communicated information related to "night sweats," and "weight" and further entered search terms including ""Bariatric," "Sleep apnea," and "Endocrinology" and subsequently received tailored advertisements related to these precise terms demonstrates that Facebook could "pair enough information obtained through internet searches with enough of [Plaintiffs'] digital footprint to create a health record." *Okash II*, 2025 WL 642913, at*6. Allina's argument should be rejected.

Allina further argues that because it would be "impossible" for it to "identify a website visitor's subjective intent for accessing the public website" its disclosures of its

patients' protected PHI and PII to third parties should be excused. MTD at 32. This argument too is without merit. Plaintiffs allege Allina could have chosen not to embed Tracking Technologies on its Websites, or it could have configured its Tracking Technologies to limit what information it communicated to third parties; Allina did not. ¶ 207.

Finally, in Minnesota the existence of a fiduciary relationship is a question of fact. *See, e.g.*, *ACCAP-HUD Homes Tax Credit Ltd. P'ship v. Minnesota Ctys. Intergovernmental Tr.*, 2012 WL 5834560, at *4 (Minn. Ct. App. Nov. 19, 2012). Therefore, determination of a fiduciary relationship between Allina and Plaintiffs is inappropriate on a motion to dismiss. *See Toombs v. Daniels*, 361 N.W.2d 801, 809 (Minn. 1985).

### F. Plaintiffs Allege Negligence.

A claim for negligence requires: the existence of a duty of care, breach, injury, and that the breach of defendant's duty was the proximate cause of the injury. *Group Health*, 709 F. Supp. 3d at 717. Allina challenges Plaintiffs' negligence claim by arguing Plaintiffs did not adequately plead duty, breach, or injury. MTD at 33-34. Allina's argument fails.

### 1. Plaintiffs Allege Duty.

Plaintiffs allege Allina had common law and statutorily-imposed duties to keep its patients' PHI and PII confidential. ¶ 373. One court in this District has held:

> Although negligence *per se* may be pleaded separately from negligence, the two causes of action are inseparably intertwined. While the standard for ordinary negligence is 'the traditional standard of the reasonable man of ordinary prudence, negligence per se may exist when the reasonable person standard is supplanted by a standard of care established by the legislature.

*Perry v. Bay & Bay Transportation Servs., Inc.*, 650 F. Supp. 3d 743, 755 (D. Minn. 2023) (citations omitted).

At least two Minnesota statutes impose a duty on Allina to keep its patients' PHI confidential. Minn. Stat. § 144.293 (¶ 359); Minn. Stat. § 144.651, subd. 16 (¶ 360). Allina accepts that it has a duty to keep its patients' "health records" confidential pursuant to Minnesota law. MTD at 34. However, Allina quarrels with the definition of "health records," arguing Plaintiffs' browsing information does not fall within the definition. MTD at 34. Judge Blackwell addressed this issue in *Group Health*. In grappling with whether a duty exists when "the browsing metadata at issue are not confidential medical records," Judge Blackwell looked to plaintiffs' allegations that they used defendant's website to communicate health-related information and that this information was included in the data shared with third parties. 709 F. Supp. 3d at 717. Based on these allegations, the court found plaintiffs' negligence claim was adequately pleaded because there was a duty to protect private communications and health data and not doing so would lead to reasonably foreseeable harm. *Id.* at 717. Like *Group Health*, Plaintiffs have alleged they used Allina's Websites to schedule appointments, search for physicians, and enter information related to specific symptoms and medical conditions. ¶¶ 29, 32, 49-51, 63, 391. Because there is a statutory duty to protect Plaintiffs' health data, Allina's duty-related arguments must fail.

In addition to statutory duties, Allina owes Plaintiffs a common law duty. Allina correctly notes that a "duty to exercise reasonable care arises from the probability or

foreseeability of injury to the plaintiff." MTD at 33 (quoting *Moreland v. Kladeck, Inc.,* 2022 WL 1501122, at *6 (D. Minn. May 12, 2022). A duty to exercise reasonable care also "arises when there is a special relationship between the defendant and the plaintiff and an 'action by someone other than the defendant creates a foreseeable risk of harm to the plaintiff.'" *In re: Netgain Tech., LLC*, 2022 WL 1810606, at *10 (D. Minn. June 2, 2022) (citation omitted).

A special relationship exists here because, as a medical provider, Allina owes Plaintiffs a fiduciary duty. *See supra* § E (citing *In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d at 152 (finding fiduciary duty to protect private information); *Weddle*, 2023 WL 8369786, at *8 (similar). However, a special relationship is not necessary to impose a common law duty because it was Allina's decision to install the Tracking Technologies on its Websites—not Facebook or any third party. *See In re Netgain*, 2022 WL 1810606, at *11 ("Netgain's own conduct, in failing to maintain appropriate data security measures, created a foreseeable risk of the harm that occurred, and Plaintiffs were the foreseeable victims of that harm.") (internal citation omitted).

Even outside the "special relationship" context, it should have been clear to Allina (a healthcare provider) that Plaintiffs (its patients) would suffer harm when it installed Tracking Technologies on its Websites. Thus, Plaintiffs adequately plead foreseeable harm. ¶ 327.

### 2. Plaintiffs Allege Breach of Duty.

Plaintiffs detail how Allina disclosed their PHI and PII when they provided health information on Allina's Websites, and the Tracking Technologies transmitted that data to

third parties. ¶¶ 29-36, 55-58, 66-69, 88-90, 374-76. To the extent Allina argues Plaintiffs'
allegations are "conclusory" (MTD at 34) and contends Plaintiffs should identify the
specific medical conditions, diagnoses, symptoms, private communications, and other
information that was disclosed, this requirement is not consistent with Rule 8.

Additionally, Allina breached its duty of care by disclosing a "health record" as
defined in the MHRA. *See* Minn. Stat. § 144.291, subd. 2(c). Although Allina argues
Plaintiffs' browsing data does not constitute a "health record," MTD at 34, courts in this
district have held that medical searches within a health provider's website and browsing
data constitute a "health record." *See Group Health*, 709 F. Supp. 3d at 713.

As in *Group Health*, Plaintiffs allege that using Allina's Websites to schedule
appointments caused their PHI to be disclosed to unauthorized third parties. *Compare id.*,
*with* ¶¶ 29-36, 51-57, 63-69. Where current and prospective patients submitted their PHI
and PII to book appointments, pay bills, or log into the patient portal, Allina knows that
the person completing such actions was in a patient or potential patient—the class of people
that Allina owed a duty to keep their information confidential. As acknowledged in their
Privacy Notice, Allina has "a duty to protect the privacy of your health information ...."
¶ 214. Allina's disclosure of medical information satisfies the breach element.

### 3.  Plaintiffs Allege Cognizable Damages.

Plaintiffs have further alleged cognizable damages. ¶¶ 24, 45, 59, 71, 371 (alleging
diminished value of PHI and PII, emotional distress, lost benefit of bargain, loss of privacy,
increased risk of future harm from exposure of information, and ongoing harassment and
embarrassment from unwanted targeted advertisements). Allina does not directly address

the viability of any specific injury under Minnesota law. Instead, Alina self-servingly deems Plaintiffs' allegations of harm "conclusory." MTD at 34 (relying on *Deshane v. City of Minneapolis*, 2022 WL 624579, at *4, n. 8 (D. Minn. Mar. 3, 2022) (§ 1983 plaintiff's negligence claim failed where she failed to plead what injury she suffered) and two Pennsylvania district court decisions).[10]

This District has rejected damages arguments. *See Hall*, 2023 WL 3435100, at *1. There, plaintiff asserted "that the value of his PII [had] been diminished," and that as a result of the data breach, he also "experienced 'anxiety, sleep disruption, stress, fear, and frustration.'" *Id.* at *7; *cf.* ¶¶ 24, 45, 59, 71, 371. Judge Menendez explained that "[o]ther courts have found cognizable damages based on similar allegations," and recognized this is a "rapidly developing area of the law," and was not persuaded that the forms of damages sought by plaintiff were foreclosed in Minnesota. *Hall*, 2023 WL 3435100 at *8; *see also Group Health*, 709 F. Supp. 3d at 717 (citing *Hall* in finding plaintiffs' alleged injuries— loss of privacy, mental anguish, diminished value of private information—cognizable).

While Minnesota law recognizes non-economic damages, Allina's argument that Plaintiffs have not alleged economic damages is without merit. Courts recognize that benefit of the bargain damages can be recovered through a negligence claim following a data breach. *See, e.g.*, *Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1188 (D. Nev. 2022) (finding that paying consideration for services that should have included adequate data security is sufficient to support a negligence claim). Plaintiffs alleged they

---

[10] *Rosenberg v. C.R. Bard, Inc.*, 387 F. Supp. 3d 572 (E.D. Pa. 2019); *Lapensohn v. Hudson City Sav. Bank*, 2021 WL 1581402, at *14 (E.D. Pa. Apr. 21, 2021).

would not have used Allina's Websites or services had they known Allina would disclose their health information to unauthorized third parties for commercial gain. ¶¶ 39-41, 255-57. In other words, Plaintiffs would not have provided Allina with their PHI and PII during these interactions, which is itself a form of "valuable property." *Perry*, 650 F. Supp. 3d 743 at 757. Plaintiffs lost the benefit of this bargain when Allina disclosed that information to unauthorized third parties. ¶¶ 338-39. Plaintiffs have not been compensated for the value of the information unlawfully disclosed (and from which Defendant derived a benefit). ¶ 371(e). Nor did Plaintiffs "get the full value of the medical services for which they paid, which included Allina's duty to maintain confidentiality[.]" ¶ 371(f). Therefore, Plaintiffs sufficiently allege damages, and as such, all requisite elements of their negligence claim.

### G. Plaintiffs Allege Allina Violated the ECPA.

Next, Plaintiffs allege that Allina violated the ECPA which proscribes the interception and disclosure of Plaintiffs' electronic communications and using the contents of those electronic communications. *See* ¶¶ 25, 380-417. Allina seeks dismissal as the direct recipient of Plaintiffs' PHI and PII entered on its Websites. *See* MTD at 36-37. In making this argument, Allina contradicts or outright ignores Plaintiffs' well-pleaded allegations and raises factual issues not appropriately resolved at the pleading stage.

### 1. The Crime-Tort Exception Applies.

Allina argues it cannot be liable under the ECPA as a party to the communications. *See* MTD at 36-37. Not so. Where the crime-tort exception applies, the exception overrides the one-party consent rule:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication … **unless such communication is intercepted for the purpose of committing any criminal or tortious act** in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). As a party to the communication, the party exception *only* applies if Allina's purpose in the interception was not to commit a crime or tort. *See, e.g.*, *Mekhail*, 726 F. Supp. 3d at 927 ("The crime-tort exception-to-the-[party] exception applies if a party intercepts a communication 'for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.'") (citing 18 U.S.C. § 2511(2)(d)); *Group Health*, 709 F. Supp. 3d at 719. Here, the crime-tort exception applies because Allina, among other things, violated HIPAA. ¶¶ 399, 402-13.

Plaintiffs allege Allina's clear criminal or tortious purpose. *See* ¶¶ 399, 402-14. Courts interpret the crime-tort exception as requiring only "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 144 (3d Cir. 2015) ("*Google Cookie*") (emphasis in original) (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). The crime-tort exception focuses on whether the purpose for the interception—its

intended use—was criminal or tortious. *See, e.g.*, *Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995).[11]

Plaintiffs allege Allina intercepted their electronic communications for the purposes of violating HIPAA by collecting and disclosing their PHI and/or IIHI without consent thereby tortiously and criminally invading their privacy. *Compare* MTD at 38 ("Plaintiffs' conclusory allegations ... are not supported by any plausibly pled facts."), *with* ¶¶ 402, 412-16. Information is IIHI if it (i) is "created or received by" a healthcare provider and (ii) either "identifies the individual" or provides a reasonable basis to identify the individual. ¶ 224 (citing 45 C.F.R. § 160.103.). Allegations that a healthcare defendant—like Allina—knowingly collects and transmits information that constitutes IIHI in violation of HIPAA for the purpose of financial gain support the crime-tort exception. *See Mekhail*, 726 F. Supp. 3d at 928 (explaining that the complaint invokes liability under HIPAA, "the alleged violation of which has recently been found sufficient to invoke the crime-tort exception"); *Group Health*, 709 F. Supp. 3d at 719 (relying on allegation that the use "for marketing and revenue generation was in violation of HIPAA and an invasion of privacy").

As in *Group Health* and *Mekhail*, Plaintiffs allege (i) when they began using Allina's Websites; (ii) their particular health conditions and requests for treatment they

---

[11] As *Mekhail* recognized, "the 'primary motivation' or 'determinative factor' test does not appear in the statute, which inquires only about the 'purpose' behind an interception. Nor does the test appear in any authority binding on this Court. Instead, it seems that the test originated in a 1986 case from the District of Massachusetts, which extrapolates from Eighth Circuit dicta and other sources to conclude that § 2511(2)(d) requires more than its plain language says it does." 726 F. Supp. 3d at 927 n.3 (citation omitted). Rather than the "primary motivation" or "determinative factor" test being part of the ECPA, courts have read this requirement in.

shared with Allina; and (iii) the actions they took on the Websites including searching for physicians, scheduling appointments, and performing other tasks related to medical inquiries and treatment. ¶¶ 29-31, 49-53, 63-69. And Plaintiffs plausibly allege that their PHI and PII was received by Allina and identifies or provides a reasonable basis to identify them. ¶¶ 150, 212, 240. Thus, Allina's independent violations of HIPAA are sufficient to invoke the crime-tort exception.

Further, Plaintiffs allege Allina's installation, configuration, and use of Tracking Technologies to surreptitiously acquire patient communications without informed consent and disclose that information to Meta and Google was done to commit criminal and tortious acts in violation of the MUDTPA. *See* ¶¶ 402 (d) & 419-428; *see also* § H. Plaintiffs also allege that Allina committed the independent tort of invasion of privacy. ¶ 402(e), ¶¶ 319-32; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (holding where plaintiffs stated a claim for invasion of privacy, they also pled tortious intent for purposes of the ECPA).

Despite alleging that the criminal and tortious purpose for Allina's unconsented interception of Plaintiffs' PHI and PII was the separate and independent disclosure of that information to Facebook, Google, and other third parties, Allina calls the Court's attention to *Okash* in arguing that the crime-tort exception does not apply. *Compare* MTD at 38-39, *with* ¶ 402 (alleging "Defendant's acquisition of patient communications that were used and disclosed to Facebook was done for purposes of committing criminal and tortious acts in violation of the laws of the United States and Minnesota ...."). On this point, *Okash* is an outlier in Minnesota.

In *Okash I* and again in *Okash II*, the court relied on an outdated analysis in *Rush I*. But since then, the *Rush III* court held that plaintiff's amended complaint was "sufficient to invoke the HIPAA exception-to-the-party-exception" and denied a motion for judgment on the pleadings on the same issue. *See* 2023 WL 8544084, at *3 (granting leave to amend) & 2024 WL 3455020, at *6 (concluding "that Kurowski has plausibly alleged that Rush acted with the conscious desire to knowingly make unauthorized disclosures of her IIHI to Facebook, Google, and Bidtellect for purposes of invoking the crime-or-tort exception"). After *Okash I*, the court in *Mekhail* concluded that plaintiff's "allegations sufficiently plead an interception made with the purpose of violating one or more laws, ***independent*** from the act of interception itself." 726 F. Supp. 3d at 928 (emphasis added). Like *Rush* and *Mekhail*, Plaintiffs' allegations support finding Allina's disclosure of PHI and PII was independent from its interception.[12]

### 2. Plaintiffs allege Allina intended to harm them personally.

Next, Plaintiffs allege that Allina intended to harm them through its non-consensual collection and disclosure of their PHI and PII to third parties. Allina suggests that a showing of "evil" intent is required. MTD at 39 (citing *Capitol Recs. Inc. v. Thomas-Rasset,* 2009 WL 1664468, at *4 (D. Minn. June 11, 2009) and *Katz-Lacabe v. Oracle Am. Inc.*, 668 F.Supp.3d 928, 945 (N.D. Cal. Apr. 6, 2023)). This is not the standard in Minnesota.

---

[12] Courts have held that stating a legally sufficient claim under another, non-wiretap law, meets the independent requirement for the crime-tort exception. *See In re Maxim Integrated Prods., Inc.*, 2013 WL 12141373, at * 15 (W.D. Pa. Mar. 19, 2013) ("Having found that QVC stated a legally sufficient claim under both §§ 1030(a)(2)(C) and 1030(a)(4) of the [Computer Fraud and Abuse Act ("CFAA")], QVC meets the 'independent tort requirement' of the ECPA.").

Rather, Allina must have intercepted Plaintiffs' communications "with an intent to use that interception against the non-consenting party in some harmful way." *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971) (recognizing that the scope of conduct implicated by § 2511(2)(d) "must be determined on a case-by-case basis").[13]

Allina did just that; Allina was aware that the exposure of PHI and PII creates a substantial risk of harm. ¶¶ 230-39 (explaining how the FTC and federal regulators have issued guidelines for businesses to implement reasonable data security practices and incorporate security into all areas of the business); *see also* ¶ 327 (alleging Allina had notice and knew that its practices would cause injury). Plaintiffs also allege that as a proximate result of Allina's acts and omissions, their PHI and PII was disclosed to third parties without authorization, causing Plaintiffs to suffer damages. ¶ 371; *see also* ¶ 24 (listing injuries Plaintiffs have suffered and will continue to suffer). Therefore, Allina's intent to harm Plaintiffs is adequately pled.

### 3. The Contents of Plaintiffs' Communications were Intercepted.

Allina contends that Plaintiffs fail to allege that it intercepted or disclosed the "contents" of their communications. MTD at 40-41. Defendant highlights *In Re Zynga* for this contention. MTD at 40 (citing 750 F.3d at 1106-07). *Zynga* involved disclosure of information in the context of social networking and social gaming. *Id.* Here, Plaintiffs'

---

[13] *See also In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("The existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose.").

communications in seeking healthcare involve not only highly sensitive information, but also a special relationship with Allina to safeguard these communications.

The ECPA defines "contents" as "any information concerning the substance, purport, or meaning of [a] communication." *Mekhail*, 726 F. Supp. 3d at 925 (citing 18 U.S.C. § 2510(8)). A URL that discloses a "search term or similar communication made by the user" can be a communication under the statute. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (quotation omitted); *see also Mekhail*, 726 F. Supp. 3d at 926 (explaining that "narrative search queries revealed via URLs could represent "contents" under certain circumstances").

As in *Mekhail*, Plaintiffs allege they used Allina's Websites to book medical appointments and provide details about their conditions and treatments, all while these communications were obtained via the Tracking Technologies. *Compare* MTD at 40, *with* ¶¶ 29-31, 49-53, 63-69. This PHI is substantive and confidential. Moreover, a review of Allina's Websites' URLs makes clear that those URLs include medical search terms, the substantive content of the communication. ¶¶ 133-38, 190-98. The fact that Plaintiffs alleged the specific search queries they submitted on Allina's Websites (*e.g.* ¶ 51- search terms "Bariatric," "Sleep apnea," and "Endocrinology;" ¶ 63- topics related to podiatry), and Allina included URLs with content (as displayed in ¶¶ 133-38, 190-93), constitute "contents" of communications. *See Group Health*, 709 F. Supp. 3d at 718 (explaining that content regarding plaintiffs' "symptoms, medical conditions, physician lookup, treatment, medication, and scheduling" is sufficient to allege that "content" was transmitted).

Accordingly, Plaintiffs sufficiently allege "content" information was intercepted by Allina and disclosed to third parties.

Additionally, Plaintiffs have plausibly alleged that Allina intercepted communications "for the purpose of a tortious or criminal act that is independent of the intentional act of recording." MTD at 38 (quoting *Google Cookie*, 806 F.3d at 145). As explained in Section III.G.1, *supra*, Allina's reliance on *Okash I*, 2024 WL 1285779, at *1—an outlier nationally and in Minnesota—does not change this result. Accordingly, Allina, even as a party to the interception, is not immune from liability under the ECPA.

### 4. Factual questions should not be resolved on the pleadings.

Finally, whether Allina had criminal or tortious intent is a factual question for discovery to be decided on a full evidentiary record. *See, Group Health*, 709 F. Supp. 3d at 720 ("[D]etermination of [defendant]'s actual purpose for ... using the Pixel Code requires a factual undertaking."); *Mekhail*, 726 F. Supp. 3d at 928 (same). Precisely because Plaintiffs "may be able to show" that the crime-tort exception applies at a later, fact-intensive stage, courts have held it is inappropriate to dismiss a suit at the pleading stage based on the single-party consent defense. *See Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) (even where defendant "obviously consented to the recording, [] that does not justify dismissing the suit. Complaints need not anticipate or attempt to defuse potential defenses").

### H. Plaintiffs Plausibly Allege that Allina Violated the MUDTPA.

Rule 9(b)'s heightened pleading requirement applies to Plaintiffs' MUDTPA claim. *See E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). Allina

asserts that the "misrepresentations, concealment, and/or omissions alleged by Plaintiffs are not pled with particularity…." MTD at 43. Plaintiffs satisfy this requirement by providing detailed factual allegations describing Allina's deceptive and misleading conduct.[14]

Plaintiffs are not required to allege the precise details of every instance of fraud. Instead, the complaint should include sufficient details to notify defendant of the core factual basis for the fraud-based claims. *See, e.g.*, *McGregor v. Uponor, Inc.*, 2010 WL 55985, at *3 (D. Minn. Jan. 4, 2010) (citation omitted); *Blue Cross and Blue Shield of Minnesota v. Wells Fargo Bank, N.A.*, 2012 WL 1343147, at *4 (D. Minn. April 18, 2012) (recognizing that heightened pleading standard does not "require such surgical precision" when there is ongoing course of fraudulent conduct). Here, Plaintiffs have alleged the specific misrepresentations and omissions made by Allina, including Allina's disclosure of Plaintiffs' PHI and PII (despite representations in its Privacy Notice, ¶¶ 218-20) and Allina's failure to inform Plaintiffs their PHI and PII would be disclosed to third parties for an unauthorized purpose, violating industry and legal standards. ¶¶ 212, 421.

Plaintiffs have alleged:

- "Who"—Allina along with Meta, Google, and other third parties. ¶¶ 9, 12.

- "What"—Allina disclosed Plaintiffs' PHI and PII to third parties through Tracking Technologies, without consent or authorization. ¶¶ 16, 43, 57, 69.

---

[14] In contrast, plaintiffs in *E-Shops* failed to identify how defendant knowingly and substantially assisted the underlying conduct and thus failed to meet the heightened Rule 9 pleading requirement. *See E-Shops Corp.,* 678 F.3d at 666.

- "When" —when Plaintiffs became Allina's patients and received care (¶¶ 26-27, 34, 46-48, 60-62) or used the Websites (¶¶ 26-29, 48, 62);

- "Where"—Allina's Websites while Plaintiffs were in Minnesota. ¶¶ 1-3, 28, 48, 62.

- "How"—Allina's use of Tracking Technologies, which allowed highly confidential medical information to be tracked, collected, and transmitted to Meta and Google on an ongoing basis without patients' consent. ¶¶ 12-18, 36, 43, 57, 69.

### 1. Plaintiffs Relied on Allina's Deceptive Statements.

Plaintiffs relied on Allina's deceptive statements. Allina, a medical provider, affirmatively concealed that it was disclosing health information to third parties and misrepresented that it would not use medical information for marketing and retargeting without written authorization. ¶ 216; *see also Okash I*, 2024 WL 1285779, at *6 (denying motion to dismiss where plaintiff "identifies specific misrepresentations in various Essentia policies, including the Privacy Policy"). It is plausible that a reasonable visitor to Allina's Websites would believe Allina protected health information; it stated as much and is required under the law—rather than disclosing it to the world's biggest data-privacy malefactors. ¶¶ 214-20. Simply put, reasonable consumers were deceived when Allina shared their health information, including appointment scheduling, with third parties.[15]

---

[15] Allina cites a case finding a reasonable consumer would not interpret the words "Biologically Appropriate" to mean "made from all fresh ingredients, does not contain any amount of heavy metals or BPA, and is processed in such a way as to eliminate any risk that it could be contaminated with pentobarbital." MTD at 42-43 (citing *Song v. Champion Petfoods USA, Inc.*, 2020 WL 7624861, at *3 (D. Minn. Dec. 22, 2020)). While the *Song* plaintiffs' interpretation was held to "attribute an awful lot to an innocuous, two-word phrase," Plaintiffs here reasonably took a medical provider's statements that it would protect health information—as it is legally required to do—at face value. *Id.* at *5.

Furthermore, Allina's suggestion that Plaintiffs are required to show reliance to plausibly allege a "causal nexus" between Allina's misrepresentations and Plaintiffs' harms is meritless. MTD at 43. Allina cites *Luckey v. Alside, Inc.*, however, the *Luckey* court rejected this notion. 245 F.Supp.3d 1080, 1098 (D. Minn. 2017) ("To the extent [defendant] argues that Plaintiffs must have personally perceived and relied on [defendant's] alleged misrepresentations in order to state a claim under these statutes, the Court rejects this argument.") Minnesota does not require that consumer-protection plaintiffs plead traditional common law reliance. *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12-13 (Minn. 2001).

## 2. Plaintiffs are Likely to Suffer Future Harm.

The MUDTPA provides injunctive relief for a "person likely to be damaged by a deceptive trade practice." Minn. Stat. § 325D.45, subd. 1. Article III standing requires allegations that plaintiff "faces a threat of ongoing or future harm." *Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037 (8th Cir. 2000); *see also Barclay v. ICON Health & Fitness*, 2020 WL 6083704, at *2 (D. Minn. Feb. 17, 2022) (MUDTPA and Article III requirements are "indistinguishable"). At the Rule 12(b) stage, Plaintiffs need only "allege facts sufficient to support a likelihood of future harm." *Hudock v. LG Elecs. U.S.A., Inc.*, 2017 WL 1157098, at *6 (D. Minn. Mar. 27, 2017).

Here, Plaintiffs face a concrete likelihood of future harm that courts in this District have found sufficient. Plaintiffs face imminent harm through Allina's and unauthorized third parties' ongoing use of their PHI and PII, which was already used to aid targeted advertising. *Compare* MTD at 44-45, *with* ¶¶ 24, 43-45, 57-59, 69-71, 371, 378; *see also*

*Group Health*, 709 F. Supp. 3d at 721 ("Plaintiffs do allege future harms" of "continued and ongoing risk of harassment, spam, and targeted advertisements" due to "information [they] communicated to Defendant"); *Okash I*, 2024 WL 1285779, at *6 ("Injunctive relief may also help remedy ongoing harms from the already-collected data"). Plaintiffs may also be required to interact with Allina in the future to review medical records or schedule follow-up appointments. *See Mekhail*, 726 F. Supp. 3d at 933 (this harm "gets at a more tangible and immediate threat" and noting patient may be forced to interact with hospital again "despite her best efforts").

While Allina argues Plaintiffs are now aware of its deceptive practices, it would "defang all aspects of public interest embodied in the deceptive trade statutes to the point of futility" if individuals deceived by a business were required to establish that they are likely to be deceived again. *Compare Mekhail,* at 934, *with* MTD at 44. It would be "a wholly unrealistic result" for the legislature to provide a private right of action for individuals who could never establish standing. *Le v. Kohls Dep't Stores, Inc.*, 160 F.Supp.3d 1096, 1110 (E.D. Wis. 2016); *see also Barclay*, 2020 WL 6083704, at *5 n.2 (explaining that defendant's argument on this point was "better directed to whether Plaintiffs are entitled to injunctive relief on the merits, not whether they have standing"). Plaintiffs have alleged a likelihood of future harm and have standing.

## CONCLUSION

Plaintiffs request this Court deny Allina's motion to dismiss, grant leave to amend to address any pleading deficiencies, and award other relief equity and justice require.[16]

Dated: April 10, 2024

/s/ Brandon M. Wise
**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
Brandon M. Wise (IL Bar # 6319580)*
bwise@peifferwolf.com
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4825

**PEIFFER WOLF CARR KANE**
**CONWAY & WISE, LLP**
Andrew Ready Tate (GA Bar # 518068)*
atate@peifferwolf.com
235 Peachtree Street NE, Suite 400
Atlanta, GA 30303
(404) 282-4806

**JOHNSON BECKER, PLLC**
Christiaan A. van Lierop (MN Bar No.
0402854)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
612-436-1818
cvanlierop@johnsonbecker.com

**STRAUSS BORELLI, PLLC**
Raina C. Borrelli, MN State Bar No.
0392127
Brittany Resch, MN State Bar No. 0397656
One Magnificent Mile

---

[16] Leave to amend should be freely granted. *See, e.g.*, *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, 2021 WL 7286933, at *8 (D. Minn. Aug. 6, 2021). While Plaintiffs contend sufficient facts are pled to support their causes of action and damages, should the Court be persuaded to dismiss any claim, Plaintiffs respectfully request leave to file a Second Amended Complaint.

980 North Michigan Avenue, Suite 1610
Chicago, Illinois 60611
(872) 263-1100
raina@straussborrelli.com
bresch@straussborrelli.com

**COHEN & MALAD, LLP**
Lynn A. Toops**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

**STRANCH, JENNINGS & GARVEY, PLLC**
J. Gerard Stranch, IV**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com

*pro hac vice*
** *pro hac vice forthcoming*

*Counsel for Plaintiffs & the Proposed Classes*

## **L.R. 7.1 CERTIFICATE OF COMPLIANCE**

I, Brandon M. Wise, certify that Plaintiffs' foregoing Memorandum of Law in Opposition to Defendant's Motion to Dismiss complies with Local Rule 7.1(f) and 7.1(h).

I further certify that this Memorandum was prepared using Microsoft 365, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

I further certify that the above referenced Memorandum contains 11,888 words.

*/s/ Brandon M. Wise*