**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| JACQUELINE AHLERS, CATHY GEBHARDT-LALLY and PATRICK WITT, *individually, and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>ALLINA HEALTH SYSTEM,<br><br>Defendant. | Case No. 0:24-cv-03674-SRN-ECW<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 3

THE PROPOSED SETTLEMENT TERMS ........ 4

A. The Settlement Class ........ 4

B. Settlement Class Member Benefits under the Settlement ........ 5

C. Settlement Administration & Notice Program ........ 6

D. Claims, Objections, and Opt-Outs ........ 7

E. Scope of the Release ........ 9

F. Settlement Administration Costs, Attorneys' Fees and Expenses, and Service Awards.. 10

LEGAL STANDARD ........ 10

DISCUSSION ........ 12

A. The Settlement Class Should be Certified for Settlement Purposes ........ 12

1. The Settlement Class Satisfies the Requirements of Rule 23(a) ........ 12

2. The Settlement Class Meets the Requirements of Rule 23(b)(3). ........ 15

B. The Settlement Meets the Requirements for Preliminary Approval under Rule 23(e)(2). 18

1. The Proposed Class Representatives and Class Counsel Have Adequately Represented the Settlement Class. ........ 19

2. The Proposal Was Negotiated at Arm's Length. ........ 20

3. The Proposed Settlement Provides Fair and Reasonable Compensation. ........ 21

4. The Proposed Settlement Treats Class Members Equitably. ........ 25

5. The Remaining Factors Do Not Weigh Against Approval. ........ 26

C. The Court Should Approve the Proposed Notice Program ........ 26

D. The Court Should Conditionally Appoint Class Counsel ........ 27

E. The Court Should Conditionally Appoint Class Representatives ........ 28

F. The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines. ........ 28

CONCLUSION ........ 29

# TABLE OF AUTHORITIES

Page(s)

Cases


*Abarca v. Werner Enters, Inc.*,
2018 WL 1136061 (D. Neb. Feb. 28, 2018) ........ 13

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 12, 16

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005) ........ 22

*DeBoer v. Mellon Mortg. Co.*,
64 F.3d 1171 (8th Cir. 1995) ........ 14

*Evans & Green, LLP v. Mortg. Depot, LLC*,
2008 WL 11338123 (W.D. Mo. May 28, 2008) ........ 13

*Fath v. Am. Honda Motor Co.*,
2019 WL 6799796 (D. Minn. Dec. 13, 2019) ........ 12

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ........ 23

*George v. Uponor Corp.*,
2015 WL 5255280 (D. Minn. Sept. 9, 2015) ........ 13, 20

*Hashw v. Dep't Stores Nat'l Bank*,
182 F. Supp. 3d 935 (D. Minn. 2016) ........ 11, 22

*Hoekman v. Educ. Minn.*,
335 F.R.D. 219 (D. Minn. 2020) ........ 12

*In re Advocate Aurora Health Pixel Litig.*,
740 F. Supp. 3d 736 (E.D. Wis. 2024) ........ 14, 22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ........ 11

*In re Novant Health, Inc.*,
2024 WL 3028443 (M.D.N.C. June 17, 2024) ........ 22

*In re Target Corp. Customer Data Sec. Breach Litig.*,
892 F.3d 968 (8th Cir. 2018) ........ 21

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D Ill. 2021) ........ 16

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*,
716 F.3d 1057 (8th Cir. 2013) ........ 11, 19

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) ........ 22

*Kelly v. Phiten USA, Inc,*
277 F.R.D. 564 (S.D. Iowa 2011) ........ 19

*Komoroski v. Util. Serv. Partners Priv. Label, Inc.*,
2017 WL 3261030 (W.D. Mo. July 31, 2017)........................................................ 14
*Martin v. Cargill, Inc.*,
295 F.R.D. 380 (D. Minn. 2013) ........................................................................ 10
*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)............................................................................................. 27
*Olukayode v. UnitedHealth Grp.*,
2021 WL 3293648 (D. Minn. Aug. 2, 2021) ........................................................ 17
*Paxton v. Union Natl' Bank*,
688 F.2d 552 (8th Cir. 1982) ............................................................................... 15
*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999) ....................................................................... 11, 26
*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).............................................................................................. 17
*Sosna v. Iowa*,
419 U.S. 393 (1975).............................................................................................. 19
*Stuart v. State Farm Fire & Cas. Co.*,
910 F.3d 371 (8th Cir. 2018) ......................................................................... 16, 17
*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ............................................................................... 22
*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)........................................................................................... 16
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................................. 13
*Welsch v. Gardenbring*,
667 F. Supp. 1284 (D. Minn. 1987)..................................................................... 21
*White v. Nat'l Football League*,
822 F. Supp. 1389 (D. Minn. 1993)..................................................................... 23

Rules

Fed. R. Civ. Pro. 23 ............................................................................................ *passim*

Other Authorities

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) .................................... 11

## INTRODUCTION

Plaintiffs Jacqueline Ahlers, Cathy Gebhardt-Lally, and Patrick Witt, on behalf of themselves and all others similarly situated, through undersigned counsel, submit this Memorandum of Law in Support of their Unopposed Motion for Preliminary Approval of Class Action Settlement.[1] Defendant Allina Health System does not oppose the relief sought by this Motion.

Plaintiffs assert various statutory and common law claims arising from allegations that Defendant installed, configured, and used the Meta Pixel and Google Analytics ("Tracking Technologies") on its Web Properties to collect and to divulge personal information. Following briefing on Defendant's motion to dismiss, the Parties engaged in informal discovery and agreed to mediation. Thereafter, the Parties exchanged additional information, prepared mediation statements, and participated in a full-day mediation presided over by Mr. Jerry P. Roscoe, *Esq.* of JAMS on November 18, 2025.

After further discussions and a second mediation on February 4, 2026, the Parties were able to reach an agreement in principle to resolve this case on a class-wide basis. The proposed Settlement provides substantial relief, including the creation of a $12,500,000 non-reversionary common fund. After deduction of Court-approved attorneys' fees, costs, expenses, and service awards, the net settlement fund will be distributed to Settlement Class Members on a pro rata basis.

[1] Unless otherwise indicated, capitalized terms refer to and have the same meaning as those set forth in the Settlement Agreement ("Settlement Agreement" or "SA"), which is attached as Exhibit 1.

Throughout the pendency of the case, Defendant has disputed and continues to dispute the merits of Plaintiffs' claims. Foregoing years of potentially protracted litigation and instead receiving monetary remuneration in the near term is an excellent result for the Settlement Class. The proposed Settlement is within the range of reasonableness and warrants the provision of class notice so that Settlement Class Members may be apprised as to the terms of the Settlement and weigh in with their responses, which undersigned Class Counsel expect to be overwhelmingly positive.

Given the strength and overall fairness of this Settlement, Plaintiffs respectfully request that this Honorable Court enter an order: (1) certifying the Settlement Class for purposes of settlement; (2) appointing Plaintiffs Jacqueline Ahlers, Cathy Gebhardt-Lally, and Patrick Witt as Class Representatives; (3) appointing David Almeida and Britany Wessan of Almeida Law Group LLC, Brandon Wise and Andrew Tate of Peiffer Wolf Carr Kane Conway & Wise, LLP, and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Class Counsel; (4) granting preliminary approval of the Settlement; (5) approving the proposed form and manner of notice; (6) directing that notice to the Settlement Class be disseminated by Settlement Administrator, Atticus Administration, LLC, in the manner described in the Settlement Agreement; (7) establishing a deadline for Settlement Class members to request exclusion from the Settlement Class or file objections to the Settlement; and (8) setting the proposed schedule for completion of further settlement proceedings, including scheduling the final fairness hearing.

## BACKGROUND

On September 16, 2024, Plaintiff Jacqueline Ahlers commenced this putative class action lawsuit by filing a complaint in the United States District Court for the District of Minnesota. *See* Dkt. No. 1. On February 13, 2025, Plaintiff Ahlers amended the complaint to add claims for Plaintiffs Cathy Gebhardt-Lally and Patrick Witt. *See* Dkt. No. 30.

Defendant Allina Health owns and operates twelve hospitals and over ninety clinics throughout the state of Minnesota. *See* Dkt. No. 30, Amended Complaint ("Am. Compl.") ¶ 10. To market, sell, and provide medical services, Allina owns, operates, and controls its websites https://www.allinhealth.org and https://www.stfrancis-shakopee.com ("Websites") which it encourages patients and prospective patients to use. *Id.* ¶ 11. Plaintiffs are Minnesota residents and patients that used Defendant's Websites. *Id.* ¶¶ 26–71.

Plaintiffs assert various statutory and common law claims based on their allegations that Defendant used invisible third-party Tracking Technologies on its Websites to divulge personally identifiable information ("PII") and protected health information ("PHI") (collectively "Private Information") without Plaintiffs' consent. *See id.* ¶¶ 119–61. Specifically, Plaintiffs assert claims against Defendant for: (1) violation of the Minnesota Health Records Act; (2) invasion of privacy; (3) breach of implied contract; (4) unjust enrichment; (5) breach of fiduciary duty; (6) breach of confidence; (7) negligence; (8) violation of the Electronic Communications Privacy Act; and (9) violation of the Minnesota Deceptive Trade Practice Act. *See generally id.* On March 13, 2025, Defendant

filed a Motion to Dismiss. *See* Dkt. No. 34. Plaintiffs opposed the motion on April 10, 2025. *See* Dkt. No. 42. The Motion was fully briefed as of May 1, 2025. *See* Dkt. No. 43.

Thereafter, the Parties began discussing the possibility of resolution and scheduled mediation before Mr. Jerry P. Roscoe, *Esq.* of JAMS Mediation, Arbitration, and ADR Services. The Parties participated in full-day mediation before Mr. Roscoe on November 18, 2025. Although the Parties were unable to come to an agreement that day, they diligently continued their settlement negotiations. On February 4, 2026, the Parties participated in a second, full-day remote mediation before Mr. Roscoe and ultimately reached a settlement in principle through these discussions. The Parties then worked cooperatively to finalize a comprehensive written settlement agreement, which is submitted herein. *See* Exhibit 1.

## THE PROPOSED SETTLEMENT TERMS

As detailed herein, the proposed Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement, exclude themselves, or object. In exchange for monetary benefits, the Settlement Class Members will release any and all claims against Defendant arising from or related in any way to the claims that have been brought or could have been brought in the Action.

### A. The Settlement Class

Plaintiffs propose, for settlement purposes only, that this Court certify the Settlement Class defined as: "all Group 1 Settlement Class Members and Group 2 Settlement Class Members." SA, ¶ 1.36. Group 1 Settlement Class Members "means Settlement Class Members who were portal users, non-portal bill pay users, and non-portal

scheduling users between September 16, 2018 through the date that the Court issues the Order granting preliminary approval, which the Parties estimate to be approximately 1,585,092 Settlement Class Members." *Id.* ¶ 1.19. Additionally, Group 2 Settlement Class Members "means Settlement Class Members who were non-portal/non-bill pay/non-scheduling patients between September 16, 2018 through the date that the Court issues the Order granting preliminary approval, which the Parties estimate to be approximately 946,231 Settlement Class Members." *Id.* ¶ 1.21.

The Settlement Class consists of approximately 2,531,323 members. *Id.* ¶ 1.37; *see also* Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") ¶ 17. The Settlement Class shall not include "(a) Defendant and its respective officers and directors; (b) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; and (c) the Judge and/or magistrate assigned to evaluate the fairness of this settlement." SA, ¶ 1.36.

**B. Settlement Class Member Benefits under the Settlement**

The Settlement provides Class Members with timely, tangible benefits targeted at remediating the specific harms they allegedly suffered using Defendant's Websites as detailed in the Amended Complaint. The monetary benefits of the Settlement are available to all Settlement Class members through a $12,500,000 Settlement Fund—consisting of the (a) Group 1 Settlement Fund, a non-revisionary common fund in the amount of $10,303,098; and (b) Group 2 Settlement Fund, a non-revisionary common fund in the amount of $2,196,902—to be funded by Defendant. SA, ¶¶ 1.19–1.22, 2.1. Group 1 Settlement Class Members may submit a claim and the Settlement Administrator will make

*pro rata* Settlement payments from the Group 1 Settlement Fund. *Id.* ¶ 3.2. Similarly, Group 2 Settlement Class Members may submit a claim and the Settlement Administrator will make *pro rata* from the Group 2 Settlement Fund. *Id.* ¶ 3.3.

**C. Settlement Administration & Notice Program**

Subject to court approval, the Parties have jointly selected and retained Atticus Administration, LLC to serve as the Settlement Administrator. SA, ¶ 1.35. Atticus Administration, LLC is experienced in administering data privacy and security class action settlements. *See* Declaration of Pat McFadden Re Qualifications of Atticus Administration, LLC in Connection with Preliminary Approval of Settlement ("Admin. Decl.").

Defendant represents that it possesses contact information for the Settlement Class Members. In accordance with the Settlement Agreement, Defendant shall provide the Settlement Administrator with the names as well as last known email address and/or last known home address for each Settlement Class Member within fourteen days of the Court's entry of an order granting preliminary approval of the Settlement. SA, ¶ 6.1(a). With that information, the Settlement Administrator shall be charged with delivering direct notice to the Settlement Class Members and administering the claims process. *Id.* ¶ 6.1. Notice shall be provided by email to the greatest extent possible. *Id.* ¶ 6.1(d). To the extent that an email address is not available for a Settlement Class Member, notice shall be provided by USPS regular mail. *Id.* ¶ 6.1(e). The Settlement Administrator shall also establish the Settlement Website with the long-form notice and link all relevant case documents. *Id.* ¶ 6.1(b).

**D. Claims, Objections, and Opt-Outs**

To receive a claim payment, all Settlement Class Members need to do is complete and submit a valid and timely Claim Form. *Id.* ¶ 4.1–4.2. Claimants can submit claims either electronically via the Settlement Website or physically by mail to the Settlement Administrator by the Claims Deadline set by the Court. *Id*. ¶¶ 4.2.1–4.2.2. The Settlement Administrator will determine whether (a) the Claimant is a Settlement Class Member and (b) the Claimant has provided all information needed to complete the Claim Form. If either Party disagrees with the Settlement Administrator's determination and they reach an impasse on resolving the disagreement, they shall have the right to contest the Settlement Administrator's decision by submitting the matter to the Court. *Id*. ¶ 4.3.

If a Settlement Class Member reviews the Settlement and objects to its terms, the Notice program and Settlement Agreement inform them of how to record their objection with the Court. *Id.* ¶¶ 8.1–8.7, Ex. B–C. Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Deadline (60 Days from the Notice Date). Such objection shall (a) include the case name and number of the Action; (b) set forth the Settlement Class Member's full name, current address, telephone number, and email address; (c) contain the Settlement Class Member's personal and original signature; (d) if the objecting Settlement Class Member is represented by an attorney, or received assistance from an attorney in drafting his or her objection, the name, address, telephone number, and email address of the attorney; (e) contain a statement indicating the basis for the objecting Settlement Class Member's belief that he or she is a member of the Settlement Class; (f) state whether the

Objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire Settlement Class; (g) set forth a statement of the legal and/or factual basis for the Objection; (h) contain a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past three years; and (i) state whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel. *Id.* ¶ 8.2.

If a Settlement Class Member fails to timely file and serve an Objection pursuant to these requirements, the Objection will not be valid. *Id.* ¶ 8.7. Moreover, if an objecting Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Approval Hearing, the written Objection must also include: (a) the identity of witnesses whom the objecting Settlement Class Member intends to call to testify at the Final Approval Hearing and (b) a description of any documents or evidence that the objecting Settlement Class Member intends to offer at the Final Approval Hearing. *Id.* ¶ 8.3.

Moreover, Class Members may opt-out to exclude themselves from the agreement and preserve their right to sue. *Id.* ¶¶ 7.1–7.4. Each person wishing to opt-out of the Settlement shall individually sign and timely submit written notice of such intent to the Settlement Administrator no later than the Opt-Out Deadline (60 Days from the Notice Date). *Id.* ¶ 7.1. The written notice must, subject to any amendment to these requirements by the Court: (a) identify the case name and number of this Action; (b) state the Settlement Class Member's full name, address, and telephone number; (c) contain the Settlement Class

Member's personal and original signature; (d) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement Class; and (e) request exclusion only for that one Settlement Class Member whose personal and original signature appears on the request. *Id.* ¶ 7.1. Any person who submits a valid and timely notice of their intent to be excluded from the Settlement Class shall not receive any benefits nor be bound by the Settlement's terms and conditions. *Id.* ¶ 7.4.

### E. Scope of the Release

Upon the Effective Date, every Settlement Class Member, including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims related to the Action. SA, ¶ 10.1. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted. This provision does not release claims unrelated to the Action. *Id.* ¶ 10.2. Otherwise, only Class Members who opt out from the Settlement will avoid its release. *Id.* ¶ 7.4.

### F. Settlement Administration Costs, Attorneys' Fees and Expenses, and Service Awards

As part of the Settlement, Defendant agrees to pay the costs and expenses incurred through Settlement Administration including, but not limited to, the costs of notice to the Settlement Class with such costs to come out of the Settlement Fund. SA ¶ 5.1.

In addition, the Settlement Agreement permits Class Counsel to request approval of a Service Award of $3,500 for each Plaintiff, which recognizes their efforts and commitment on behalf of the Settlement Class. *Id.* ¶ 11.2. The Settlement Agreement also provides that Class Counsel may request an award of reasonable Attorneys' Fees, Costs, and Expenses not to exceed one-third of the Settlement Fund. *Id.* ¶ 11.1. Class Counsel will move separately for approval of an award of attorneys' fees, costs, and expenses and Service Awards no later than fourteen days before the Objection Deadline. *Id.* ¶ 11.3. The Parties did not discuss the payment of attorneys' fees, costs, or expenses or Plaintiffs' proposed Service Awards until after the substantive terms of the Settlement had been agreed upon. *Id.* ¶ 11.6; Joint Decl. ¶ 26.

## LEGAL STANDARD

Courts approve class action settlements under Federal Rule of Civil Procedure 23, which entails two major-stages: preliminary approval and final approval. At the preliminary approval stage, the Court is not required to undertake an in-depth consideration of the final approval factors. *See Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (emphasis at preliminary-approval stage is "only on whether the settlement is within the *range* of possible approval due to an absence of any glaring substantive or procedural

deficiencies") (cleaned up). Instead, it "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) (hereinafter "Manual"); *accord Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 942–43 (D. Minn. 2016) (citing Manual § 21.632 (2004)). And, if the class has not been certified yet, the Court must conditionally certify it for settlement purposes. Specifically, Rule 23(e)(1)(B) directs a court to grant preliminary settlement approval and direct notice to the proposed class if the court "will likely be able to" grant final approval under Rule 23(e)(2) and "will likely be able to" certify a settlement class for purposes of entering judgment. Fed. R. Civ. P. 23(e)(1)(B).

Courts favor means of resolving complex class action litigation. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("[A] strong public policy favors agreements, and courts should approach them with a presumption in their favor.") (citation omitted); *see also In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is presumptively valid.") (internal quotation omitted). Settlement spares the litigants the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial resources. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

Because Plaintiffs satisfy the standards for conditional class certification and preliminary approval, the Court should grant their Motion and order the Parties to notify the class about the Settlement.

## DISCUSSION

### A. The Settlement Class Should be Certified for Settlement Purposes

Before preliminarily approving a proposed settlement, the Court must first determine whether the proposed Settlement Class is appropriate for certification. *See* Manual § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Fath v. Am. Honda Motor Co.*, 2019 WL 6799796, at *4 (D. Minn. Dec. 13, 2019) ("[T]he Court must also find that it will *likely* be able to certify the class for purposes of judgment on the proposal."). To determine whether the Court will likely be able to certify the Settlement Class for purposes of entering judgment on the Settlement, the Court looks to the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the requirements of any subsection of Rule 23(b), here subsection (b)(3) (predominance and superiority). For the reasons set forth below, the Settlement Class satisfies all the necessary requirements for certification.

#### 1. The Settlement Class Satisfies the Requirements of Rule 23(a).

##### *a. Numerosity*

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Generally, a putative class size of forty or more will support a finding of numerosity, although smaller classes have been found acceptable in this circuit." *Hoekman v. Educ. Minn.*, 335 F.R.D. 219, 242 (D. Minn. 2020) (citing

*George v. Uponor Corp.*, 2015 WL 5255280, at *3 (D. Minn. Sept. 9, 2015) (collecting cases)). Thus, with approximately 2,531,323 Settlement Class Members here, Plaintiffs satisfy this factor. *See* SA, ¶ 1.37; Joint Decl. ¶ 17.

*b. Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy this 'commonality' requirement, the claims alleged must "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The commonality requirement has been characterized as low hurdle easily surmounted." *Evans & Green, LLP v. Mortg. Depot, LLC*, 2008 WL 11338123, at *1 (W.D. Mo. May 28, 2008) (internal quotations and citation omitted). Indeed, "even a single common question will do." *Dukes*, 564 U.S. at 359 (cleaned up and citation omitted); *see also Abarca v. Werner Enters, Inc.*, 2018 WL 1136061, at *9 (D. Neb. Feb. 28, 2018) (citation omitted ), *report and recommendation adopted*, 2018 WL 1392909 (D. Neb. Mar. 20, 2018).

Here, each of the Settlement Class Members share the common, class-wide question of whether and to what extent Defendant disclosed their personally identifiable information and protected health information through the Tracking Technologies on its Websites. *See* Am. Compl. ¶ 297 (listing sample of common questions). Damages in this case are also alleged as resulting from the same course of conduct—the disclosure of Private Information via the use of Tracking Technologies on Defendant's Websites. That inquiry

does not vary from Class Member to Class Member and can be fairly resolved—for settlement purposes—all at once. Thus, these common questions, and others alleged in the Amended Complaint, are central to the causes of action brought here and will generate common answers that could be addressed on a class-wide basis. *See, e.g.*, *In re Grp. Health Plan Litig.*, No. 23-cv-00267-JWB-DJF (D. Minn. July 9, 2025) (granting final approval in pixel-tracking case); *In re Advocate Aurora Health Pixel Litig.*, 740 F. Supp. 3d 736, 745 (E.D. Wis. 2024) (same).

*c. Typicality*

Rule 23(a)(3)'s typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3). This requirement is "not demanding and focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Komoroski v. Util. Serv. Partners Priv. Label, Inc.*, 2017 WL 3261030, at *5 (W.D. Mo. July 31, 2017) (internal quotations and citation omitted); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) ("The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff."). Here, the claims of Plaintiffs and Settlement Class Members all stem from the same course of conduct—the installation and use of the Tracking Technologies on Defendant's' Websites. As such, typicality is satisfied.

*d. Adequacy*

Rule 23(a)(4) requires that a representative plaintiff be able to provide fair and adequate representation for the class. This requirement is met where the plaintiff (1) "will vigorously

prosecute the interest of the class through qualified counsel" and (2) has "common interests with the members of the class." *Paxton v. Union Natl' Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).

Here, Plaintiffs' interests are aligned with those of the Settlement Class Members in that they seek relief for injuries arising out of the same course of conduct through Defendant's installation and use of Tracking Technologies. *See, e.g.*, Joint Decl. ¶ 28. Plaintiffs' and Settlement Class Members Private Information was allegedly collected and disclosed—without their knowledge nor consent—by Defendant to third parties like Meta and Google in the same manner and under the same circumstances using Tracking Technologies. *See generally* Am. Compl. Under the terms of the Settlement, Plaintiffs and Settlement Class Members will all be eligible for *pro rata* cash payments from the respective Group 1 or Group 2 Settlement Funds to help remedy the alleged harms they have experienced as a result of Defendant's actions. In addition, proposed Class Counsel have significant experience as class action litigators, particularly in data privacy and security litigation and are well suited to advocate on behalf of the Settlement Class in this Action. *See* Joint Decl. ¶¶ 31–33; *see also id.* Exhibits 1-3 (firm resumes). Thus, the requirements of Rule 23(a) are satisfied.

**2. The Settlement Class Meets the Requirements of Rule 23(b)(3).**

Plaintiffs seek to certify a settlement class under Rule 23(b)(3), which has two components: predominance and superiority.

*a. Predominance*

Rule 23(b)(3) requires a plaintiff to show that "questions of law or fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623. "Certification is appropriate if 'the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). Indeed, district courts should assess predominance keeping in mind that a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615 (internal quotations and citation omitted).

In this case, the predominant issues are whether Defendant was required to disclose to Settlement Class Members that it used Tracking Technologies on its Websites and the alleged harm that arose when the Private Information belonging to Settlement Class Members was allegedly shared, without their consent, with companies like Meta and Google. Other courts have recognized that the types of common issues arising from similar unauthorized disclosures predominate over any individualized issues. *See, e.g.*, *In re: Grp. Health Plan Litig.*, No. 23-cv-00267-JWB-DJF (D. Minn. July 9, 2025); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1086 (N.D Ill. 2021) ("Predominance is met because many of the issues of law and fact common to members of the Nationwide Class

and Illinois Subclass, respectively, may be resolved "through generalized proof"—namely, by examining Defendants' uniform data collection and privacy practices against their legal obligations."). The predominance requirement is thus satisfied here.

*b. Superiority*

Under Rule 23(b)(3), a court must also find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class actions are superior where "class members' claims are generally small and unlikely to be pursued individually." *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018). The inquiry into whether the class action is the superior method "goes to the efficiency of a class action as an alternative to individual suits." *Olukayode v. UnitedHealth Grp.*, 2021 WL 3293648, at *13 (D. Minn. Aug. 2, 2021) (cleaned up).

Here, litigating the same claims of hundreds of thousands of Settlement Class Members and requiring presentation of the same evidence and expert opinions each time is inefficient. Resolving this Action on a class-wide basis reduces litigation costs by eliminating the need for repetitive discovery and arguments in courts nationwide, where hundreds of thousands of website users are at issue, and therefore will promote judicial economy and efficiency. Moreover, while the total alleged economic harm is significant, each individual claim is small compared to the costs of undertaking separate, individualized litigation. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Although the injuries resulting from Defendant's alleged use of Tracking Technologies are real, the cost of individually litigating against Defendant would easily exceed the value of any relief that

could be obtained by any one consumer. Because class treatment is superior to individual litigation, superiority is satisfied.

In sum, Rule 23(b)(3) is satisfied because: (i) questions of law and fact common to Class Members predominate over any individual questions; and (ii) the class action mechanism is superior to any other methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### B. The Settlement Meets the Requirements for Preliminary Approval under Rule 23(e)(2).

Rule 23(e)(2) lists the factors federal courts consider in determining whether proposed class action settlement is "fair, reasonable, and adequate." Those factors are whether:

(A) The class representatives and class counsel have adequately represented the class;

(B) The proposal was negotiated at arm's length;

(C) The relief provided for the class is adequate, taking into account;

(i) The costs, risks, and delay of trial and appeal;

(ii) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) The terms of any proposed award of attorneys' fees, including timing of payment; and;

(iv) Any agreement required to be identified under Rule 23(e)(3); and

(D) The proposal treats class members equitably relative to each other.

In addition, district courts in the Eighth Circuit "consider (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d at 1063 (internal quotations and citation omitted). The Parties' proposed Settlement meets each of the Rule 23(e)(2) factors and the additional factors considered in the Eighth Circuit.

**1. The Proposed Class Representatives and Class Counsel Have Adequately Represented the Settlement Class.**

Adequate Representation is satisfied when (i) there are no substantial conflicts of interest between the class representatives and the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *see also Kelly v. Phiten USA, Inc*, 277 F.R.D. 564, 569 (S.D. Iowa 2011). As described above, Plaintiffs' interests are aligned with those of the Settlement Class Members and they have no conflicts of interest. Plaintiffs have vigorously and adequately represented the Settlement Class since the start of the Action. *See* Joint Decl. ¶¶ 28–30. Plaintiffs have actively participated in the litigation, including but not limited to, participating in client interviews, providing allegations for the Complaint, reviewing the Complaint, gathering information for informal discovery, reviewing the Settlement Agreement, and working with Class Counsel throughout this process. *See id.*

Moreover, Class Counsel have and will continue to vigorously pursue the Settlement Class's interests. To do so, they leaned on their extensive experience in data

privacy litigation, their detailed investigation of this Action, and informal discovery exchanged during the course of their negotiations. Proposed Class Counsel have extensive experience in class action litigation and in cases involving data privacy. *See* Joint Decl. ¶¶ 31–33; *see also id.* Exhibits 1-3 (firm resumes). Their combined expertise allowed them to, among other things, investigate and evaluate the risks and merits of Plaintiffs' claims and build a strong case in a complex area involving the application of legal theories to the alleged use of tracking and source code to collect and to disclose putative Class Members' Private Information to third parties. *See* Joint Decl. ¶¶ 31–33. Further, proposed Class Counsel conducted a thorough pre-suit investigation of their clients' claims as measured against a rapidly developing area of the law through informal discovery. *Id.* Moreover, given their experience in similar pixel-tracking matters, Class Counsel was able to request specific information from Defendant to aid in the settlement negotiations, allowing both Parties to evaluate the strengths and weaknesses of the case. *Id.* ¶¶ 10–15, 31–35. As such, this factor weighs in favor of preliminary approval.

**2. The Proposal Was Negotiated at Arm's Length.**

Settlement agreements are presumptively valid when they are the product of arm's length negotiations, discovery is sufficient, the settlement proponents are experienced in similar matters, and there are few objections. *See George v. Uponor Corp.*, 2015 WL 5255280, at *6 (D. Minn. Sept. 9, 2015). Further, "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2)(A) & (B) (advisory committee's note to 2018 amendments). Moreover, "[the

court] is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a class action settlement." *Welsch v. Gardenbring*, 667 F. Supp. 1284, 1295 (D. Minn. 1987).

Here, the proposed Settlement is the result of well-informed, arm's-length negotiations. The Parties had ample opportunity to test and refine their respective legal theories through investigation, research and a fully briefed Motion to Dismiss, and informal discovery. Joint Decl. ¶¶ 7–14, 31–37. This allowed the Parties to assess the merits of Plaintiffs' claims and Defendant's defenses and to balance the potential value of Settlement Class Members' claims against prior settlements and the substantial risks and expense of trial. *Id.* The settlement negotiations were conducted under the supervision of Mr. Jerry P. Roscoe, *Esq*—of JAMS Mediation, Arbitration, and ADR Services—an experienced mediator. *Id.* ¶¶ 11–12. After thoroughly investigating the facts and rapidly evolving law, requesting and reviewing informal discovery, and preparing for and participating in mediation, Class Counsel were able to assess the potential risks and rewards of litigation and concluded that Settlement is an excellent result for the Settlement Class. *See generally id.* Accordingly, this factor weighs in favor of preliminary approval.

**3. The Proposed Settlement Provides Fair and Reasonable Compensation.**

*a. The Proposed Settlement Is Fair and Reasonable When Balanced Against the Merits of Plaintiffs Claims.*

Courts in the Eighth Circuit consider "a balancing of the strength of the plaintiff's case against the terms of the settlement," to be "[t]he single most important factor" in assessing proposed class settlements. *In re Target Corp. Customer Data Sec. Breach Litig.*,

892 F.3d 968, 978 (8th Cir. 2018) (quoting *Keil v. Lopez*, 862 F.3d 685, 695 (8th Cir. 2017)). The strength of Plaintiff's case "is not a simple mathematical exercise with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'" *Hashw*, 182 F. Supp. 3d at 943 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)).

Although Plaintiffs believe there is strong support for their claims asserted, there are significant risks inherent in any litigation, as discussed below. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 855 (E.D. Mo. 2005). The benefits available to Class Members are significant in comparison to the risk of obtaining no recovery or reduced recovery after protracted litigation. Joint Decl. ¶¶ 15–18, 34–37. Moreover, the Settlement benefits here are comparable to results reached in other data privacy cases concerning the use of Tracking Technologies to collect private information. *See, e.g.*, *In re Advoc. Aurora Health Pixel Litig.*, 740 F. Supp. 3d at 745 (final approval granted for non-reversionary common fund settlement of $12.25 million for a class of approximately 2.5 million class members); *John v. Froedtert Health, Inc.*, 2023CV001935, ECF No. 40 (Milwaukee Cty. Cir. Ct. Case Sept. 29, 2023) (final approval granted for non-reversionary common fund settlement of $2 million for a class of approximately 459,000 patients); *In re Novant Health, Inc.*, 2024 WL 3028443 (M.D.N.C. June 17, 2024) (final approval granted for non-reversionary common fund settlement of. $6.66 million for a class of approximately 1,362,165 million class members). Indeed, the results here are particularly favorable when compared to the recent jury verdict in a privacy class action against Google, where the jury awarded just

more than $4 per person. *Rodriguez v. Google LLC*, No. 3:20-cv-04688 (N.D. Cal.), at Dkt. 670 (awarding $425.7 million for a class of about 100 million Google users).

As the relief provided through the Settlement is well within the range of possible approval, preliminary approval should be granted.

*b. The Complexity, Expense, Risk, and Delay of Further Litigation Support Approval.*

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy favors resolving class actions through settlement. *See, e.g.*, *White v. Nat'l Football League*, 822 F. Supp. 1389, 1416 (D. Minn. 1993) ("The policy in federal court favoring the voluntary resolution of litigation through settlement is particularly strong in the class action context."). This case is not only complex in itself but also arises within a complex and evolving field of litigation. *See, e.g.*, *Frasco v. Flo Health, Inc.*, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) (granting summary judgment in part in pixel-tracking case).

Although Plaintiffs are confident in the merits of their claims, the litigation risks cannot be disregarded. Besides the potential that either side will lose at trial, Plaintiffs anticipate substantial additional costs if litigation continues, including experts. Although plaintiffs have survived Rule 12 motions in similar pixel-tracking cases, obtaining class certification and an eventual jury verdict is far from certain. Moreover, the sheer number of members of the Settlement Class and the complexity of the third parties related to the use of Tracking Technologies, including Meta, are likely to create considerable expense were this case to continue to be litigated. Defendant would also continue to vigorously

defend the case and the litigation could potentially span for years. Considering these risks, the non-reversionary Settlement Fund is a substantial recovery for the Settlement Class. Therefore, this factor weighs in favor granting preliminary approval.

*c. The Proposed Method of Distributing Relief to the Class is Effective.*

The Settlement Administrator is responsible for evaluating Claims and distributing Settlement benefits. SA ¶¶ 6.1–6.5. All Settlement Class Members may submit a Claim until the Claim Deadline, which will be set by the Court. *Id.* ¶ 4.2. As detailed above, the Claim Form is simple to complete, requiring claimants to provide only their contact information, confirmation that they are Settlement Class Members, and their election to receive the pro rata cash payment approved by the Court. Claim Forms may be submitted by mail or through the Settlement Website created by the Settlement Administrator that will contain a summary of the Settlement and all relevant case documents. *See id.* Ex. A. Class Members will also be able to contact the Settlement Administrator with any questions through the Settlement Website or a toll-free telephone number. *Id.* ¶¶ 1.40, 6.1. The Settlement Administrator is charged with reviewing and evaluating each Claim Form, assessing the validity of any required documentation and ensuring Claims are submitted timely and completely. *Id.* ¶¶ 1.15, 4.3. This procedure is objective, efficient, and fair.

*d. The Terms of the Proposed Award for Attorneys' Fees Present No Obstacle to Approval.*

By separate motion (to be filed at least fourteen days before the Objection Deadline), Plaintiffs will seek Court approval of the Attorneys' Costs, Expenses, and Fees and the Service Awards for the Class Representatives. SA, ¶ 11.3. Doing so will give Settlement

Class Members adequate time to evaluate such requests as they consider whether to opt out of or object to the Settlement. Rule 23(e)(2)(C)(iii) requires evaluation of the terms of any proposed attorneys' fees including the timing of any payment. Under the Settlement, proposed Class Counsel may request up to one-third of the Settlement Fund. SA, ¶ 11.1. Both the Short-Form and Long-Form Form Notice also clearly explain that Class Counsel may seek up to this amount. The proposed Service Award to each proposed Class Representative of $3,500 is also well within the range of awards granted to named plaintiffs in class proceedings. *See, e.g.*, *In re Grp. Health Plan Litig.*, Final Approval Order, No. 23-cv-00267-JWB-DJF (D. Minn. July 9, 2025) (approving service awards of $2,500 to each Class Representative). Proposed Class Counsel's request for fees and expenses as well as for Service Awards is well supported by law and evidence and are additional bases for preliminarily approving the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

**4. The Proposed Settlement Treats Class Members Equitably.**

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Settlement Class Members equitably by allocating relief in a manner that reflects the relative strength and value of the claims asserted by different groups within the Settlement Class. The monetary benefits of the Settlement are available to all Settlement Class Members through the $12,500,000 Settlement Fund to be funded by Defendant. SA, ¶¶ 2.1, 3.1.

Settlement Class Members are divided into two groups based on the nature of their interactions with Defendant's Websites and the corresponding strength of their claims.

Group 1 Settlement Class Members may submit a claim and the Settlement Administrator will make *pro rata* Settlement payments from the Group 1 Settlement Fund. *Id.* ¶ 3.2. Similarly, Group 2 Settlement Class Members may submit a claim and the Settlement Administrator will make *pro rata* from the Group 2 Settlement Fund. *Id.* ¶ 3.3. This allocation structure ensures that Settlement Class Members are treated equitably relative to one another by aligning recovery with the relative merits and risks of their claims. This Rule 23(e) factor is thus satisfied, and because the Settlement satisfies all of Rule 23(e) requirements, preliminary approval should be granted.

**5. The Remaining Factors Do Not Weigh Against Approval.**

The remaining factors analyzed by courts in this district—"the defendant's financial condition" and "the amount of opposition to the settlement"—do not weigh against preliminary approval. Although Defendant may have the ability to satisfy a larger judgment in this Action, the fact that a defendant could "pay more than it is paying in this settlement ... standing alone, does not render the settlement inadequate." *Petrovic*, 200 F.3d at 1152.

Second, there are no objections to Settlement at this stage. Further consideration of any opposition to the Settlement is best addressed at the Final Approval Hearing when Class Members have received notice of the Settlement and have had an opportunity to object or raise concerns related to it in accordance with the objection procedures and timelines outlined in the Settlement Agreement.

**C. The Court Should Approve the Proposed Notice Program**

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes like this one, certified under Rule

23(b)(3), the Parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) (permitting notice to be sent by "U.S. Mail, electronic mail, or other appropriate means"). With regard to contents, the best practicable notice "is notice reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Program negotiated and agreed to here is the best practicable under the specific circumstances of this case. *See* Joint Decl. ¶¶ 19–24. Notice will reach all Class Members for whom Defendant has a record by email and otherwise by U.S. mail for Settlement Class Members for whom Defendant provides a valid mailing address. *See* SA, ¶ 6.1. The proposed Short-Form Notice is clear, concise, and informs Settlement Class Members of the general terms of the Settlement, the proposed allocation of Attorneys' Costs, Expenses, and Fees and Service Awards, and provides information regarding the date, time, and place of the Final Approval Hearing. *See* SA, Ex. B. Further, the Short-Form Notice directs Settlement Class Members to the Settlement Website where they can view additional information about the Settlement and its terms and review the Long-Form Notice and other important documents. *Id.* As such, the Notice Program should be approved.

**D. The Court Should Conditionally Appoint Class Counsel**

Plaintiffs further request the conditional appointment of David Almeida and Britany Wessan of Almeida Law Group LLC, Brandon Wise and Andrew Tate of Peiffer Wolf Carr

Kane Conway & Wise, LLP, and Grayson Wells of Stranch, Jennings & Garvey, PLLC as Class Counsel for the purposes of Settlement. As discussed above, the proposed Class Counsel have significant experience prosecuting similar class actions and other complex civil litigation. *See* Joint Decl. ¶¶ 31–33; *see also id.* Exhibits 1-3 (firm resumes). Proposed Class Counsel have diligently investigated and efficiently prosecuted the claims in this Action, dedicated substantial resources toward this litigation, and have successfully and fairly negotiated the Settlement of this matter to the benefit of Plaintiffs and the Settlement Class. *Id*.

### E. The Court Should Conditionally Appoint Class Representatives

The Court should likewise conditionally appoint Plaintiffs as Class Representatives for the purposes of Settlement. Plaintiffs have diligently and capably prosecuted this Action from its inception through client interviews and providing relevant documents, demonstrating their commitment to advancing the interests of the proposed Settlement Class. Plaintiffs have remained actively engaged throughout this Action, including by assisting Class Counsel with factual development and investigation, reviewing pleadings and other key filings, and evaluating the terms of the proposed Settlement Agreement. Joint Decl. ¶ 29. Thus, the Court should conditionally appoint them as Class Representatives for the purpose of the Settlement.

### F. The Court Should Schedule a Final Approval Hearing and Pertinent Deadlines.

As part of the Settlement, Settlement Class Members have the right to (a) do nothing and receive the benefits for the Settlement in exchange for a release of their claims, if the

Settlement receives final approval; (b) exclude themselves from the Settlement if they do not wish to obtain the benefits of the Settlement or release their claims; or (c) remain part of the Settlement Class but object to the Settlement. SA, § IV, VII, VIII . Settlement Class Members have 90 days from the Notice Date to decide among these options. *Id.* ¶ 1.6. This is a reasonable amount of time for Settlement Class Members to make an informed decision, while also not unduly delaying consideration of final approval for Settlement Class Members who wish to timely receive the benefits of the Settlement.

A Final Approval Hearing will be held after notice has been given to the Settlement Class and Settlement Class Members have had an opportunity to opt-out of or object to the Settlement. The notice to Settlement Class Members includes the date of the Final Approval Hearing, and Class Counsel and counsel for Defendant will appear to further explain why the Settlement should be granted final approval. Settlement Class Members who timely and properly object to the Settlement will have the opportunity to appear at this hearing and have their objections heard. In connection with the preliminary approval of the Settlement, Plaintiffs request that the Court set (1) a date for the Final Approval Hearing no earlier than 120 days from the Preliminary Approval Order, (2) dates for filing papers relating to final approval and attorneys' fees and a service award, (3) dates for sending notice to the Settlement Class, and (4) deadlines for any requests for exclusion or objections.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order (1) certifying the Settlement Class for purposes of

settlement; (2) appointing Plaintiffs Jacqueline Ahlers, Cathy Gebhardt-Lally, and Patrick Witt as Class Representatives of the Settlement Class; (3) appointing the undersigned counsel as Settlement Class Counsel; (4) granting preliminary approval of the proposed Settlement; (5) approving the proposed form and manner of notice to the Settlement Class; (6) directing that the notice to the Settlement Class be disseminated by Settlement Administrator, Atticus Administration, LLC, in the manner described in the Settlement Agreement; (7) establishing a deadline for Settlement Class members to request exclusion from the Settlement Class or file objections to the Settlement; and (8) setting the proposed schedule for completion of further settlement proceedings, including scheduling the Final Approval Hearing.

Dated: May 8, 2026

Respectfully Submitted,

/s/ David S. Almeida
David S. Almeida*
Britany A. Wessan*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

Brandon M. Wise*
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
Tel: (314) 833-4825
bwise@peifferwolf.com

Andrew Ready Tate*

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
235 Peachtree Street NE, Suite 400
Atlanta, GA 30303
Tel: (404) 282-4806
atate@peifferwolf.com

Grayson Wells
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Tel: (615) 254-8801
gwells@stranchlaw.com

*Attorneys for Plaintiffs & the Class*

* *Pro hac vice*

## L.R. 7.1 CERTIFICATE OF COMPLIANCE

I, David S. Almeida, certify that Plaintiffs' foregoing Memorandum of Points and Authorities in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement complies with Local Rule 7.1(f) and 7.1(h).

I further certify that this Memorandum was prepared using Microsoft 365, and that this word processing program has been applied specifically to include all text, including headings footnotes, and quotations in the following word count.

I further certify that the above referenced Memorandum contains 7,784 words.

*/s/ David S. Almeida*
David S. Almeida