**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| JACQUELINE AHLERS, CATHY GEBHARDT-LALLY and PATRICK WITT, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiffs*,<br>v.<br><br>ALLINA HEALTH SYSTEM,<br><br>*Defendant*. | Case No. 0:24-cv-03674-SRN-ECW<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND CLASS REPRESENTATIVE AWARDS** |

## I. INTRODUCTION

For nearly two years, Class Counsel[1] diligently investigated and litigated this putative class action lawsuit against Defendant Allina Health System ("Defendant" or "Allina") on a purely contingent fee basis with no guarantee that their work or investment of time and resources would result in any recovery for the Settlement Class. Ultimately, Class Counsel were able to reach a settlement with Allina, establishing a $12,500,000.00 Settlement Fund. Notably, the Settlement Fund is non-reversionary. Not one dollar of the Settlement Fund reverts to Allina; rather, once any Court-approved fees, Service Awards, Notice and Administration costs, and taxes are deducted, the Settlement Fund will be paid out to participating Settlement Class Members on a pro rata basis. Each claiming

[1] All capitalized terms used in this Memorandum shall have the same meanings as set forth in the Settlement Agreement, a true and correct copy of which is attached as Exhibit 1 to Plaintiffs' Memorandum of Points and Authorities in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement [Dkt. No. 56-2] (the "Settlement Agreement" or "Settlement").

Settlement Class Member will receive an equal share of the Net Settlement Fund. This Settlement, if finally approved, is an outstanding result for the Class.

This result did not happen by chance or luck. Rather, this Settlement is the direct result of Class Counsel's work investigating and litigating Plaintiffs' claims which arise from the alleged disclosure of Plaintiffs' and Class Members' information, including PII and PHI to third parties, including, but not limited to, Meta and Google via the implementation of Tracking Technologies installed on Defendant's Web Properties. *See* Joint Class Counsel Declaration in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Class Representative Award ("Class Counsel Decl."), ¶ 23 attached as **Exhibit A**. Plaintiffs allege that these disclosures resulted in the invasion of Plaintiffs' and Class members' privacy and other common law and statutory violations. In addition to investigating the use of Tracking Technologies on Allina's Digital Properties, Class Counsel drafted and filed two class action complaints as well as prepared for and participated in two mediation sessions, among many other things. *Id.* ¶¶ 23-24. In sum, the docket in this Action reflects efficient and concise pleading of claims against Allina, participating in motion practice on Allina's motion to dismiss, and hard-fought negotiations (including two mediations) leading to the Settlement.

Class Counsel respectfully request Class Representative Service Awards of $3,500.00 for Jacqueline Ahlers, Cathy Gebhardt-Lally, and Patrick Witt, which is appropriate given their work and commitment to the case on behalf of the Settlement Class Members. *Id*. ¶¶ 42–45. Class Counsel also respectfully requests a fee award inclusive of attorneys' fees, costs, and expenses in the amount of $4,166.666.67, which is one-third

(1/3) of the $12,500,000.00 Settlement Fund. *Id.* ¶ 32. The requested fee award is eminently reasonable under the Eighth Circuit's use of the percentage-of-the-fund approach to determine attorneys' fee awards.[2]

## II. INCORPORATION BY REFERENCE

Class Counsel incorporates by reference the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Memorandum") (Dkt. No. 56), together with the Settlement Agreement and the exhibits filed in support of it.

## III. PROCEDURAL BACKGROUND

### A. History of the Litigation

Plaintiff brought claims against Allina on September 16, 2024, asserting various statutory and common law claims arising from allegations that Defendant installed, configured, and used Tracking Technologies from Facebook and Google on its Web Properties to collect and to divulge PII and PHI without Plaintiffs' consent to third parties. *See* Dkt. No. 1.

On February 13, 2025, Plaintiff Ahlers amended her complaint to add claims for Plaintiffs Cathy Gebhardt-Lally and Patrick Witt. *See* Dkt. No. 30. Thereafter, on March

---

[2] This motion is filed in advance of the August 10, 2026, deadline for Settlement Class Members to object or request exclusion, and Class Counsel will post it to the Settlement Website so that Settlement Class Members may review and respond to it before that deadline. *See* Fed. R. Civ. P. 23(h)(1)–(2). The Class Notice disclosed that Class Counsel would seek fees and expenses of up to one-third of the Settlement Fund and Service Awards of up to $3,500.00 per Class Representative; the amounts requested here do not exceed what Settlement Class Members were told.

13, 2025, Allina filed a motion to dismiss the amended complaint in its entirety. *See* Dkt. Nos. 34-39. Plaintiffs filed their opposition to the motion to dismiss on April 10, 2025, and the motion was fully briefed when Allina filed its reply brief on May 1, 2025. *See* Dkt. Nos. 42 & 43.

Following briefing on Defendant's motion to dismiss, Plaintiffs and Defendant engaged in numerous conversations, gathered information pertinent to ascertaining settlement value via informal discovery, and agreed to participate in mediation. Class Counsel Decl. ¶ 24. The Parties exchanged additional information, prepared mediation statements, and participated in a full-day mediation presided over by Mr. Jerry Roscoe, *Esq.* of JAMS on November 18, 2025. *Id.* That mediation was unsuccessful. *Id.* After further discussions and exchange of additional information, a second mediation was scheduled and occurred on February 4, 2026. *Id.* At the second mediation, the Parties were able to reach an agreement in principle to resolve this case on a class-wide basis. *Id.* Ultimately, the Parties were able to resolve their claims through a non-reversionary common fund total settlement of $12,500,000, which will be presented to the Court for final approval on September 24, 2026. Dkt. No. 56-2; Dkt. No. 58.

**B. <u>The Benefits Provided Through the Settlement Agreement</u>**

Class Counsel references the Preliminary Approval Memorandum at pages 5-6 and 22—as well as the forthcoming motion seeking final approval—for a full explication of the benefits provided to the Settlement Class via the Settlement.

## IV. APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 23(h) allows a district court supervising a class action to "award reasonable attorney's fees and nontaxable costs that are authorized by law." Fed. R. Civ. P. 23(h). The Court has discretion to determine an appropriate attorneys' fee award in a class action. *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019); *In re Monosodium Glutamate Antitrust Litig.*, 2003 WL 297276, at *1 (D. Minn. Feb. 6, 2003) ("*MSG*") (citing *Blum v. Stenson*, 465 U.S. 886, 896-97 (1984)).

As courts in this district have observed, "[t]he theory behind attorneys' fee awards in class actions is not merely to compensate counsel for their time, but to award counsel for the benefit they brought to the class and take into account the risk undertaken in prosecuting the action." *MSG*, 2003 WL 297276, at *1; *see also In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716460, at *4 (D. Minn. Feb. 27, 2013) (explaining that "a financial incentive is necessary to entice capable attorneys . . . to devote their time to complex, time-consuming cases for which they may never be paid. To make certain that the public interest is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding.") (citations omitted). In exercising that discretion, courts in the Eighth Circuit may award attorneys' fees under a percentage of the common benefit recovered. *See, e.g.*, *Rawa*, 934 F.3d at 870. "[T]he 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Johnson v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996).

## V. ARGUMENT

Awarding attorneys' fees under the percentage-of-the-fund method is reasonable and appropriate under governing law in the Eighth Circuit.

### A. Class Counsel Prosecuted this Action Efficiently

Efficiency in complex civil litigation has long been a focus of judges in this district handling class action litigation. *See, e.g.*, *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005).[3] Courts in this district have time and again struck the efficiency chord:

> There is no question of the quality of lead counsel. Both they and their opposite numbers are exceptionally skilled. While hard-fought, the litigation was conducted cordially and efficiently. It is evident that absent counsel's willingness to work efficiently together, this case could well have lasted many more months, if not years.

*In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1105 (D. Minn. 2009). This theme of efficient case prosecution is a common thread running through fee jurisprudence. *See, e.g.*, *Zurn Pex*, 2013 WL 716460, at *3 ("To a large degree, the settlement and resolution of the complex issues present in this MDL litigation are the result of the diligence and focus of class counsel."); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (noting that "Plaintiffs' counsel moved the case along expeditiously, and made every effort to limit duplicative efforts and to minimize the

---

[3] Fed. R. Civ. P. 1 provides that the civil rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

use of judicial resources in the management of the case" and "[c]ounsel exhibited diligence and efficiency throughout the litigation, resulting in a favorable result for the Class").

Here, Class Counsel investigated, litigated and resolved this Action in under two years from the initial Complaint filed on September 16, 2024 to the executed Settlement Agreement in May 2026, with a Settlement providing significant benefits to the Settlement Class. The services provided by Class Counsel are detailed in the Joint Class Counsel Declaration; by way of summary, those services include (i) investigating the use of third-party tracking technologies on Allina's websites to divulge Private Information, (ii) interviewing potential clients and evaluating potential class representatives, (iii) conducting legal research, (iv) working with a consulting expert, (v) drafting and filing the initial complaint and the Amended Class Action Complaint, (vi) briefing Allina's motion to dismiss, (vii) conducting meet-and-confers with Defendant's counsel, completing informal discovery, and preparing mediation briefs; (viii) participating in two mediation sessions and engaging in settlement discussions, (ix) preparing the motion for preliminary approval and accompanying exhibits, (x) working with the Settlement Administrator to complete the Notice program, among other things. *See* Class Counsel Decl. ¶¶ 22-25. Class Counsel's focus and efficiency in achieving a superlative result in such an efficient fashion bears favorably on the quality of services provided by Class Counsel and those efforts should be rewarded. *See id.* ¶¶ 7, 18, 30.

### B. <u>The Fee Requested Is Reasonable Under the Percentage-Of-The-Fund Method</u>

The Supreme Court has "recognized consistently that . . . a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The Eighth Circuit has endorsed the use of a percentage of the fund approach to determine attorney's fee awards. *See, e.g., Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *Yarrington*, 697 F. Supp. 2d at 1061 ("In the Eighth Circuit, use of a percentage method of awarding attorney's fees in a common-fund case is not only approved, but also well established.") (citations & internal quotation marks omitted). Under the percentage-of-the-benefit method, courts award attorney's fees equal to a reasonable percentage of the fund obtained for the class. *See, e.g., Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017). "The key issue is whether the desired percentage is reasonable." *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *9 (D. Minn. Apr. 5, 2016) (citing *Petrovic*, 200 F.3d at 1157), *aff'd sub nom., Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017).

The Eighth Circuit has reiterated that "the ultimate reasonableness of the award is evaluated by considering relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974)." *Rawa*, 934 F.3d at 870 (quoting *In re Target Corp. Cust, Data Sec. Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018)). This district most often applies the following *Johnson* factors:

> (1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel were exposed, (3) the difficulty and novelty of the legal and factual issues in the case, including whether plaintiffs were assisted by a relevant

> governmental investigation, (4) the skill of the lawyers, both plaintiffs and defendants, (5) the time and labor involved, including the efficiency in handling the case, (6) the reaction of the class and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.

*Xcel Energy*, 364 F. Supp. 2d at 993 ("[N]ot all of the individual *Johnson* factors will apply in every case, so the court has wide discretion as to which factors to apply and relative weight to assign to each."); *Yarrington*, 697 F. Supp. 2d at 1062. Each applicable factor supports the requested award.

Here, the total value of the monetary benefits secured by Class Counsel for the Settlement Class is $12,500,000.00. Class Counsel's attorneys' fee request, inclusive of costs and expenses, of 1/3 the total value of the Settlement Fund is $4,166,666.67. Class Counsel Decl. ¶ 32. As detailed below, this request is fully supported by the *Johnson* factors. *See, e.g.*, *Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases supporting that this district routinely approves fee awards of roughly 1/3 the common fund). Class Counsel's requested fee award is particularly reasonable because Class Counsel's requested award is inclusive of litigation expenses. *See* Class Counsel Decl. ¶ 33.

### 1. **The Benefit Conferred on the Settlement Class**

The benefit conferred on the Settlement Class carries great weight in assessing the reasonableness of a request of attorneys' fee and expenses. *See, e.g.*, *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings*, 2017 WL 2588950, at *2 (D. Minn. June 14, 2017) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Here, Class Counsels' significant work and effort in both litigation and effective negotiation pushed this case toward an early yet impressive resolution that benefits a nationwide class.

The Settlement Fund is non-reversionary meaning that after deducting Class Counsel's fee award, Service Awards, Notice and Settlement Administration Costs (if and as approved by this Honorable Court), and any taxes applicable to the Settlement Fund, the entirety of the remaining fund will be distributed to Settlement Class Members who submit valid Claim Forms through *pro rata* Settlement payments. *See* Settlement Agreement, ¶¶ 1.38, 2.6.[4] Class Counsel's vigorous litigation and extensive settlement negotiations delivered significant relief to an estimated 2,531,323 Class Members, supporting the requested fee award. *See id.* ¶ 1.37.

The relief achieved here via the proposed Settlement compares favorably with other privacy litigation. In *Rodriguez v. Google LLC*, No. 3:20-cv-04688 (N.D. Cal.), at ECF 670 (awarding $425.7m for a class of about 100 million people), a jury awarded just over $4 per person in another consumer privacy class action. Class Counsel here achieved a higher per person recovery without the delay required of a trial and appellate process.

**2. <u>The Risks to Which Class Counsel Were Exposed</u>**

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorneys' fees." *Xcel Energy,* 364 F. Supp. 2d at 994 (citation omitted). Risks "must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *Id*. (citation omitted). In this case, Class Counsel faced numerous risks. These risks continue as Class Members have the

[4] 100% of the Residual Funds after the final round of *pro rata* distribution will be donated to a 501(c)(3) charitable organization jointly agreed upon by the Parties and approved by the Court. *See* Settlement Agreement ¶¶ 1.11, 1.33, 2.6.

opportunity to exclude themselves from the Settlement or object to it up to August 10, 2026. Dkt. No. 56-2 ¶ 17.

Those risks were concrete and specific to this Action. Allina had moved to dismiss, and had the case continued, would have continued to contest the merits of this action and class certification. In agreeing to the Settlement, Class Counsel carefully considered a range of additional risks, including: (i) numerous merits issues remained uncertain; (ii) the challenges associated with proving damages on a class-wide basis; (iii) further developments in the law or the factual record of the Action that could undermine Plaintiffs' claims; (iv) the risk that a jury might award lower damages than what is provided by the Settlement Agreement or no damages at all; (v) the risk both sides faced that a jury could react unfavorably to the evidence presented; and (vi) the uncertainties, risks, expense, and significant delays associated with any appeal that would inevitably be pursued following trial and entry of final judgment. *See* Class Counsel Decl. ¶¶ 10-12, 19-20

These risks in complex class action litigation are very real. As set forth in *Xcel Energy*, "[t]he risk of no recovery in complex cases of this sort is not merely hypothetical" and "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." 364 F. Supp. 2d at 994; *see also In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1160 (D. Minn. 2009) ("Counsel took the case on a contingent basis, working without pay for three years and assuming the risk of a null recovery."). As another court aptly remarked, "[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is

often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). These risks are particularly pronounced in data privacy and tracking technology cases which involve novel and rapidly evolving legal issues and have produced mixed results. *See, e.g., Sims v. Univ. of Toledo Med. Ctr.*, 2024 WL 5410602 (Ohio Ct. Cl. Nov. 13, 2024).

Despite these risks, Class Counsel nonetheless undertook this litigation on a wholly contingent basis at a time when the law relating to online data tracking and disclosure is still a developing area of law. Class Counsel Decl., ¶¶ 27, 38. In sum, the contingent nature of the case and the substantial risks involved in this complex litigation strongly support Class Counsel's fee request. *See Blum*, 465 U.S. at 902 (Brennan, J., concurring) ("[T]he risk of not prevailing, and therefore the risk of not recovering any attorney's fees, is a proper basis on which a district court may award an upward adjustment to an otherwise compensatory fee."); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1083 (D. Minn. 2009) ("In the Eighth Circuit, courts must take 'into account any contingency factor' where plaintiffs' counsel assumes a 'high risk of loss.' Class Counsel assumed the risk this case would 'produce no fee,' and courts see fit to reward such gambles.") (citations omitted).

**3. <u>The Difficulty and Novelty of the Legal and Factual Issues</u>**

Courts also consider the difficulty and novelty of the legal and factual issues when contemplating the appropriate fee award. *See, e.g.*, *Target Corp.*, 892 F.3d at 977 ("[T]he award was justified by the time and labor required, the difficulty of the matter, the skills necessary to prevail (or to reach the current settlement agreement), and the length of the

representation.”). Typical class action complexity was amplified by the nature of this case, which involved novel questions of law and facts that hinged on expert testimony and untested interpretations of federal and Minnesota law. *See, e.g.*, *In re Novant Health, Inc.*, 2024 WL 3028443, at *10 (M.D.N.C. June 17, 2024) (“Unauthorized data disclosures and data tracking lawsuits present questions of law that are novel and injuries that are challenging to quantify…. The presence of novel and challenging legal and factual questions supports approval of the attorneys’ fee request.”). This case required Class Counsel to apply statutes written long before modern web technology to third-party pixels, cookies, and analytics tools; to reconstruct, through technical analysis, what data Allina’s Web Properties transmitted and to whom; and to litigate against a factual record held almost entirely by Allina. *See* Class Counsel Decl., ¶¶ 6, 23.

The substantial benefits achieved in the Settlement are attributable to the efforts of Class Counsel, and the complexity of the factual and legal issues presented by this litigation supports Class Counsel’s request for attorneys’ fees. *See, e.g.*, *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 173 (3d Cir. 2006) (absence of assistance from any government group supported district court’s conclusion that the fee award to class counsel was fair and reasonable); *Dryer v. Nat’l Football League*, 2013 WL 5888231, at *3 (D. Minn. Nov. 1, 2013) (approving settlement where “[t]here is no doubt that further litigation in this matter would be both complex and extraordinarily expensive”).

**4. <u>The Skill of Class Counsel</u>**

The skill of the attorneys litigating the case is another factor courts evaluate in determining an appropriate attorneys’ fee. *See MSG*, 2003 WL 297276, at *2 (awarding

attorneys' fees where "[t]he attorneys prosecuted [the] case very skillfully, often under difficult circumstances"). Class Counsel brought the highest quality skills and efficiency to this Action. *See* Class Counsel Decl. ¶ 6. Every firm and attorney has significant complex and class action litigation experience related to data privacy, online tracking technologies, and data breaches in this district and nationwide. Class Counsel's experience in prosecuting class action cases has proven to be critical to the efficient prosecution and ultimate resolution of this case. *See* Class Counsel Decl., Exs. 1-3.

Despite the legal and factual hurdles, Class Counsel was able to obtain a settlement affording class-wide relief, in large part due to Class Counsel's demonstrated skill not only in this case, but also in scores of others. *See Xcel Energy,* 364 F. Supp. 2d at 995-96 ("Thus, the effort of counsel in efficiently bringing this case to fair, reasonable and adequate resolution is the best indicator of the experience and ability of the attorneys involved, and this factor supports the court's award . . . ."); *Jenkins, ex rel. Jenkins v. Missouri*, 127 F.3d 709, 716 (8th Cir. 1997) ("The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole."); *Pentel v. Shepard*, 2019 WL 6975448, at *2 (D. Minn. Dec. 20, 2019) (same); *Roth v. Life Time Fitness, Inc.*, 2019 WL 3283172, at *2 (D. Minn. July 22, 2019) (same). This factor further supports Class Counsel's request for attorneys' fees.

**5. The Time and Labor Involved, Including the Efficiency in Handling the Case**

In awarding attorneys' fees, courts have consistently recognized and rewarded class counsel for moving the litigation to conclusion with diligence and efficiency. *See, e.g.*, *Yarrington*, 697 F. Supp. 2d at 1063.

Class Counsel should be rewarded for moving the litigation along with diligence and efficiency. As previously discussed, this Action was resolved after active litigation, including filing the Amended Class Action Complaint, consolidating the Action with other law firms to provide the best possible representation on behalf of the Settlement Class Members, and briefing an opposition to Defendant's motion to dismiss. Class Counsel Decl., ¶ 4. Class Counsel obtained a significant Settlement for the benefit of the Settlement Class, notably while a motion to dismiss remained a serious, case-dispositive risk. *Id.* ¶¶ 7, 10.

This factor, like the others factors, weighs in favor of approving Class Counsel's fee request.

**6. The Reaction of the Class**

A favorable reaction from the Class also supports the reasonableness of a fee request. *See, e.g.*, *Beaver Cnty. Emps. Ret. Fund*, 2017 WL 2588950, at *3 (noting that the lack of a single class member objection is "strong evidence that the requested amount of fees and expenses is reasonable"); *Yarrington*, 697 F. Supp. 2d at 1064 (concluding "the Settlement Class strongly supports Settlement Class Counsel's request for attorneys' fees of 33% of the Settlement Fund, based on the fact that only one untimely objection was

made"); *Xcel Energy*, 364 F. Supp. 2d at 998 (noting notices were mailed to over 265,000 potential class members and concluding that "careful consideration of the merits of the seven [fee] objections and the minuscule number of total objections received in light of the size of the class" supports the fee award).

Notice to the Class is underway and is being effectuated in the method and manner set forth in the Court's preliminary approval order. *See* Dkt. No. 58. The date for Settlement Class Members to file objections to the Settlement or request for exclusions from the Settlement Class is August 10, 2026. To date, only 33 of approximately 2,531,323 Settlement Class Members have requested exclusion and no Settlement Class Member has objected to the fairness, reasonableness, or adequacy of the Settlement or the award of attorneys' fees or Class Representative awards. *See* Class Counsel Decl. ¶ 40. The favorable reaction of the Settlement Class further supports the reasonableness of Class Counsel's fee request.

**7. <u>The Comparison Between the Requested Attorneys' Fee Percentage and Percentages Awarded in Similar Cases</u>**

The requested attorney's fee is within the range of fees previously approved by courts in similar cases. Courts in the Eighth Circuit "have frequently awarded attorney fees between [25%] and [36%] of a common fund in other class actions." *Xcel Energy*, 364 F. Supp. 2d at 998 (collecting cases); *see also Rawa*, 934 F.3d at 870 (noting that fees in the Eighth Circuit have ranged up to 36% in class actions); *Khoday*, 2016 WL 1637039, at *9 (awarding a fee award of 33.33% for a total fee award of $20 million from a $60 million common fund); *In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (36% of $3.5

million settlement fund awarded); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (35.5% of the $15 million settlement fund was "within the range established by other cases"); *Yarrington*, 697 F. Supp. 2d at 1064-65 (33% of $16.5 million common fund was "certainly within the range established by other cases in this District"); *Reynolds v. Concordia Univ., St. Paul*, 2024 WL 2270585, at *2 (D. Minn. May 20, 2024) (award by this Court of 1/3 of the common fund to many of the same counsel in this case). This factor, too, supports Class Counsel's request.

Moreover, Class Counsel's request for fees, inclusive of litigation expenses, totaling 1/3 of the common fund, falls squarely within the range of percentages deemed reasonable in similar class cases involving online tracking technologies against healthcare defendants. *See, e.g.*, *In re Grp. Health Plan Litig.,* 2025 WL 4348561 (D. Minn. July 9, 2025) (Blackwell, J.) (awarding 1/3 of $6,000,000 common fund in an analogous case); *Smith v. Loyola Univ. Med. Ctr.*, No. 1:23-CV-15828 (N.D. Ill. Sept. 17, 2025) (awarding $803,421.33 or 1/3 of the net settlement fund in an analogous case in addition to attorneys' costs and expenses); *In re Novant Health, Inc.*, 2024 WL 3028443 (M.D.N.C. June 17, 2024), at **8-14 (awarding 1/3 of $6,660,000.00 common fund in an analogous case); *In re Christ Hosp. Pixel Litig.*, No. A 2204749 (Ohio Ct. Com. Pl., Hamilton Cnty. Oct. 29, 2025) (awarding 1/3 of the $7,000,000 common fund in an analogous case in addition to attorneys' expenses).

In sum, all relevant *Johnson* factors strongly support the requested attorneys' fees and this Court should therefore award attorneys' fee of one-third of the common fund.

### C. <u>Awarding a $3,500.00 Service Award to Each Class Representative is Reasonable and Appropriate Given Their Contribution to the Settlement Class</u>

This Court has discretion to award service awards. *See, e.g.*, *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002). Class Counsel has requested that the Court award $3,500.00 to each of the Plaintiffs who were appointed as Class Representatives and adequately represented the Class Members in this Action.

Courts routinely approve such service awards to recognize individuals' service to the class and to reward them for contributing to the enforcement of laws through the class action mechanism. *See, e.g.*, *China Agritech, Inc. v. Resh*, 584 U.S. 732, 747 n.7 (2018) (a "class representative might receive a share of class recovery above and beyond her individual claim"); *Caligiuri*, 855 F.3d at 867 (service awards to named plaintiffs "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits") (quoting *Yarrington*, 697 F. Supp. 2d at 1068).

Such awards often exceed the one requested here. *See, e.g.*, *Garcia v. Target Corp.*, 2020 WL 416402, at *2 (D. Minn. Jan. 27, 2020) (approving $10,000.00 service award as "reasonable in light of the services performed . . . including taking on the risks of litigation, helping to achieve the compensation being made available to the Settlement class, and providing discovery"); *Bhatia v. 3M Co.*, 2019 WL 4298061, at *3 (D. Minn. Sept. 11, 2019) (awarding $25,000.00 service awards to two plaintiffs and $10,000.00 each to sixteen other class representatives); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2016 WL 2757692, at *2 (D. Minn. May 12, 2016) (awarding $20,000.00 to each of the five financial institution class representatives); *Reynolds*, 2024 WL 2270585, at *3

($5,000.00 service award to single class representative approved by this Court from $800,000.00 common fund).

In this case, Plaintiffs Ahlers, Gebhardt-Lally, and Witt stepped up to lead this litigation on behalf of the Class Members and to provide valuable services for the benefit of the Settlement Class. Each publicly associated his or her name with a lawsuit about the disclosure of personal health information. They also worked with Class Counsel to respond to numerous inquiries regarding their individual facts and circumstances as the litigation proceeded, including extensive investigation into communications to and from Defendant's Web Properties. *See* Joint Class Decl. ¶ 31. They actively monitored the litigation through communication with Class Counsel and were available for mediation and settlement discussions. *See id*. Because Plaintiffs devoted time and resources in service to the class, service awards in the amount of $3,500.00 each ($10,500.00 total) to recognize their time, expense, and valuable contributions to this litigation should be awarded as fair and reasonable.

## VI. CONCLUSION

For the foregoing reasons, Class Counsel, on behalf of Plaintiffs and the Class, respectfully request that the Court, as part of any final order or judgment in this matter, award: (i) reasonable and appropriate attorneys' fees in the amount of $4,166.666.67, inclusive of litigation expenses and (ii) service awards to each Class Representative in the amount of $3,500.00 (totaling $10,500.00).

Dated: July 27, 2026

Respectfully submitted,


*/s/ Brandon M. Wise*

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
Brandon M. Wise (IL Bar # 6319580)*
bwise@peifferwolf.com
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4825

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
Andrew Ready Tate (GA Bar # 518068)*
atate@peifferwolf.com
235 Peachtree Street NE, Suite 400
Atlanta, GA 30303
(404) 282-4806

**ALMEIDA LAW GROUP LLC**
David S. Almeida*
Britany A. Wessan*
849 W. Webster Avenue
Chicago, IL 60614
Tel: (708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

**STRANCH, JENNINGS & GARVEY, PLLC**
Grayson Wells*
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gwells@stranchlaw.com

*admitted *pro hac vice*

***Class Counsel***